UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PETER BLASI, JR., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 2:14-cv-00083-GCS-TPK |
| | ) |
| UNITED DEBT SERVICES, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION TO DISREGARD THE AFFIDAVIT AND STRIKE THE PURPORTED
<u>SUPPLEMENTAL EXPERT REPORT OF EVAN HENDRICKS</u>**

Zachary A. McEntyre (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
John C. Toro (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
zmcentyre@kslaw.com
mroper@kslaw.com
jtoro@kslaw.com

THE CHANDRA LAW FIRM
Donald Screen (Attorney No. 044070)
1265 W. 6th Street, Suite 400
Cleveland, OH 44113
Tel: (216) 578-1700
Fax: (216) 578-1800
Donald.Screen@chandralaw.com

*Counsel for Defendant Equifax Information
Services LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

BACKGROUND ......................................................................................................3

I.      Plaintiffs' Claims And Allegations......................................................................3

        A.      Plaintiffs' Original, First Amended, And Second Amended Complaints...............3

        B.      Statutory Framework and Plaintiffs' Motion for Class Certification ....................4

        C.      The Court's Scheduling Orders And Plaintiffs' Discovery Efforts.......................6

II.     The Hendricks Affidavit ..................................................................................7

III.    The Purported Supplemental Report....................................................................8

ARGUMENT .........................................................................................................10

I.      Applicable Legal Standards .............................................................................10

II.     Hendricks' Affidavit Does Not Comply With The Rule 26 Requirements For Expert
        Reports And Should Be Disregarded. ..................................................................13

        A.      The Hendricks Affidavit Does Not Include A Complete Statement Of All
                Mr. Hendricks' Opinions Or The Basis And Reasons For His Opinions. ............13

        B.      Mr. Hendricks' Affidavit Does Not State The Facts Or Data He
                Considered In Forming His Opinions. ...................................................15

III.    The Purported Supplemental Report Is Improper And Should Be Stricken. ...................17

        A.      The Purported Supplemental Report Is An Improper Attempt To Modify
                The Court's Scheduling Order In Contravention Of Rule 16. .............................17

                1.      Plaintiffs Cannot Establish Good Cause Because They Were Not
                        Diligent. ...............................................................................19

                2.      Plaintiffs' Conduct Would Prejudice Equifax. .........................................20

        B.      The Purported Supplemental Report Does Not Qualify As A
                "Supplement" Under Rule 26. ..............................................................21

                1.      The Purported Supplemental Report Does Not Fall Within The
                        Narrow Scope Of Permissible Supplementation Under Rule 26(e)...........22

2. Plaintiffs' Belated Submission Of The Purported Supplemental Report Is Neither Substantially Justified Nor Harmless. ...........................23

3. The Purported Supplemental Report Should Be Stricken And Equifax Should Be Awarded Its Reasonable Expenses In Bringing This Motion ...............................................................................................24

CONCLUSION ......................................................................................................25

CERTIFICATION OF COUNSEL ........................................................................25

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. City of Columbus*,
   No. 2:08-CV-31, 2010 WL 319942 (S.D. Ohio Jan. 20, 2010) (Kemp, J.) ...........................17

*Balimunkwe v. Bank of Am.*,
   No. 1:14-CV-327, 2015 WL 5167632 (S.D. Ohio Sept. 3, 2015), *report and
   recommendation adopted sub nom. Balimunkwe v. Bank of Am., N.A.*, No.
   1:14-CV-327, 2015 WL 5836975 (S.D. Ohio Oct. 2, 2015) ...................................................12

*Bates v. Tinajero*,
   No. 2:14-CV-0144, 2014 WL 12571410
   (S.D. Ohio Dec. 4, 2014) ....................................................................................11, 18, 20, 24

*Brainard v. Am. Skandia Life Assur. Corp.*,
   432 F.3d 655 (6th Cir. 2005) ..........................................................................................13, 15

*Brown v. Scott*,
   No. 2:12-CV-1071, 2013 WL 5923109 (S.D. Ohio Nov. 4, 2013) ........................................20

*Chuck Bivens Servs., Inc. v. McWane, Inc.*,
   No. 2:12-CV-200, 2013 WL 2468170 (S.D. Ohio June 7, 2013).....................................19, 24

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).................................................................................................................2

*Equal Employment Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*,
   No. 212CV02054STADKV, 2013 WL 12043555 (W.D. Tenn. July 19, 2013) ...............22, 23

*Estes v. King's Daughters Med. Ctr.*,
   59 F. App'x 749 (6th Cir. 2003) ...........................................................................................12

*Ewert v. Holzer Clinic, Inc.*,
   No. 2:09-CV-131, 2010 WL 2854125 (S.D. Ohio July 19, 2010).........................................21

*Gold v. Midland Credit Mgmt., Inc.*,
   82 F. Supp. 3d 1064, 1068 (N.D. Cal. 2015) .......................................................................15

*Haynes v. City of Circleville*,
   No. 2:03-CV-1146, 2005 WL 3263313 (S.D. Ohio Dec. 1, 2005)............................17, 18, 20

*Inge v. Rock Fin. Corp.*,
   281 F.3d 613 (6th Cir. 2002) ................................................................................................18

iv

*Roberts ex rel. Johnson v. Galen of Virginia, Inc.*,
    325 F.3d 776 (6th Cir. 2003) ................................................11

*Laukus v. Rio Brands, Inc.*,
    292 F.R.D. 485 (N.D. Ohio 2013) ........................................13

*Moore v. Indus. Maint. Serv. of Tennessee, Inc.*,
    570 F. App'x 569 (6th Cir. 2014) .........................................19

*Pride v. BIC Corp.*,
    218 F.3d 566 (6th Cir. 2000) ................................................21

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
    657 F. Supp. 2d 905 (N.D. Ohio 2008), *aff'd*, 606 F.3d 262 (6th Cir. 2010) ................. *passim*

*Rutherlan Enterprises, Inc. v. Substruct Sys., LLC*,
    No. 2:11-CV-859, 2013 WL 765611 (S.D. Ohio Feb. 28, 2013) ....................................12, 13

*Shrieve v. DaimlerChrysler Corp.*,
    No. 2:05-CV-0446, 2006 WL 1526878 (S.D. Ohio May 31, 2006) ................................18, 20

*Smith v. Holston Med. Grp., P.C.*,
    595 F. App'x 474 (6th Cir. 2014) .........................................18, 20

*Snyder v. Fleetwood RV, Inc.*,
    No. 2:13-CV-1019, 2016 WL 2837747 (S.D. Ohio May 13, 2016) .......................................21

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
    No. 12-CV-11500, 2014 WL 10294798 (E.D. Mich. June 16, 2014) ....................................24

*Tanner v. Grand River Navigation Co., Inc.*,
    No. 14-CV-13478, 2015 WL 8310291 (E.D. Mich. Dec. 9, 2015) ......................11, 22, 23, 24

*Ullman v. Auto-Owners Mut. Ins. Co.*,
    No. 2:05-CV-1000, 2007 WL 1057397 (S.D. Ohio Apr. 5, 2007) .......................10, 11, 22, 23

**Statutes**

15 U.S.C. § 1681b ................................................................3, 4, 5

15 U.S.C. § 1681e ................................................................4, 5, 6

15 U.S.C. § 1681g ................................................................4, 5, 6

15 U.S.C. § 1681h ................................................................5

15 U.S.C. § 1681n ................................................................4

15 U.S.C. § 1681p ................................................................4

**Other Authorities**

Fed. R. Civ. P. 16 ..................................................................................................... *passim*

Fed. R. Civ. P. 26 ..................................................................................................... *passim*

Fed. R. Civ. P. 37 ..................................................................................................... *passim*

Federal Rule of Evidence 702 ..................................................................................2, 10

Federal Rule of Evidence 703 ......................................................................................10

Federal Rule of Evidence 705 ......................................................................................10

Defendant Equifax Information Services LLC ("Equifax"), pursuant to Rules 16, 26, and 37 of the Federal Rules of Civil Procedure ("Rule 16," "Rule 26," and "Rule 37"), requests that the Court disregard the Affidavit of Evan Hendricks dated January 12, 2016 as a Rule 26 expert report and strike Mr. Hendricks' purported supplemental expert report.

## INTRODUCTION

Plaintiffs' claims against Equifax are predicated on a fraud that was perpetrated *on Equifax* by another defendant in this case, AMG Lead Source ("AMG"). By Plaintiffs'—and AMG's—admission, AMG improperly obtained information about Plaintiffs from Equifax, through its agent Name Seeker, Inc. ("Name Seeker"), by actively defrauding Name Seeker and Equifax. (*See* Dkt. 112 at pp. 5–6; Dkt. 112–1). Yet, Plaintiffs somehow claim that Equifax *willfully* violated the Fair Credit Reporting Act ("FCRA") by falling prey to AMG's fraudulent scheme, and seek statutory and punitive damages from Equifax as a result.

In a misguided effort to bolster their claims, Plaintiffs have submitted both an affidavit (the "Hendricks Affidavit") and purported supplemental expert report (the "Purported Supplemental Report") from Evan Hendricks—a professional "expert" on behalf of plaintiffs in FCRA cases, whose ostensible expertise is based on testifying repeatedly as an "expert." Plaintiffs first filed the Hendricks Affidavit on January 22, 2016 as an exhibit to their barebones motion for class certification. (Dkt. 113). The Affidavit is 4 pages long—including the case caption and a full page for Mr. Hendricks' signature—and contains 10 paragraphs, which summarily state Mr. Hendricks' opinions that the purported class should be certified and that Equifax, Name Seeker, and United Debt Services, LLC ("UDS") violated the FCRA. The Affidavit does not explain the grounds for Mr. Hendricks' opinions, nor does it identify the documents or other evidence on which Mr. Hendricks' opinions are based. Presumably for these

1

reasons, both Mr. Hendricks and Plaintiffs have readily acknowledged that the Affidavit is *not* an expert "report" under Rule 26.

In fact, Plaintiffs did not submit any Rule 26-compliant expert report by this Court's February 1, 2016 deadline, or even request that the Court modify its scheduling order to permit them additional time to submit a Rule 26-compliant expert report. Instead, on December 19, 2016—over ten months after the Court-ordered due date passed—Plaintiffs sent Equifax and the other defendants a document styled as Mr. Hendricks' "supplemental" expert report. But that report is no "supplement"; it is a 15-page report full of brand new opinions found nowhere in Mr. Hendricks' Affidavit. Nor could it have been a "supplemental" report since there was no original report to "supplement."

If Plaintiffs now contend—despite their previous concession to the contrary—that Mr. Hendricks' Affidavit was their Rule 26 expert report, the Affidavit should be disregarded because it does not comply with the requirements that Rule 26 sets forth for expert reports. Moreover, the Purported Supplemental Report should be stricken because (i) Plaintiffs have not established good cause for modifying this Court's scheduling order to permit submitting an expert report more than 10 months after the deadline; and (ii) Plaintiffs' tardy attempt to "supplement" a non-existent report lacks substantial justification.[1]

---

[1] This motion does not address Mr. Hendricks' inability to meet the requirements of Federal Rule of Evidence 702 or the standards for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Equifax reserves the right to file a motion addressing those issues at the appropriate time if the Court does not grant this motion and exclude Mr. Hendricks' opinions altogether.

## BACKGROUND

### I. Plaintiffs' Claims And Allegations

#### A. Plaintiffs' Original, First Amended, And Second Amended Complaints

Plaintiffs filed this lawsuit on January 23, 2014 against four defendants: UDS; New Wave Lending Corp. ("New Wave"); Benjamin Rodriguez, the former owner of New Wave; and MTC Texas Corp., dba Masada ("Masada"). (*See generally* Dkt. 1; Dkt. 40; Dkt. 46). In their original Complaint, Plaintiffs alleged that UDS, New Wave, Mr. Rodriguez, and Masada violated the FCRA by illegally accessing and misusing their credit reports. (Dkt. 1 at p. 1). Specifically, Plaintiffs alleged that Masada obtained "prescreened lists" from consumer reporting agencies and then resold those lists to New Wave, which then resold the lists to UDS—all in violation of the FCRA.[2] (Dkt. 1 at pp. 1–2). Three months later, on April 30, 2014, Plaintiffs filed their First Amended Complaint ("FAC") to address certain pleading deficiencies raised by UDS in a motion to dismiss; the crux of Plaintiffs' allegations remained the same. (Dkt. 9; Dkt. 16; Dkt. 17; Dkt. 18).

On December 1, 2014, Plaintiffs amended their complaint a second time to add Name Seeker, Equifax, and AMG as defendants, and to dismiss their claims against Masada.[3] (Dkt. 47). In the Second Amended Complaint ("SAC"), Plaintiffs alleged that New Wave and Mr. Rodriguez obtained "prescreened lists" that included their names and addresses from

---

[2] Prescreened lists contain the "names and addresses of individual consumers who meet certain criteria specified by the buyer[s]" of the lists. (Dkt. 47 at ¶ 38). Plaintiffs allege that prescreened lists qualify as "consumer reports" under § 1681b(a). (Dkt. 47 at ¶¶ 39–41).

[3] Equifax is a consumer reporting agency that sells consumer reports. (Dkt. 112 at p. 4). Name Seeker is a marketing/lead generator company that Equifax has contracted with to act as its agent. (*Id.*). AMG is another marketing/lead generator company which worked with both New Wave and UDS at various points in time. (Dkt. 112 at p. 4; Dkt. 112–1). New Wave was an Ohio-based mortgage company owned by Benjamin Rodriguez. (Dkt. 112 at p. 6). UDS is a debt settlement company that provides debt relief services to consumers. (Dkt. 113 at p. 3).

Equifax, through its agent Name Seeker, and resold those lists to AMG, which then resold the lists to UDS, all in violation of the FCRA. (Dkt. 47 at pp. 1–3). Plaintiffs further alleged that UDS violated the FCRA by misusing the lists to send Plaintiffs direct mail solicitations regarding debt relief services. (*Id.*). Plaintiffs assert one claim against Equifax (Count III) based on its alleged violation of §§ 1681e(a) and 1681g. (Dkt. 47 at p. 19).

Once again, Plaintiffs learned that many of their factual allegations were wrong. Rather than amending their complaint a third time, Plaintiffs simply told a different story in their motion for class certification, filed on January 15, 2016, as described below. (*See* Dkt. 112).

### B.     Statutory Framework and Plaintiffs' Motion for Class Certification

The FCRA imposes strict "permissible purpose" restrictions on entities that obtain and use consumer reports (known in industry parlance as "users"). 15 U.S.C. § 1681b(f). Under § 1681b(f), "[a] person *shall not* use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified . . . by a prospective user of the report. . . ." *Id.* (emphasis added). The FCRA identifies a number of statutorily defined permissible purposes for obtaining consumer reports. One such purpose is in connection with a "transaction consist[ing] of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(i). The FCRA contains civil liability and criminal liability provisions for persons who obtain a report from a consumer reporting agency under false pretenses. 15 U.S.C. § 1681n(a)(1)(B); 15 U.S.C. § 1681p. The criminal provision authorizes both a fine and imprisonment for up to two years for a violation. 15 U.S.C. § 1681p.

In contrast to the strict prohibition on "users" of consumer reports, the FCRA contemplates that consumer reporting agencies ("CRAs") may not always know for certain if a user has a permissible purpose. Therefore, under the FCRA, CRAs (such as Equifax) may

provide reports to users that the CRAs have "reason to believe" have a permissible purpose for obtaining the reports.  15 U.S.C. § 1681b(a).  Similarly, CRAs must "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the [permissible] purposes." 15 U.S.C. § 1681e(a).  Section 1681g requires CRAs, upon a request by a consumer and after obtaining proper identification from the consumer, to disclose the identity of end-users who procured consumer reports regarding that consumer "for any other purpose [other than employment purposes], during the 1-year period preceding the date on which the request is made." 15 U.S.C. §§ 1681g, 1681h.

In their motion for class certification, Plaintiffs argue that AMG intentionally violated the strict statutory prohibition on obtaining consumer reports without a permissible purpose by obtaining information about Plaintiffs under false pretenses.  To effect its scheme, Plaintiffs contend that AMG defrauded Equifax and Name Seeker to induce them to provide lists that included Plaintiffs' names and addresses.  (*See* Dkt. 112 at pp. 5–6; Dkt. 112–1).  Specifically, Plaintiffs argue that Equifax, through its agent Name Seeker, sold certain Ohio consumer report information in the form of prescreened lists to AMG.  (Dkt. 112 at p. 4).  AMG then allegedly sold the prescreened lists to UDS, the end-user, who used the prescreened lists to market debt relief services to Ohioans.  (*Id*. at pp. 3, 5).  Plaintiffs assert that UDS did so as part of a fraudulent and deceptive scheme concocted with AMG to falsely claim a permissible use— making a firm credit offer to Ohio consumers—to obtain consumer information from Equifax/Name Seeker, which require end-users to certify that they have a permissible purpose. (*See id*. at p. 5).  Plaintiffs do not seek class certification against AMG, and the Plaintiffs have settled with AMG in exchange for an affidavit from Donald Marasco (a former owner/principal of AMG), despite Mr. Hendricks' testimony that AMG is "definitely a wrongdoer here."  (*See*

Dkt. 112 at p. 3, n. 1 and p. 10; *see also* Dkt. 98 at 3 ("Plaintiffs and Defendant AMG are . . . negotiating toward resolution . . . and plan to exchange information . . . that could resolve the claims against AMG and *should further secure evidence relevant to certification against other Defendants*.") (emphasis added); Hendricks Dep., 294:14–25, transcript attached as Ex. A.)

According to Plaintiffs, AMG was only able to get its hands on the lists that allegedly contained Plaintiffs' names and addresses by falsely certifying to Equifax and Name Seeker that it was obtaining the lists for a different company, New Wave,[4] and falsely certifying that New Wave was going to use the lists to make firm offers of credit to the putative class members. (*See* Dkt. 112 at pp. 5–6). In other words, but-for the fraud that AMG perpetrated against Equifax, Plaintiffs would have no claims against Equifax, since neither Plaintiffs nor anyone else has alleged that Equifax or Name Seeker participated in AMG's fraud. Undaunted by this fact, Plaintiffs nevertheless contend that by falling victim to AMG's scheme, Equifax somehow willfully violated § 1681e(a).[5] (*See id.* at p. 3).

### C. The Court's Scheduling Orders And Plaintiffs' Discovery Efforts

On May 23, 2014, before Plaintiffs asserted claims against Equifax, the Court entered its first scheduling order (the "Preliminary Pretrial Order"). (Dkt. 22). On April 8, 2015, after Plaintiffs filed the SAC, the Court entered a second scheduling order (the "Second Preliminary Pretrial Order"). (Dkt. 68). The Second Preliminary Pretrial Order established a deadline of September 15, 2015 for Plaintiffs' motion for class certification. (*Id.*). It also established a

---

[4] New Wave was apparently unaware of AMG's scheme. The Court granted Plaintiffs' motion to drop New Wave and Mr. Rodriguez as parties to the case on March 16, 2016. (Dkt. 120).

[5] Plaintiffs further contend that Equifax willfully violated § 1681g by failing to accurately identify the end-users of Plaintiffs' consumer information in consumer disclosures requested by Plaintiffs. (Dkt. 47 at ¶ 103). Plaintiffs do not mention Equifax's alleged violation of § 1681g in their Motion for Class Certification.

deadline of February 1, 2016 for Plaintiffs' Rule 26 expert disclosures and accompanying expert reports.  (*Id*.).  While certain deadlines in the Second Preliminary Pretrial Order have been extended, the Court has not extended either the due date for Plaintiffs' motion for class certification or the due date for Plaintiffs' expert disclosure.  Nor have Plaintiffs ever sought an extension of the February 1, 2016 due date for their expert disclosure.

Equifax timely responded to Plaintiffs' discovery requests on July 6, 2015.  (*See* Equifax Information Services LLC's Objections And Responses To Plaintiffs' First Set Of Interrogatories And Requests For Production dated July 6, 2015, attached as Ex. B).  Equifax produced documents in response to Plaintiffs' discovery requests on September 25, 2015, four months before Plaintiffs' expert disclosure deadline.  (*See* document production email from M. Roper to B. Garvine dated September 25, 2015, attached as Ex. C).  Plaintiffs did not raise any issues with Equifax's discovery responses or document production prior to their expert report deadline—or, for that matter, until June 14, 2016, months after the deadline.  Plaintiffs also did not seek to depose any representatives or employees of Equifax prior to their expert disclosure deadline.

On September 3, 2015, Plaintiffs filed a motion seeking to extend the deadline for their motion for class certification for 120 days, from September 15, 2015 to January 15, 2016.  (Dkt. 98).  Name Seeker opposed Plaintiffs' motion.  (Dkt. 101).  The Court has not ruled on the motion.  On January 15, 2016, Plaintiffs filed their motion for class certification.

II.    **The Hendricks Affidavit**

Plaintiffs filed the Hendricks Affidavit with their Motion for Rule 23 Certification.  (*See* Dkt. 113).  In his Affidavit, Mr. Hendricks summarily opined that (i) Equifax, Name Seeker, and UDS treated the "consumer reports" of purported class members in an "identical" manner that is "common to the entire class"; (ii) class notice and allocation of any compensation could be reasonably managed; and (iii) Equifax, Name Seeker, and UDS each violated the FCRA.  (*Id*.).

7

In other words, Mr. Hendricks opined that the class should be certified and that the Defendants violated the statute. The Affidavit ran a total of 4 pages, with signature block and case caption, including all of 10 paragraphs.

Facing a September 2, 2016 deadline for their class certification response, the Defendants deposed Mr. Hendricks on May 25, 2016. (*See* Dkt. 144; Ex. A). Mr. Hendricks stated during his deposition that Plaintiffs' counsel first approached him about offering expert services in early 2015, a year before Plaintiffs' expert disclosure deadline, and that he was retained by Plaintiffs' counsel in May 2015. Hendricks Dep., 37:9–38:2; 286:11–18. He was not asked to do any work until December 2015, when Plaintiffs' counsel approached him about providing an affidavit in support of Plaintiffs' motion for class certification. Hendricks Dep., 38:12–16. According to Mr. Hendricks, it was clear to both him and Plaintiffs that the affidavit was intended only as support for the motion for class certification, and *not* as his expert report under Rule 26. *See* email from B. Garvine to M. Roper on January 21, 2016 (stating that "Evan [Hendricks] did not provide a report"), attached as Ex. D; Hendricks Dep. 74:20–75:22 ("Q. I think you already agreed this is not an expert report? A. Yes, that's correct."). As of his deposition, Plaintiffs' counsel had not informed Mr. Hendricks of the February 1, 2016 expert report deadline in this case or asked him to provide an expert report. Hendricks Dep., 286:19–288:1. Mr. Hendricks, therefore, only opined on issues related to class certification. *See* Hendricks Dep., 73:6–75:22; 116:1–5; 135:6–11; 286:19–288:1.

## III.    The Purported Supplemental Report

In the year since Plaintiffs' expert disclosure deadline, Defendants deposed Plaintiffs Jordan Brodsky, Peter Blasi, Jr., and Michael Cassone, on June 15, 16, and 17, 2016, respectively, and Mr. Rodriguez, of New Wave, on July 15, 2016. Defendants have also sought discovery from AMG, the perpetrator of the fraud that led to this lawsuit. On November 8, 2016,

the Court stayed all case management deadlines while it addresses AMG's destruction of evidence.  (Dkt. 189).  Plaintiffs have not deposed any representatives or employees of either Equifax or Name Seeker.  Fact discovery has not yet closed.

On December 19, 2016, nearly a year after the Hendricks Affidavit was filed and seven months after Mr. Hendricks was deposed, Plaintiffs sent the Purported Supplemental Report to Defendants.  (*See* transmittal email and Purported Supplemental Report attached as Ex. E).  The Purported Supplemental Report is nearly four times the length of the Affidavit, and includes various new opinions that are not expressed in the Affidavit regarding "red flags" that Equifax allegedly should have uncovered regarding AMG and investigatory actions that Equifax allegedly should have taken.  (*See* Ex. E).  Plaintiffs provided the Purported Supplemental Report before deposing a single Equifax or Name Seeker employee or representative.  It is unclear whether Plaintiffs intend the Purported Supplemental Report to be Mr. Hendricks' "final" report, or if Plaintiffs plan for Mr. Hendricks to continually add new opinions as the case progresses.  *See* Hendricks Dep., 9:9–10:5; 18:21–19:3 (mentioning in his deposition that he anticipated "supplementing" his Affidavit at the close of fact discovery and after the depositions of Equifax and Name Seeker).

On December 22, 2016, Equifax notified Plaintiffs that the Purported Supplemental Report is untimely and improper and requested that Plaintiffs withdraw both the Purported Supplemental Report and the non-Rule 26 compliant Affidavit.  (*See* transmittal email and letter from J. Toro to B. Garvine dated December 22, 2016, attached as Ex. F).  Equifax followed up with Plaintiffs on January 3, 2017 and offered to schedule a call to discuss its concerns.  (*See* email from J. Toro dated January 3, 2017, attached as Ex. G).  Plaintiffs sent a response to Equifax's concerns on January 11, 2017, in which they refused to withdraw either the Affidavit

or the Purported Supplemental Report.  (*See* letter from B  Garvine to J. Toro dated January 11, 2017, attached as Ex. H).  The parties have reached an impasse.  (*See* email from B. Garvine dated February 2, 2017, attached as Ex. I).  Accordingly, Equifax filed this Motion.

## ARGUMENT

### I.    Applicable Legal Standards

"A party must make [the Rule 26] disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  A court-ordered deadline for Rule 26 disclosures "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Pursuant to Rule 26, "a party must disclose to the other parties," *by the court-ordered deadline*, "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A)–(B).  "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case. . . ." *Id.*

Rule 26(a)(2)(B) sets forth the specific requirements for an expert report, which "are to be taken very seriously."  *R.C. Olmstead, Inc. v. CU Interface, LLC,* 657 F. Supp. 2d 905, 908 (N.D. Ohio 2008), *aff'd*, 606 F.3d 262 (6th Cir. 2010).  Among other requirements, the report must contain: "(i) a *complete* statement of all opinions the witness will express and the basis and *reasons* for them; [and] (ii) the facts or data considered by the witness in forming them. . . ." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  Under Rule 26(e), a party must supplement a Rule 26 expert report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Critically, the purpose of Rule 26(e) supplementation is to correct "previously supplied information, *not* supply[ ] wholly missing information."  *Ullman v.*

*Auto-Owners Mut. Ins. Co.*, No. 2:05-CV-1000, 2007 WL 1057397, at *3 (S.D. Ohio Apr. 5, 2007) (emphasis added).  And Rule 26(e) does not give a party "a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label."  *Tanner v. Grand River Navigation Co., Inc*., No. 14-CV-13478, 2015 WL 8310291, at *3 (E.D. Mich. Dec. 9, 2015) (citation omitted).

Both Rule 37 and Rule 16 provide enforcement mechanisms when a party fails to submit a timely, Rule 26-compliant expert report.  These rules authorize the Court to strike an expert report, exclude the expert from testifying, award reasonable expenses (including but not limited to attorneys' fees), and order any other sanction the Court deems appropriate under the circumstances.  Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 37 "requires absolute compliance with Rule 26[]." *Roberts ex rel. Johnson v. Galen of Virginia, Inc*., 325 F.3d 776, 782 (6th Cir. 2003) (citing *Vance v. United States*, No. 98–5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)).  When an expert report does not meet the Rule 26 requirements, "the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26[] was either justified or harmless."  *Johnson*, 325 F.3d at 782 (quoting *Salgado v. Gen. Motors Corp*., 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added); *Bates v. Tinajero*, No. 2:14-CV-0144, 2014 WL 12571410, at *4 (S.D. Ohio Dec. 4, 2014) ("The Court of Appeals has made clear that the test for exclusion of evidence under Fed. R. Civ. P. 37(c) 'is very simple:  the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'") (Kemp, J.) (internal citation omitted).  "The burden of proof is on the

potentially sanctioned party to prove harmlessness or justification." *R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 909.  Rule 37 also provides that the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."[6] Fed. R. Civ. P. 37(c)(1).

"Further, Rule 16(f) allows for sanctions, including any sanction authorized by Rule 37, if a party 'fails to obey a scheduling or other pretrial order.'" *Rutherlan Enters., Inc. v. Substruct Sys., LLC*, No. 2:11-CV-859, 2013 WL 765611, at *1 (S.D. Ohio Feb. 28, 2013).  Rule 16(f) grants a district court wide discretion to impose sanctions for a party's failure to comply with an expert report deadline, "includ[ing] the discretion to exclude expert witness testimony. . . ." *Balimunkwe v. Bank of Am.*, No. 1:14-CV-327, 2015 WL 5167632, at *5 (S.D. Ohio Sept. 3, 2015), *report and recommendation adopted sub nom. Balimunkwe v. Bank of Am., N.A.*, No. 1:14-CV-327, 2015 WL 5836975 (S.D. Ohio Oct. 2, 2015); *see also Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 753 (6th Cir. 2003) ("Rule 16 . . . grants district courts wide latitude to impose sanctions for failure to comply with their scheduling orders.  The district court has discretion to impose whatever sanction it feels is appropriate, under the circumstances."); *Rutherlan Enters., Inc*., 2013 WL 765611, at *1 ("As under Rule 37, Courts have wide latitude in

---

[6] In addition to any "appropriate sanction[]," the expressly permitted sanctions listed in Rule 37(b)(2)(A)(i)-(vi) include:

> "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

imposing sanctions under Rule 16(f)"). Reasonable attorneys' fees and expenses are also available for Rule 16(f) violations. *Laukus v. Rio Brands, Inc*., 292 F.R.D. 485, 514 n.35 (N.D. Ohio 2013).

## II. Hendricks' Affidavit Does Not Comply With The Rule 26 Requirements For Expert Reports And Should Be Disregarded.

Both Plaintiffs and Mr. Hendricks admit that the Hendricks Affidavit is not—and was not intended to be—a Rule 26 expert report. *See* email from B. Garvine to M. Roper on January 21, 2016; Hendricks Dep. 74:20–75:22 (agreeing that the Affidavit is not an expert report). They are right: the Hendricks Affidavit does not contain "a complete statement of all opinions the witness will express and the basis and reasons for them" or "the facts or data considered by [Hendricks] in forming [his opinions]." *See* Fed. R. Civ. P. 26(a)(2)(B).

### A. The Hendricks Affidavit Does Not Include A Complete Statement Of All Mr. Hendricks' Opinions Or The Basis And Reasons For His Opinions.

Mr. Hendricks' Affidavit is not an expert report because it is entirely conclusory and lacks any basis for his opinions, other than generic statements that his opinions are "based on the information provided in discovery" (*see* Dkt. 113 at ¶ 4) and "his review of the referenced documents." (*see id*. at ¶¶ 7–9).

An expert "report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 910 (barring expert report) (citation omitted). It "must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Brainard v. Am. Skandia Life Assur. Corp*., 432 F.3d 655, 664 (6th Cir. 2005) (citations omitted). While Mr. Hendricks baldly asserts that he reviewed "relevant discovery responses," (*see* Dkt. 113 at ¶ 2), he does not describe *which* discovery responses are relevant to his opinions and *how* those discovery responses purportedly support his opinions.

This is plainly inadequate.  *See R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 911–12 ("Reid's failure to disclose what 'details of the case' he considered, and his failure to provide any indication of how those details influenced his conclusions, are so prejudicial to Defendants as to, in and of themselves, merit exclusion of his report.").

Moreover, Mr. Hendricks admitted in his deposition that his Affidavit simply states that Equifax did not comply with the FCRA without explaining *how* Equifax allegedly failed to comply with the FCRA:

> Q.  Where in your Affidavit does it say how Equifax failed to comply with the standard of care?
>
> A.  I think my Affidavit just said they did not comply with the standard of care.
>
> Q.  Does your Affidavit say how Name Seeker failed to comply with the standard of care?
>
> A.  I don't think I go into that sort of detail.
>
> Q.  Did it describe how UDS violated the standard of care?
>
> A.  No.

Hendricks Dep., 115:12–22.

Given the plain inadequacy of his Affidavit, Mr. Hendricks shifted gears at his deposition and tried to offer opinions that are *not* contained in his Affidavit:

> Q.  And you're not offering any opinion in your Affidavit as to whether any violation in this case was willful?
>
> A.  Well, in this case, I mean, my -- I think Equifax's failure was the result of disregard of things like red flags and disregard of the context this happened in and, in my opinion, that disregard is serious.
>
> Q.  Is that in the Affidavit?
>
> A.  No, I don't believe so.
>
> Q.  Okay.  So what you just said is not in the Affidavit, correct?
>
> MR. LEWIS:  Objection.  You mean explicitly?  Is that what you're --

> THE WITNESS: I don't think those terms are -- what I just said is not in the Affidavit.

Hendricks Dep., 134:7–23.

In sum, contrary to the mandate of Rule 26, Mr. Hendricks' Affidavit does not contain "a complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). A conclusory opinion, such as Mr. Hendricks', which contains "nothing but a bottom line[,] supplies nothing of value to the judicial process."[7] *See Brainard*, 432 F.3d at 664 (citation omitted).

### B. Mr. Hendricks' Affidavit Does Not State The Facts Or Data He Considered In Forming His Opinions.

Mr. Hendricks' Affidavit also does not contain "the facts or data considered by [him] in forming [his opinions]." *See* Fed. R. Civ. P. 26(a)(2)(B). While Mr. Hendricks says in his Affidavit that his opinions are based on "referenced documents," it is entirely unclear *which* documents (let alone specific facts or data) Mr. Hendricks relied on in forming his opinions. There are no exhibits attached to the Affidavit that show which documents and/or facts he relied upon. Mr. Hendricks, instead, categorically lists the documents he reviewed: "the Second Amended Class Action Complaint filed by Plaintiffs, the relevant discovery responses from [UDS] and [Equifax], the Affidavits of Donald Marasco and Benjamin Rodriguez and the relevant discovery responses provided by Benjamin Rodriguez" as well as "Plaintiffs' Motion for Class Certification." (*See* Dkt. 113 at ¶ 2). But he does not reference or cite a single specific

---

[7] Mr. Hendricks should know this. His "reports" have been stricken before for providing unsupported, conclusory opinions. *See Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1068 (N.D. Cal. 2015) (granting in part a motion to strike an expert report prepared by Evan Hendricks in a Fair Debt Collection Practices Act case where portion "concerning [a collection] Letter contain[ed] much in the way of conclusory assertions as to the Letter's misleading nature and Defendants' intent to mislead and little in the way of explanation or factual bases for those conclusions").

document in the opinion portion of his Affidavit.  *See* Hendricks Dep., 294:6–10 ("Q. And in that there's no specific citations to specific documents, correct?  A. I believe that's correct. Q. It refers to general categories, correct? A. Yes.").  This does not comply with Rule 26.  *See R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 910–11 ("[t]he lack of keying or reference between the opinions and the reviewed materials" violate[s]" Rule 26).

It is also clear from Mr. Hendricks' deposition testimony that he relied on facts and/or data not disclosed in his Affidavit:

> Q.  Okay.  The opinions you expressed in this Affidavit are not based on any other documents beyond the documents identified in paragraph two; is that correct?
>
> A.  Thinking back, for instance, I was also aware of, for instance, the Federal Trade Commission's action regarding Direct Lending, which resulted in a settlement in October 2012.  And that generated a document.  So that -- I suppose that's -- that's part of my foundation for my opinion as well.

Hendricks Dep., 22:11–21.

> Q.  So that's what you base the 166,000 figure on, Mr. Heck's Affidavit?
>
> A.  Right, which was based on information he got from UDS.
>
> Q.  Is there anything else stated in Mr. Heck's Affidavit that you relied upon?
>
> A.  I can't remember.
>
> Q.  Well, do you remember relying upon Mr. Heck's Affidavit?
>
> A.  Well, I remember that's where -- now I'm reminded that's where this figure came from, the 166,000.
>
> Q.  I noticed Mr. Heck's Affidavit is not cited within your Affidavit as documents you reviewed.  Was that an oversight on your behalf?
>
> A.  Yes.

Hendricks Dep., 218:1–17.  This too is improper.  *See R.C. Olmstead, Inc*., 657 F. Supp. 2d at 911 (holding that if conclusions in a report are based all or in part on facts not disclosed in the report, the report does not comply with Rule 26(a)(2)(B)).

In short, Mr. Hendricks' Affidavit is not a Rule 26-compliant expert report.  *See* Fed. R. Civ. P. 37(c)(1).  While both Plaintiffs and Mr. Hendricks have expressly acknowledged that fact, Plaintiffs apparently now seek to characterize it as a Rule 26 report, given that they have provided Defendants with a Purported *Supplemental* Report.  The Court should reject Plaintiffs' post-facto reversal and disregard the Hendricks Affidavit.  Equifax respectfully requests that the Court award its reasonable expenses in bringing this motion based on the Court's authority under Rule 37.  *See id.*

### III.    The Purported Supplemental Report Is Improper And Should Be Stricken.

The Purported Supplemental Report is improper and should be stricken for two independent reasons:  (a) Plaintiffs have not established "good cause" for modifying this Court's scheduling order, as Rule 16 requires, to permit submitting an expert report more than 10 months after the deadline; and (b) the Purported Supplemental Report does not qualify as a "supplement" within the meaning of Rule 26 and is neither substantially justified nor harmless.

#### A.    The Purported Supplemental Report Is An Improper Attempt To Modify The Court's Scheduling Order In Contravention Of Rule 16.

The Purported Supplemental Report is not "supplemental"—it is Plaintiffs' first attempt to submit a Rule 26-compliant expert report, some 11 months after the deadline for such a report came and went.  Compliance with a court-ordered Rule 26 deadline is more than just a formality: "[A]dherence to reasonable deadlines is . . . critical to maintaining integrity in court proceedings," and "pretrial scheduling orders are the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner."  *Arnold v. City of Columbus*, No. 2:08-CV-31, 2010 WL 319942, at *2 (S.D. Ohio Jan. 20, 2010) (internal quotation marks and citations omitted) (Kemp, J.); *see also Haynes v. City of Circleville*, No. 2:03-CV-1146, 2005 WL 3263313, at *3 (S.D. Ohio Dec. 1, 2005) ("Discovery deadlines are an essential mechanism for

cases becoming trial-ready in an efficient, just, and certain manner, and attempting to enforce those deadlines does not indicate a lack of civility.") (Kemp, J.). Plaintiffs simply ignored this Court's deadline.

Rule 16(b)(4) states that "[a] schedule may be modified only for *good cause* and *with the judge's consent*." Fed. R. Civ. P. 16(b)(4) (emphasis added). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citation omitted). When the party seeking to establish "good cause" has not been diligent, that alone is dispositive: the Court need not even consider whether the opposing party would suffer prejudice. *See Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) ("[C]ourts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist 'additional reasons to deny a motion'") (internal citation omitted); *Bates v. Tinajero*, No. 2:14-CV-0144, 2014 WL 12571410, at *7 (S.D. Ohio Dec. 4, 2014) ("The focus is primarily upon the diligence of the movant; the absence of prejudice to the opposing party is not equivalent to a showing of good cause") (Kemp, J.). "Without evidence of some diligence on plaintiff's part, the mere absence of prejudice to the opposing party is not sufficient . . . Otherwise, scheduling orders would have no impact in cases where delays were not prejudicial, and parties would have no incentive to act diligently to meet court-ordered deadlines so long as their delays could be accommodated." *Shrieve v. DaimlerChrysler Corp.*, No. 2:05-CV-0446, 2006 WL 1526878, at *2 (S.D. Ohio May 31, 2006) (Kemp, J.).

### 1.    Plaintiffs Cannot Establish Good Cause Because They Were Not Diligent.

Plaintiffs have offered no explanation for their failure to provide a timely, Rule 26-compliant expert report.  If their reason is that they did not have evidence they needed from Defendants, that is insufficient.  Equifax responded to Plaintiffs' discovery responses several months before Plaintiffs' expert report deadline, leaving Plaintiffs ample time and opportunity to seek additional documents or depose Equifax representatives before their expert disclosure deadline.  *See* Ex. B; Ex. C.  Plaintiffs failed to raise any issues with Equifax's discovery responses or to seek additional documents from Equifax until June 14, 2016, more than four months after their expert report deadline had passed.  *See* email from M. Lewis to J. Toro and Z. McEntyre dated June 14, 2016, attached as Ex. J.  And Plaintiffs still have not deposed any representatives of Equifax (or Name Seeker).  At a minimum, if Plaintiffs needed additional time for discovery before preparing and submitting their expert report, they should have asked the Court to extend the deadline.  They did not.[8]

A party cannot demonstrate diligence, and therefore cannot demonstrate good cause, if it "did not timely move for modification [of the scheduling order], despite having ample time between learning they could not meet the deadline and the expiration of the deadline."  *Moore v. Indus. Maint. Serv. of Tennessee, Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014); *see Chuck Bivens Servs., Inc. v. McWane, Inc.*, No. 2:12-CV-200, 2013 WL 2468170, at *3 (S.D. Ohio June 7, 2013) (plaintiff was not diligent where plaintiff knew before the expert disclosure deadline expired that it would need an extension, but waited nearly two months to seek an extension).  In

---

[8] In October 2015, Plaintiffs recognized the impending deadlines and mentioned that they were considering addressing these scheduling issues with the Court.  *See* email from M. Lewis to B. Melber dated October 6, 2015, attached as Ex. K.  But Plaintiffs did not address these scheduling issues with the Court, apparently a conscious and strategic decision on their part.

*Haynes*, 2005 WL 3263313, at *3, for example, the plaintiff failed to establish diligence and "good cause" for submitting their expert report ten months after the deadline, where "[n]othing in the record suggest[ed] that [plaintiff] was prevented from requesting an extension if [plaintiff] knew the expert report was not prepared." The same is true here. Having not conducted the discovery they needed within the time allowed under this Court's scheduling order—nor having asked this Court to modify its order to allow them more time—Plaintiffs were not "diligent." The Purported Supplemental Report should be stricken under Rule 16.

### 2. The Purported Supplemental Report Would Prejudice Equifax.

Plaintiffs' lack of diligence is dispositive, and the Court need not reach the prejudice inquiry. *See Smith*, 595 F. App'x at 479; *Bates*, 2014 WL 12571410, at *7; *Shrieve*, 2006 WL 1526878, at *2. But if it did, Equifax is clearly prejudiced. Equifax deposed Mr. Hendricks over seven months ago concerning his Affidavit, incurring significant expense and burden in the process. It did so as a matter of necessity—its deadline to respond to Plaintiffs' motion for class certification was looming, and it was far from clear if or when Plaintiffs intended to supplement Mr. Hendricks' Affidavit (or if they would be permitted to do so).

If the Purported Supplemental Report is not stricken, Equifax will have to depose Mr. Hendricks again—and potentially depose other witnesses—and incur the additional prejudicial expense and burden associated with doing so.[9] *See Brown v. Scott*, No. 2:12-CV-1071, 2013 WL 5923109, at *3 (S.D. Ohio Nov. 4, 2013) (plaintiffs failed to establish "good cause" under Rule 16 where defendants had already deposed plaintiffs' experts and would face the potential of substantially increased expenses and delay if required to depose him again);

---

[9] Plaintiffs seem to anticipate that a second deposition of Evan Hendricks would be necessary since they stated in their email transmitting the Purported Supplemental Report to Equifax: "If anyone would like to depose Mr. Hendricks while discovery is stayed, Plaintiffs agree to schedule his deposition." Ex. E at p. 1.

*Ewert v. Holzer Clinic, Inc.*, No. 2:09-CV-131, 2010 WL 2854125, at *2 (S.D. Ohio July 19, 2010) (opposing party would be prejudiced by having to retake certain depositions).  Given that Mr. Hendricks' barebones Affidavit has ballooned into a 15-page "report," that expense is likely to be significant.  And taking additional depositions would almost certainly further prolong this already long-running litigation.  *See Snyder v. Fleetwood RV, Inc.*, No. 2:13-CV-1019, 2016 WL 2837747, at *4 (S.D. Ohio May 13, 2016) (denying plaintiff's motion for leave to disclose expert witness where "defendants would need to conduct additional discovery and be subjected to further delay to resolution of this matter, which is already three years old") (Kemp, J.).

This Court should not countenance a Rule 26 expert report submitted nearly an entire year after the deadline.  Instead, the Court should strike the untimely Purported Supplemental Report.  *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  Equifax also respectfully requests that the Court award its reasonable expenses in bringing this motion based on the Court's authority under Rule 16.  Fed. R. Civ. P. 16(f).  Further, if the Court does not strike the Purported Supplemental Report, Equifax respectfully requests that the Court award its reasonable expenses in preparing for and taking a second deposition of Mr. Hendricks.  *See* Fed. R. Civ. P. 16(f) ("[T]he court must order the party, its attorney, or both to pay the reasonable expenses . . . incurred because of any noncompliance with this rule . . .").

**B.      The Purported Supplemental Report Does Not Qualify As A "Supplement" Under Rule 26.**

The Purported Supplemental Report does not qualify as a "supplement" within the meaning of Rule 26 for the simple reason that there was no Rule 26-compliant expert report to supplement.  And even if Mr. Hendricks' Affidavit did count as a Rule 26 expert report, the Purported Supplemental Report would still be improper because it is not a "supplemental" report, but an entirely *new* expert report.

21

**1.    The Purported Supplemental Report Does Not Fall Within The Narrow Scope Of Permissible Supplementation Under Rule 26(e).**

"Courts have narrowly construed the scope of supplementation of an expert report under Rule 26(e)." *Equal Employment Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-dkv, 2013 WL 12043555, at *12 (W.D. Tenn. July 19, 2013). Plaintiffs have failed to offer one of the "narrow reasons for permissible supplementation" set forth in Rule 26(e)—namely, the correction of "previously supplied information." *Ullman*, 2007 WL 1057397, at *4–5.[10]  As courts in the Sixth Circuit hold, "Rule 26(e) 'does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label.'" *Tanner*, 2015 WL 8310291, at *3 (citation omitted). Or, put another way, the purpose of supplementation is not to "supply[ ] wholly missing information." *Ullman*, 2007 WL 1057397, at *3 (striking expert's supplemental report). Courts do not "accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions" because "[t]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert preparation." *Equal Employment Opportunity Comm'n*, 2013 WL 12043555, at *11 (citation omitted).

There is nothing corrective about Mr. Hendricks' Purported Supplemental Report. It simply attempts to supply opinions, reasoning, and analysis that were missing from his Affidavit. By Mr. Hendricks' own admission, the Affidavit was not intended to be an expert report; it was meant solely as support for Plaintiffs' motion for class certification. *See* Hendricks Dep., 73:6–

---

[10] The rationale behind the narrow scope of permissible supplementation is especially apparent here, where it is not clear whether Plaintiffs intend the Purported Supplemental Report to be Mr. Hendricks' "final" report, or whether they intend to continually supplement the report as discovery progresses.

75:22; 116:1–5; 135:6–11.  The opinions in the Purported Supplemental Report that go to the merits of this case, including the "red flags" that allegedly should have put Equifax on notice of AMG's concealed fraud, are therefore not extensions of the class certification-focused opinions expressed by Mr. Hendricks in his Affidavit—they are altogether new opinions.

Where (as here) plaintiffs "submit[] a manifestly incomplete report lacking analysis or a supporting rationale," and then, after the expert report deadline has run, "submit[] a fuller report," the later-filed report is not a proper "supplementation" under Rule 26(e) "but instead an entirely new" and untimely expert report.  *Tanner*, 2015 WL 8310291, at *3; *see also Ullman*, 2007 WL 1057397, at *4–5 ("By seeking to transform a conclusory [expert] report and its unexplained opinion via supplementation, Plaintiffs are in effect essentially and impermissibly presenting a new opinion.").  The Purported Supplemental Report should be stricken.

### 2. Plaintiffs' Belated Submission Of The Purported Supplemental Report Is Neither Substantially Justified Nor Harmless.

Plaintiffs' belated submission of the Purported Supplemental Report is not substantially justified or harmless.  A "new" expert report, submitted after the expert disclosure deadline under the guise of Rule 26(e) supplementation, is properly excluded under Rule 37 unless the late-filed report is harmless or substantially justified.  *Tanner*, 2015 WL 8310291, at *3–4.  "The burden of proof is on the potentially sanctioned party to prove harmlessness or justification." *R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 909.  Plaintiffs cannot meet that burden.

Plaintiffs agreed to the schedule under which their expert reports were due by February 1, 2016 (*see* Dkt. 68), and Plaintiffs could have sought relief from that deadline if Mr. Hendricks needed more time to prepare a Rule 26-compliant report.  For whatever reason, Plaintiffs did not seek an extension, and their belated submission of an expert report nearly an entire year after the deadline cannot be justified.  Nor are Plaintiffs' actions the result of a harmless, "honest

mistake."[11]  *See Bates*, 2014 WL 12571410, at *4 (noting that the Sixth Circuit "has explained that the advisory committee note to Rule 37 strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party") (citation omitted) (Kemp, J.).  Plaintiffs' conduct is not harmless simply because Equifax might be able to re-depose Mr. Hendricks.  *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc*., No. 12-CV-11500, 2014 WL 10294798, at *4 (E.D. Mich. June 16, 2014) ("To find that the Clinic Defendants' clear failure to tender a proper expert report is harmless solely because the expert could later be deposed would turn the rule on its head and essentially render it a nullity. The Court does not find that the Clinic Defendants' submission of Davis' report is harmless.").  To the contrary, the burden and expense associated with a second deposition, and the further delay it will necessitate, are inherently harmful.

### 3. The Purported Supplemental Report Should Be Stricken And Equifax Should Be Awarded Its Reasonable Expenses In Bringing This Motion.

Because Plaintiffs' belated submission of the Purported Supplemental Report is neither justified nor harmless, it should be stricken under Rule 37.  *See Bates*, 2014 WL 12571410, at *5 (imposing mandatory sanction of exclusion under Fed. R. Civ. P. 37(c)).  Equifax also respectfully requests that the Court award its reasonable expenses in bringing this motion based on the Court's authority under Rule 37.  *See* Fed. R. Civ. P. 37.  And, if the Court does not strike the Purported Supplemental Report, Equifax asks that the Court award its reasonable expenses, including attorney's fees, in preparing for and taking a second deposition of Mr. Hendricks.  *See*

---

[11] While "[h]armlessness . . . is key under Rule 37, not prejudice," *Chuck Bivens Servs., Inc.*, 2013 WL 2468170, at *5 (citation omitted), as outlined above, Equifax would clearly suffer prejudice if Plaintiffs' belated submission of the Purported Supplemental Report were allowed.

Fed. R. Civ. P. 37(c)(1) (authorizing the Court to order "payment of the reasonable expenses . . . caused by the failure" and "other appropriate sanctions").

<u>CONCLUSION</u>

For the reasons set forth above, Equifax respectfully requests this Court grant its Motion To Disregard The Affidavit And Strike The Purported Supplemental Report Of Evan Hendricks. Equifax also respectfully requests that the Court award its reasonable expenses in bringing this motion. If the Court does not strike the Purported Supplemental Report, Equifax respectfully requests that the Court also award its reasonable expenses, including attorney's fees, in preparing for and taking a second deposition of Mr. Hendricks.

<u>CERTIFICATION OF COUNSEL</u>

In compliance with Federal Rule of Civil Procedure 37, Equifax certifies that prior to filing this motion, its counsel conferred with counsel for Plaintiffs in a good faith effort to resolve by agreement the issues raised by the motion but were unable to do so.

DATED: February 10, 2017.

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
John C. Toro (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
zmcentyre@kslaw.com
mroper@kslaw.com
jtoro@kslaw.com

THE CHANDRA LAW FIRM
Donald Screen (Attorney No. 044070)
1265 W. 6th Street, Suite 400
Cleveland, OH 44113
Tel: (216) 578-1700
Fax: (216) 578-1800

Donald.Screen@chandralaw.com

*Counsel for Defendant Equifax Information Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2017, I caused to be served the foregoing through the Court's CM/ECF system to the following attorneys of record:

Mark D Lewis
Elizabeth Alice Mote
Kitrick, Lewis & Harris Co LPA
445 Hutchinson Ave.,
Suite 100
Columbus, OH 43235
Email: mlewis@klhlaw.com
Email: liz@klhlaw.com

Brian M Garvine
Law Office of Brian Garvine LLC
5 E Long Street,
Suite 1100
Columbus, OH 43215
Email: brian@garvinelaw.com

Jeremiah E Heck
Katherine L Wolfe
Luftman & Heck and Associates
580 East Rich Street
Columbus, OH 43215
Email: jheck@lawlh.com
Email: kkeenan@lawlh.com

Robert J Wagoner
Robert J. Wagoner Co., L.L.C.
445 Hutchinson Ave.,
Suite 100
Columbus, OH 42335
Email: Lainie@wagonerlawoffice.com

*Attorneys for Plaintiffs*

Ashley L Oliker
Katherine Marie Klingelhafer
Frost Brown Todd, LLC
10 W. Broad Street, Suite 2300,
Columbus, OH 43215
Email: aoliker@fbtlaw.com
Email: kklingelhafer@fbtlaw.com
Beth-Ann E Krimsky

Richik Sarkar
McGlinchey Stafford PLLC
25550 Chagrin Blvd.
Suite 406
Cleveland, OH 44122
Email: rsarkar@mcglinchey.com

Aaron Paul Heeringa
BuckleySandler LLP
353 N Clark Street,
Suite 3600
Chicago, IL 60654
Email: pheeringa@buckleysandler.com

Richard Eric Gottlieb
Buckley Sandler LLP
100 Wilshire Blvd
Suite 1000
Santa Monica, CA 90401
Email: rgottlieb@buckleysandler.com

Jason Ryan Harley
McDonald Hopkins
250 West Street
Suite 550
Columbus, OH 43215
Email: jharley@mcdonaldhopkins.com

*Attorneys for Name Seeker, Inc.*

Lawren A Zann
Greenspoon Marder, P.A.
Trade Centre South
100 West Cypress Creek Road
Suite 700
Fort Lauderdale, FL 33309
Email: beth-ann.krimsky@gmlaw.com
Email: Lawren.zann@gmlaw.com

**Attorneys for United Debt Services, LLC**

*/s/  Zachary A. McEntyre*
Zachary A. McEntyre