UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PETER BLASI, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-00083-GCS-TPK |
| | ) | |
| UNITED DEBT SERVICES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S AND
DEFENDANT NAME SEEKER, INC.'S JOINT REPLY IN SUPPORT OF THEIR
MOTIONS TO DISREGARD THE AFFIDAVIT AND STRIKE THE PURPORTED
<u>SUPPLEMENTAL EXPERT REPORT OF EVAN HENDRICKS</u>**

Zachary A. McEntyre (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
John C. Toro (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA  30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
zmcentyre@kslaw.com
mroper@kslaw.com
jtoro@kslaw.com

THE CHANDRA LAW FIRM
Donald Screen (Attorney No. 044070)
1265 W. 6th Street, Suite 400
Cleveland, OH 44113
Tel: (216) 578-1700
Fax: (216) 578-1800
Donald.Screen@chandralaw.com

*Counsel for Defendant Equifax Information
Services LLC*

Richard Eric Gottlieb (admitted *pro hac vice*)
A. Paul Heeringa (admitted *pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Phone: (312) 626-1813
Fax: (312) 648-6202
rgottlieb@manatt.com
pheeringa@manatt.com

Richik Sarkar
MCGLINCHEY STAFFORD PLLC
2550 Chagrin Blvd., Suite 406
Cleveland, OH 44122
Phone: (216) 378-4994
Fax: (216) 378-9910
rsarkar@mcglinchey.com

*Attorneys for Defendant, Name Seeker, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

I.    **The Court Should Strike The Purported Supplemental Report Because It Was Submitted In Violation Of Rule 16**..................................................................3

     A.    **The Hendricks Affidavit Is Not A Rule 26 Expert Report, And The Purported Supplemental Report Was The First Expert Report Plaintiffs Submitted.** ...............................................................................4

     B.    **Plaintiffs Have Not Established Good Cause To Justify Their Violation Of The Court's Rule 16 Scheduling Order.** ..........................................6

II.    **The Purported Supplemental Report Should Also Be Excluded Under Rules 26 And 37.** ................................................................................................................11

     A.    **The Purported Supplemental Report Is Not A "Supplement" Under Rule 26(e).** ....................................................................................................11

     B.    **Plaintiffs Have Failed To Establish That Their Belated Submission Of The Purported Supplemental Report Is Substantially Justified Or Harmless.** .....................................................................................................13

III.    **The Hendricks Affidavit And Purported Supplemental Report Are "Preliminary" In Nature And Therefore Should Be Stricken.** ...........................................15

IV.    **The Opinions In The Hendricks Affidavit And Purported Supplemental Report Are Improper Legal Conclusions Under Rule 702 And Should Be Stricken.** ..................................................................................................................19

V.    **Plaintiffs Do Not Dispute That The Purported Supplemental Report Is An Improper Attempt To Overcome The Facial Deficiencies In The Hendricks Affidavit And To Contradict Mr. Hendricks' Deposition Testimony**........................22

CONCLUSION ...................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. City of Columbus*,
No. 2:08-CV-31, 2010 WL 319942 (S.D. Ohio Jan. 20, 2010) (Kemp, J.) ..............................3

*Ayyash v. Bank Al-Madina*,
No. 04 CIV. 9201 (GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006)..................................23

*Balimunkwe v. Bank of America*,
Case No. 1:14-cv-327, 2015 WL 5167632 (S.D. Ohio Sept. 3, 2015) ...................................14

*Bates v. Tinajero*,
No. 2:14-CV-0144, 2014 WL 12571410 (S.D. Ohio Dec. 4, 2014) (Kemp, J.).....................10

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) .......................................................................................19, 20

*Brainard v. Am. Skandia Life Assurance Corp.*,
432 F.3d 655 (6th Cir. 2005) ...........................................................................................4, 5

*Chuck Bivens Servs., Inc. v. McWane, Inc.*,
No. 2:12-CV-200, 2013 WL 2468170 (S.D. Ohio June 7, 2013).............................................9

*Cohlmia v. Ardent Health Servs.*,
LLC, 254 F.R.D. 426 (N.D. Okla. 2008) ..............................................................................15

*Devito v. Smithkline Beecham Corp.*,
02-CV-0745, 2004 WL 3691343 (N.D.N.Y. Nov. 29, 2004)..................................................23

*Equal Employment Opportunity, Comm'n v. Heartland Auto. Servs., Inc*.,
No. 2:12-cv-02054-STA-dkv, 2013 WL 12043555 (W.D. Tenn. July 19,
2013) ...................................................................................................................................13

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997).............................................................................................................22

*Green v. Doukas*,
No. 97 CIV.8288CMGAY, 2001 WL 767069 (S.D.N.Y. June 22, 2001)...............................23

*Haynes v. City of Circleville*,
No. 2:03-CV-1146, 2005 WL 3263313 (S.D. Ohio Dec. 1, 2005) (Kemp, J.)...............3, 9, 10

*Howe v. City of Akron*,
801 F.3d 718 (6th Cir. 2015) ...............................................................................................14

*Inge v. Rock Fin. Corp.*,
   281 F.3d 613 (6th Cir. 2002) ................................................................6

*Kay v. American National Red Cross*,
   No. 2:09-cv-357, 2012 WL 261341 (S.D. Ohio Jan. 30, 2012)................................15

*Keener v. United States*,
   181 F.R.D. 639, 640 (D. Mont. 1998)......................................................12

*Kendall Holding, Ltd. v. Eden Cryogenics LLC*,
   No. 2:08-CV-390, 2013 WL 5366100 (S.D. Ohio Sept. 24, 2013) .......................22

*Killion v. KeHE Distributors, LLC*,
   761 F.3d 574 (6th Cir. 2014) .........................................................20, 21

*Leary v. Daeschner*,
   349 F.3d 888 (6th Cir. 2003) ..........................................................9, 10

*Martin v. Taft*,
   222 F. Supp. 2d 940 (S.D. Ohio 2002) ....................................................20

*Miller v. Rosenker*,
   578 F. Supp. 2d 107 (D.D.C. 2008), *rev'd in part sub nom.,* 594 F.3d 8 (D.C.
   Cir. 2010) ............................................................................23

*Moore v. Indus. Maint. Serv. of Tennessee, Inc.*,
   570 F. App'x 569 (6th Cir. 2014) .........................................................9

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
   657 F. Supp. 2d 905 (N.D. Ohio 2008), *aff'd,* 606 F.3d 262 (6th Cir. 2010) .............4, 5, 13

*Ross v. American Red Cross*,
   567 F. App'x. 296 (6th Cir. 2014) .....................................................9, 10

*Ross v. Jack Rabbit Servs., LLC*,
   No. 3:14-CV-00044-DJH, 2015 WL 1565430 (W.D. Ky. Apr. 8, 2015) ...............20

*Salgado v. General Motors*,
   No. 93 C 1427, 1996 WL 535333 (N.D. Ill., Sept. 19, 1996)........................ *passim*

*Salgado v. General Motors*,
   150 F.3d 738 (7th Cir. 1998) .....................................................15, 17, 18

*Shrieve v. DaimlerChrysler Corp.*,
   No. 2:05-CV-0446, 2006 WL 1526878 (S.D. Ohio May 31, 2006) (Kemp, J.) ....................10

*Smith v. Holston Med. Grp., P.C.*,
   595 F. App'x 474 (6th Cir. 2014) .....................................................10, 15

iv

*Southern Electric Supply Co. v. Lienguard, Inc.*,
   No. 05-cv-442, 2007 WL 2156658 (S.D. Ohio July 25, 2007)...............................................14

*Stein v. Foamex Int'l, Inc.*,
   No. Civ. A 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15, 2001)...........................................15

*Tanner v. Grand River Navigation Co., Inc.*,
   No. 14-CV-13478, 2015 WL 8310291 (E.D. Mich. Dec. 9, 2015) ................................11, 13

*In re Wal-mart Stores, Inc. Wage & Hour Litig.*,
   No. 06-02069 SBA, 2008 WL 1990806, at *7 (N.D. Cal. May 5, 2008) ...............................20

## Statutes

15 U.S.C. §§ 1681e, 1681b.........................................................................................................21

## Other Authorities

Fed. R. Civ. P. 15.......................................................................................................................10

Fed. R. Civ. P. 16................................................................................................................ *passim*

Fed. R. Civ. P. 23.......................................................................................................................18

Fed. R. Civ. P. 26................................................................................................................ *passim*

Fed. R. Civ. P. 33.....................................................................................................................7, 8

Fed. R. Civ. P. 37..................................................................................................................13, 15

Federal Rule of Evidence 702............................................................................................ *passim*

Ohio Civ. R. 7.2(a)(2)................................................................................................................23

## INTRODUCTION

Plaintiffs' Opposition confirms that Plaintiffs did not submit an expert report in this case until 10 months after their court-imposed deadline for doing so.  Before that deadline expired, Plaintiffs submitted only the three-page Hendricks Affidavit.  But the Affidavit should be disregarded because it does not come close to qualifying as a Rule 26 expert report—a fact that Plaintiffs and Mr. Hendricks readily acknowledged before Equifax and Name Seeker brought their Motions.  By submitting the Purported Supplemental Report 10 months after the Court's deadline for expert reports, without having diligently attempted to comply with that deadline, Plaintiffs plainly violated Rule 16.  That violation should result in exclusion of the Purported Supplemental Report.[1]

Plaintiffs now try to justify their violation of the Court's Rule 16 scheduling order by asserting that Equifax and Name Seeker failed to timely respond to their discovery requests.  But Rule 16 does not work that way.  If Plaintiffs thought they needed additional discovery to prepare a Rule 26 expert report in accordance with the Court's scheduling order, at a minimum they should have moved for an extension of their deadline.  They did not, instead opting to serve a placeholder affidavit (not an expert report) and unilaterally grant themselves a 10-month extension of their expert report deadline.  And, in any event, Plaintiffs' assertions about Equifax's and Name Seeker's discovery conduct are flatly wrong.  Equifax and Name Seeker

---

[1] Equifax filed its Motion To Disregard The Affidavit And Strike The Purported Supplemental Expert Report Of Evan Hendricks on February 10, 2017 ("Equifax's Motion" or "EFX Brief"). (Dkt. 211).  On February 22, 2017, Name Seeker filed its Motion To Disregard The Affidavit And Strike The Purported Supplemental Expert Report Of Evan Hendricks ("Name Seeker's Motion" or "NS Brief"), in which it joined in Equifax's Motion and proffered additional arguments.  (Dkt. 214).  On March 22, 2017, Plaintiffs filed their Combined Memorandum Contra Defendant Equifax Information Services LLC's And Defendant Name Seeker, Inc.'s Motions To Disregard The Affidavit And Strike The Supplemental Expert Report Of Evan Hendricks ("Plaintiffs' Opposition" or "Opp.").  (Dkt. 226).  In the interest of streamlining the briefing for the Court's benefit, Equifax and Name Seeker file this Joint Reply.

timely responded to Plaintiffs' discovery requests and produced documents in compliance with the Court-imposed fact discovery deadline.  Indeed, although Equifax responded to written discovery and produced documents more than four months before Plaintiffs' February 1, 2016 expert report deadline, Plaintiffs failed to raise any issues with Equifax's discovery responses or seek additional documents until June 2016, more than four months after their expert report deadline.  That is not diligence under Rule 16.

The Purported Supplemental Report should also be excluded under Rules 26 and 37.  Because the Hendricks Affidavit is not a Rule 26 expert report, there simply was no expert report to supplement when Plaintiffs served the Purported Supplemental Report in December 2016.  And even if the Hendricks Affidavit had been a real expert report, the Purported Supplemental Report is not a proper "supplement" within the meaning of Rule 26(e).  It expresses myriad new opinions that are nowhere to be found in the Hendricks Affidavit.  Nor is Plaintiffs' violation of Rule 26 harmless just because Plaintiffs told Equifax and Name Seeker that Mr. Hendricks may seek to amend his opinions.

Plaintiffs likewise try in vain to refute the arguments presented in Name Seeker's Motion, arguing that the Hendricks Affidavit and Purported Supplemental Report: (1) should not be excluded as preliminary because *Salgado v. General Motors* is somehow distinguishable, and (2) do not "usurp the role of the Court and jury" because they merely "embrace the ultimate legal issues to be decided by the jury."  (Opp. at pp. 28–31).  But Plaintiffs are wrong because (i) the parallels between the preliminary nature of the opinions offered by Mr. Hendricks here and those that led to the expert's exclusion in *Salgado* are substantial; and (ii) courts have recognized that opinions like those offered by Mr. Hendricks in this case—i.e., opinions that contain legal terms or argue whether a defendant's diligence procedures were "unreasonable" or "inadequate" or

otherwise violated the FCRA—are impermissible legal conclusions that are properly stricken under Federal Rule of Evidence 702.  Plaintiffs also fail to contest Name Seeker's argument that the Purported Supplemental Report improperly attempts to supplant the Hendricks Affidavit and unfavorable deposition testimony; thus, Plaintiffs concede that the Purported Supplemental Report should be stricken on those grounds.

## ARGUMENT

### I.     The Court Should Strike The Purported Supplemental Report Because It Was Submitted In Violation Of Rule 16.

Plaintiffs' Opposition confirms that the Hendricks Affidavit is not—and was not intended to be—a Rule 26 expert report, and that the Purported Supplemental Report was the first expert report that Plaintiffs submitted in this case.  (*See* Opp. at pp. 20–21).  Yet, Plaintiffs submitted Mr. Hendricks' Purported Supplemental Report *over 10 months after their expert report deadline.*  That is a facial violation of Rule 16.  *See* Fed. R. Civ. P. 16(b)(4) (court-ordered deadline for Rule 26 disclosures "may be modified only for good cause and with the judge's consent").

Contrary to Plaintiffs' view, court-ordered deadlines have meaning.  Compliance with court-ordered deadlines for Rule 26 expert disclosures is particularly "critical to maintaining integrity in court proceedings."  *Arnold v. City of Columbus*, No. 2:08-CV-31, 2010 WL 319942, at *2 (S.D. Ohio Jan. 20, 2010) (internal quotation marks and citations omitted) (Kemp, J.); *see also Haynes v. City of Circleville*, No. 2:03-CV-1146, 2005 WL 3263313, at *3 (S.D. Ohio Dec. 1, 2005) ("Discovery deadlines are an essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. . . .") (Kemp, J.).  The Court should exclude the Purported Supplemental Report because Plaintiffs submitted it in violation of Rule 16 and this Court's scheduling order.

**A.    The Hendricks Affidavit Is Not A Rule 26 Expert Report, And The Purported Supplemental Report Was The First Expert Report Plaintiffs Submitted.**

Plaintiffs now contend, despite their earlier statements to the contrary, that the Hendricks Affidavit was in fact a Rule 26 report, and thus that they satisfied the Court's February 1, 2016 deadline by submitting it.  As Plaintiffs' and Mr. Hendricks' prior assertions demonstrate, that is wrong.

The Hendricks Affidavit is entirely conclusory; it does not contain any "basis and reasons" for Mr. Hendricks' opinions as Rule 26 requires.  *See* Fed. R. Civ. P. 26(a)(2)(B); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 909 (N.D. Ohio 2008), *aff'd*, 606 F.3d 262 (6th Cir. 2010) (An expert "report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions.  It must explain factually why and how the witness has reached them.") (citation omitted); *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (An expert report "must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation.").  Mr. Hendricks' conclusion in his Affidavit that Equifax and Name Seeker did not comply with the due diligence requirements imposed by the FCRA is not supported by *any reasoning whatsoever*.  (*See* Dkt. 113 at ¶¶ 7–8).  Indeed, although the Hendricks Affidavit states that Equifax and Name Seeker engaged in inadequate due diligence because they "fail[ed] to verify the end-user of the credit reports at issue," (*id*. at ¶¶ 7–8), the Affidavit *does not identify a single fact* to support these conclusory assertions.  Mr. Hendricks himself admitted during his deposition that his Affidavit was devoid of "that sort of detail."  (Dkt. 225 ("Hendricks Dep.") at 115:12–22).  Conclusory opinions, such as the Hendricks Affidavit, which contain "nothing but a bottom line[,]" do not meet the Rule 26 requirements for an expert report.  *Brainard*, 432 F.3d at 664 (citation omitted).

4

Moreover, the Hendricks Affidavit does not contain "the facts or data considered by [Mr. Hendricks] in forming [his opinions]."  *See* Fed. R. Civ. P. 26(a)(2)(B).  Mr. Hendricks' cryptic statement that he reviewed "relevant discovery responses" (Dkt. 113 at ¶ 2), is plainly insufficient to comply with Rule 26.  *See, e.g., R.C. Olmstead, Inc*., 657 F. Supp. 2d at 911–12 ("Reid's failure to disclose what 'details of the case' he considered, and his failure to provide any indication of how those details influenced his conclusions, are so prejudicial to Defendants as to, in and of themselves, merit exclusion of his report.").  Due to these and other obvious shortcomings, the Hendricks Affidavit is not a Rule 26 expert report.

Presumably for all of these reasons, Plaintiffs' counsel and Mr. Hendricks have both expressly admitted that the Hendricks Affidavit was not intended to be a Rule 26 expert report. In an email Plaintiffs' counsel sent to Mr. Hendricks right before Mr. Hendricks began preparing his Affidavit, Plaintiffs' counsel stated: "*I do not believe we need an expert report*"; instead, Plaintiffs wanted "simply . . . an opinion via affidavit that you believe the defendants violated the FCRA if in fact that is your opinion."  (NS Brief, Ex. E).  Unsurprisingly, Mr. Hendricks testified that his Affidavit "*is not an expert report.*"  Hendricks Dep. 74:20–75:22.  And, in an email to Equifax's and Name Seeker's counsel regarding the Hendricks Affidavit, Plaintiffs' counsel stated: "Evan [Hendricks] *did not provide a report*.  At this point, he has only provided the affidavit we attached to our Motion to Certify." (EFX Brief, Ex. D).  Plaintiffs' assertion in their Opposition that they did not make that statement is simply inexplicable.  (*See* Opp. at p. 12).

Plaintiffs' newly concocted argument that the Hendricks Affidavit is a Rule 26 expert report should be seen for what it is: an after-the-fact attempt to justify Plaintiffs' decision to

submit their first and only expert report 10 months after the deadline for doing so.  The Court should reject this argument and disregard the Hendricks Affidavit.

**B.  Plaintiffs Have Not Established Good Cause To Justify Their Violation Of The Court's Rule 16 Scheduling Order.**

By submitting their expert report over 10 months after the Court-imposed deadline for doing so, Plaintiffs plainly violated Rule 16.  *See* Fed. R. Civ. P. 16(b)(4).  This violation should result in exclusion of the Purported Supplemental Report because Plaintiffs cannot show the "good cause" necessary for a retroactive modification of the Court-ordered deadline.  Among other reasons, Plaintiffs did not diligently try to meet their original deadline, and did not even move for an extension of the deadline.  *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.") (citation omitted).

Plaintiffs try to excuse their failure to submit a timely expert report by contending that Equifax and Name Seeker failed to make their document productions in a "timely" manner.  (*See* Opp. at pp. 15–16).  But Plaintiffs cannot credibly dispute that Equifax and Name Seeker responded to Plaintiffs' discovery requests and produced documents in compliance with the Court-imposed fact discovery deadline.  Plaintiffs did not issue discovery requests to Equifax until May 20, 2015.  (*See* Requests attached as Ex. A).  Plaintiffs did not issue discovery requests to Name Seeker until July 22, 2015.  (*See* Ex. B, P. Heeringa email to B. Garvine dated Aug. 13, 2015, attached).  Equifax timely responded to Plaintiffs' written discovery requests (including with detailed interrogatory responses) on July 6, 2015 (EFX Brief, Ex. B), and produced documents in response to those requests on September 25, 2015 (EFX Brief, Ex. C).  This left Plaintiffs plenty of time to seek supplemental information, request additional documents, or depose Equifax's representatives before their February 1, 2016 expert report deadline.  But rather

than diligently pursuing discovery in advance of their expert report deadline, Plaintiffs failed to raise *any* issues with Equifax's discovery responses or to seek additional documents until June 14, 2016, *more than 4 months after that deadline*.  (EFX Brief, Ex. J).  In fact, it appears that Plaintiffs made no effort whatsoever to review and assess Equifax's original document production between September 25, 2015 (when the documents were produced) and February 1, 2016 (their expert report deadline).[2]

Plaintiffs were just as dilatory in seeking discovery from Name Seeker.  Pursuant to an extension agreement that Plaintiffs' Opposition fails to mention, Name Seeker timely responded to Plaintiffs' discovery requests on September 28, 2015.  (*See* Ex. B; *see also* Ex. C, Harley letter to All Counsel dated Sept. 28, 2015 and Ex. D, Name Seeker's Resp. to Pltfs' 1st Set of Interrogatories and Requests for Production, attached).  Because Plaintiffs served more interrogatories than are allowed under Rule 33, however, Name Seeker objected to Plaintiffs' interrogatories and requested, prior to the agreed-upon deadline, that Plaintiffs re-issue them in compliance with Rule 33.  (*See* Ex. D; *see also* Ex. E, P. Heeringa email to Plaintiffs' counsel dated Sept. 23, 2015, attached).  While Plaintiffs did not respond to Name Seeker's request regarding their interrogatories, Name Seeker nevertheless responded to Plaintiffs' requests for production in full and agreed to produce documents, but told Plaintiffs that it would produce its documents "only after entry of a suitable protective order covering Name Seeker" due to privacy and other confidential/proprietary interests implicated by Plaintiffs' requests.  (*See* Ex. D at p. 6, General Obj. No. 16).  Plaintiffs did not raise any issues with respect to Name Seeker's discovery responses until nearly two months later on November 24, 2015, and the parties met

---

[2] On June 14, 2016, Plaintiffs sent an email to Equifax that listed 23 supposed deficiencies in Equifax's discovery responses and document productions.  (*See* EFX Brief, Ex. J).  Plaintiffs made no effort to engage in this sort of meet and confer effort *before* their expert report deadline.

and conferred on December 7, 2015.  (*See* Ex. F, counsel emails dated Nov. 24, 2015 and Ex. G, counsel emails dated between Dec. 8 and Dec. 18, 2015, attached).  As part of that meet and confer effort, Plaintiffs agreed to withdraw and re-issue their interrogatories in compliance with Rule 33, and Name Seeker reminded Plaintiffs that it would produce documents after entry of a suitable protective order.  (*See* Ex. G at pp. 1, 3).

Plaintiffs did not provide Name Seeker with a draft protective order until December 18, 2015.  (*Id.* at p. 1).  And Plaintiffs did not follow up with Name Seeker on the draft protective order or serve their reissued interrogatories until February 4, 2016—three days *after* their February 1, 2016 expert disclosure deadline.  (*See* Ex. H, Wagoner email to Heeringa dated Feb. 4, 2016, attached).  Then, between February 4 and March 15, 2016, after considerable back and forth, the parties worked out a unified protective order that would cover all parties to this litigation, which the Court entered on March 16, 2016.  (Dkt. 119; *see also* Ex. I, counsel correspondence regarding unified protective order, attached; Dkt. 122).  Name Seeker produced documents the very same day the protective order was entered.  (Opp. at p. 18).

As this chronology (and Plaintiffs' own statements elsewhere in their Opposition) demonstrate, Plaintiffs' contention that they "believed all documents responsive to their [document] requests [had been] produced" before their February 1, 2016 expert report deadline is not credible.  (*See* Opp. at p. 6).  As of February 1, 2016, Name Seeker had not produced *any* documents to Plaintiffs, which Plaintiffs clearly knew.  And while Equifax had made an initial document production, it had also indicated to Plaintiffs that it had not completed its production. (EFX Brief, Ex. C (August 25, 2015 Email from Equifax's counsel to Plaintiffs' counsel stating

that Equifax will shortly "*begin* [its] document production" (emphasis added))).[3]  That Name

Seeker and Equifax were still in the process of producing documents as of February 1, 2016 is

understandable.  At that point, the fact discovery cut-off was four and a half months away.  (Dkt.

68 at p. 2).

Plaintiffs consented to the case schedule and the way it sequenced the proceedings,

putting Plaintiffs' expert disclosure deadline several months ahead of the fact discovery deadline.

(*See id.*)  If Plaintiffs thought they needed relief from that schedule, or if they thought they

needed additional discovery to prepare a timely expert report, they should have moved the Court

for an extension of their expert report deadline.  Plaintiffs say they "did not seek an extension of

the February 1, 2016 disclosure deadline because, *while the Plaintiffs expected they did not have*

*all of the discovery from the Defendants*, their expert was comfortable rendering opinions based

upon the discovery they had received to that point."  (Opp. at pp. 20–21).  Not only does this

belie Plaintiffs' argument that they thought Equifax and Name Seeker had completed their

document productions, it is an admission that Plaintiffs *deliberately chose* to serve an

incomplete, preliminary expert opinion, in violation of Rule 16.  Plaintiffs' failure to so much as

move for an extension of their expert report deadline demonstrates a clear lack of diligence.  *See*

*Moore v. Indus. Maint. Serv. of Tennessee, Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014); *Chuck*

*Bivens Servs., Inc. v. McWane, Inc.*, No. 2:12-CV-200, 2013 WL 2468170, at *3 (S.D. Ohio June

7, 2013); *Haynes*, 2005 WL 3263313, at *3.

Plaintiffs cite *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003), and *Ross v.*

*American Red Cross*, 567 F. App'x. 296, 306 (6th Cir. 2014), for the proposition that "[a] critical

factor in determining due diligence and 'good cause' is whether the new report or pleading is

---

[3] If Plaintiffs were unsure whether Equifax had completed its document production, they could
have simply asked Equifax for confirmation.  They did not.

based upon newly discovered information." (Opp. at p. 21). But *Leary* and *Ross* do not help Plaintiffs. In both cases, the plaintiffs moved for leave to amend their complaints under Rule 15 (in contrast, Plaintiffs did not move for leave here), and neither case involved expert testimony or an expert report. Perhaps more importantly, in both cases, the Sixth Circuit affirmed the district courts' *denial* of the plaintiffs' motions for leave to amend because the plaintiffs there— like Plaintiffs here—did not diligently try to comply with the courts' deadlines. *Leary*, 349 F.3d at 909; *Ross*, 567 F. App'x. at 307.

In sum, Plaintiffs elected not to seek an extension of their expert report deadline, and instead produced a placeholder affidavit that did not come close to complying with Rule 26. Plaintiffs did not serve anything resembling an expert report until December 2016, nearly a year after their Court-imposed expert report deadline. Because Plaintiffs did not diligently try to comply with their Rule 26 deadline for submitting an expert report, the Court should exclude the Purported Supplemental Report, regardless of any prejudice to Equifax and Name Seeker.[4] *See Haynes*, 2005 WL 3263313, at *3 (S.D. Ohio Dec. 1, 2005) (excluding expert report where plaintiff failed to prove good cause for violating scheduling order pursuant to Rule 16); *see also Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) ("[C]ourts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently. . . ."); *Bates v. Tinajero*, No. 2:14-CV-0144, 2014 WL 12571410, at *7 (S.D. Ohio Dec. 4, 2014) ("[T]he absence of prejudice to the opposing party is not equivalent to a showing of good cause") (Kemp, J.); *Shrieve v. DaimlerChrysler Corp.*, No. 2:05-CV-0446, 2006 WL 1526878, at *2 (S.D. Ohio May 31, 2006) ("Without evidence of some diligence on plaintiff's part, the mere absence of prejudice to the opposing party is not sufficient. . . .") (Kemp, J.).

---

[4] Even so, Equifax and Name Seeker *would* be prejudiced if the Court excuses Plaintiffs' violation, as Equifax explained in its opening brief. (*See* EFX Brief at pp. 20–21).

**II.     The Purported Supplemental Report Should Also Be Excluded Under Rules 26 And 37.**

Apart from Plaintiffs' violation of Rule 16, the Purported Supplemental Report should be excluded under Rules 26 and 37, as it is not a "supplement" under Rule 26(e), and Plaintiffs have failed to meet their burden of demonstrating that the Purported Supplemental Report is substantially justified or harmless.

**A.     The Purported Supplemental Report Is Not A "Supplement" Under Rule 26(e).**

Since the Hendricks Affidavit is not an actual expert report, it should be disregarded. And since Plaintiffs had made no effort to submit an expert report by the time they proffered the Purported Supplemental Report, there was no expert report for Mr. Hendricks to "supplement" under Rule 26(e), and the Purported Supplemental Report should be excluded on that basis.

Even if Mr. Hendricks' Affidavit did count as a Rule 26 expert report (and it does not), the Purported Supplemental Report would still be improper because it is an entirely new expert report.  Rule 26(e) does not give a party "a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Tanner v. Grand River Navigation Co., Inc.*, No. 14-CV-13478, 2015 WL 8310291, at *3 (E.D. Mich. Dec. 9, 2015) (citation omitted). Plaintiffs' assertion that "[n]o new opinions are expressed in [Hendricks' Purported] Supplemental Report" (Opp. at p. 15) is patently false.  The 15-page Purported Supplemental Report attempts to supply opinions, reasoning, and analysis that were wholly missing from Mr. Hendricks conclusory Affidavit, which consisted of only 3 pages of substantive text.   The opinions in the Purported Supplemental Report that go to the merits of this case, including Mr. Hendricks' discussion of certain "red flags" that allegedly should have put Equifax and Name Seeker on notice of AMG's elaborate fraud, are *not* simply extensions of the class certification-

focused opinions expressed by Mr. Hendricks in his Affidavit. They are altogether new opinions that appear nowhere in the Hendricks Affidavit. *Compare* EFX Brief, Ex. E, *with* Dkt. 113.

Plaintiffs cite *Keener v. United States* in support of their faulty view of Rule 26(e) supplementation, but that case squarely supports excluding Mr. Hendricks' Purported Supplemental Report. 181 F.R.D. 639, 640 (D. Mont. 1998). In *Keener*, a party submitted an initial expert report that did not comply with the requirements of Rule 26, and then later filed a tardy "supplement" in an attempt to correct the deficiencies of the initial report. *Id*. The court noted that the additions in the second report consisted of "information, reasoning and opinions that Rule 26 require[d] be disclosed in the critical initial disclosure." *Id*. And while the initial report there (like the Hendricks Affidavit here) was so sparse and conclusory as to be "tantamount to a non-opinion," the belated "supplement" provided opinions and detail that went "to the heart of the case." *Id*. at 641. Accordingly, the court precluded the expert from testifying as to any opinions expressed in his "supplemental" report, holding that it was untimely, it improperly contained new opinions and analysis, and the party proffering the expert had not requested an extension of time to file its Rule 26 expert report. *Id*. at 642. As in *Keener*, the Purported Supplemental Report is improper and should be excluded.

Not only does the Purported Supplemental Report fail to comply with Rule 26(e), it appears that Plaintiffs may not be finished trying to submit new expert opinions under the guise of Rule 26(e) supplements. Plaintiffs still have not deposed *any* representatives of Equifax or Name Seeker, and, at his deposition, Mr. Hendricks stated that he anticipated "supplementing" his Affidavit at the close of fact discovery and after the depositions of Equifax and Name Seeker. Hendricks Dep., 9:9–10:5; 18:21–19:3. Under Plaintiffs' logic, Mr. Hendricks has a license to continually "supplement" his report and provide new opinions as discovery progresses. But

courts do not "accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions" because "[t]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert preparation." *Equal Employment Opportunity, Comm'n v. Heartland Auto. Servs., Inc*., No. 2:12-cv-02054-STA-dkv, 2013 WL 12043555, at *11 (W.D. Tenn. July 19, 2013) (citation omitted).

### B. Plaintiffs Have Failed To Establish That Their Belated Submission Of The Purported Supplemental Report Is Substantially Justified Or Harmless.

The Purported Supplemental Report should also be excluded under Rule 37 because Plaintiffs have failed to show that its belated submission was substantially justified or harmless. *See Tanner*, 2015 WL 8310291, at *3–4; *R.C. Olmstead, Inc*., 657 F. Supp. 2d at 909. Plaintiffs stress that they told Equifax's and Name Seeker's counsel in advance that Mr. Hendricks would likely supplement his Affidavit and that Equifax and Name Seeker chose to depose Mr. Hendricks anyway. (Opp. at p. 23). That is irrelevant. A party cannot grant itself an extension of its expert report deadline, even if it warns its adversary that it intends to do so. In any event, Equifax and Name Seeker deposed Mr. Hendricks when they did because of the looming deadline for their class certification opposition briefs. (*See* Dkt. 68). And it was not clear *when* Plaintiffs planned to supplement the Hendricks Affidavit, or *if* they would even be allowed to do so.

Plaintiffs assert that Equifax and Name Seeker "depose[d] Hendricks for more than 7 hours . . . showing that they were sufficiently apprised of his expert opinions" and that Equifax and Name Seeker were able to "challenge[] Hendricks on the substance and form of his opinions." (Opp. at p. 12). This is wrong. While Equifax and Name Seeker deposed Mr. Hendricks regarding his barebones Affidavit, they have not been able to depose Mr. Hendricks

13

on the (baseless) opinions set forth in his Purported Supplemental Report, because it obviously did not exist at the time of his deposition in May 2016.

Plaintiffs are incorrect that *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015), supports their argument that the tardiness of the Purported Supplemental Report was substantially justified and harmless.  (*See* Opp. at pp. 24–26).  For one thing, *Howe* does not concern expert testimony or a Rule 26 expert report at all, both of which raise significantly different legal and practical concerns than the *Howe* plaintiffs' late-disclosed revision to their damages calculation.  Indeed, in *Howe*, the court stressed that the defendants had all of the underlying financial information necessary to calculate damages on their own, and thus were not harmed by plaintiffs' late disclosure of their revised damages calculation (which, in any event, was *more favorable* to the defendants than plaintiffs' original calculation).  801 F.3d at 748–49.  This case does not involve a mathematical calculation, and neither Equifax nor Name Seeker could simply craft Mr. Hendricks' expert opinions on their own.  Accordingly, the facts in *Howe* are readily distinguishable from those in this case.

Plaintiffs cite several other cases in their Opposition, none of which supports their argument that the Purported Supplemental Report should be allowed.  In *Balimunkwe v. Bank of America*, Case No. 1:14-cv-327, 2015 WL 5167632, at *6 (S.D. Ohio Sept. 3, 2015), the court specifically noted that defendants did not allege that they were harmed by plaintiff's delay (and the court *excluded* plaintiff's expert in any event).  In contrast, Equifax and Name Seeker *have been* harmed by Plaintiffs' dilatory actions.  (EFX Brief at pp. 20–21).  In *Southern Electric Supply Co. v. Lienguard, Inc.*, No. 05-cv-442, 2007 WL 2156658, at *4 (S.D. Ohio July 25, 2007), the court declined to strike a supplemental expert report where (unlike here) the opposing party was not prejudiced by it, the report was offered to address new legal arguments raised by

14

the opposing party, and there was no indication that the party proffering the report had acted

non-diligently.  Moreover, in *Lienguard*, there appears to have been no dispute that the expert's

original report was actually a Rule 26 expert report.  The expert's supplemental report, unlike

Mr. Hendricks' Purported Supplemental Report, thus was not the expert's first attempt to express

his opinions in the manner that Rule 26 requires.  Finally, in *Kay v. American National Red

Cross*, No. 2:09-cv-357, 2012 WL 261341, at *8–9 (S.D. Ohio Jan. 30, 2012) (citation omitted),

the court recognized that "Rule 26(e) does not give the producing party license to disregard

discovery deadlines and to offer new opinions under the guise of the supplement label"—as

Plaintiffs here have done—but declined to strike a supplemental expert affidavit that (unlike Mr.

Hendricks' Purported Supplemental Report) merely clarified a point following from the expert's

deposition and was consistent with her prior report.

**III.    The Hendricks Affidavit And Purported Supplemental Report Are "Preliminary" In Nature And Therefore Should Be Stricken.**

Plaintiffs argue that the Hendricks Affidavit and Purported Supplemental Report should

not be excluded for being "preliminary" in nature, arguing that (i) the *Salgado v. General Motors

Corp*. case, 150 F.3d 738 (7th Cir. 1998), is factually distinguishable from the present case,[5] and

(ii) the "timing and volume" of the Defendants' supplemental document productions somehow

---

[5] As mentioned in Name Seeker's Motion, the Sixth Circuit and this Court have repeatedly cited *Salgado* as authoritative on the disclosure requirements of Fed. R. Civ. P. 26(a)(2).  (*See* NS Brief at p. 3, n.3).  Plaintiffs do not challenge the legal applicability of *Salgado* here, nor do they dispute the well-accepted rule that "preliminary" expert reports are insufficient under Rule 26 and are properly stricken under Rule 37.  (*See id*. at pp. 2–3, citing *Sandata*, *Alvarado*, and *Smith*).  *See also Stein v. Foamex Int'l, Inc*., No. Civ. A 00-2356, 2001 WL 936566, at *6 (E.D. Pa. Aug. 15, 2001) ("The concept of preliminary expert reports is contrary to the policies of Rule 26" and "[a]llowing preliminary expert reports as a matter of course would afford litigants an opportunity to "mold their expert reports to meet [their opponent's] legal challenges.") (quoting *In re TMI Litig*., 922 F.Supp. 997, 1005, nn. 9–10 (M.D. Pa. 1996)); *Cohlmia v. Ardent Health Servs.*, LLC, 254 F.R.D. 426, 431 (N.D. Okla. 2008) ("'Preliminary expert reports, do not satisfy the requirements of Rule 26(a).") (citing *Salgado*, *In re TMI Litig.*, and *Smith*).  The only argument Plaintiffs make regarding *Salgado* is a misguided attempt at a factual distinction.

justifies their failure to produce "an initial report that addressed all the evidence" on February 1, 2016. (*See* Opp. at pp. 28–29). Plaintiffs' arguments are unavailing for several reasons.

*First*, Plaintiffs misstate the facts of *Salgado*, positing without citation that plaintiffs' counsel there "essentially acknowledged the produced expert report was insufficient under Rule 26, relying upon a claimed agreement made with opposing counsel that the expert report would be preliminary in nature." (Opp. at p. 29). But it was the *expert* in that case who "admitted that his report lacked a detailed discussion [of his opinions as required by Rule 26] because he had not been provided with discovery materials" by defendants. *Salgado*, 150 F.3d at 738. Further, much like here, the expert's report also included a "statement" indicating not only that the opinions were "preliminary in nature" but also that "[r]eview of th[e] outstanding discovery may necessitate modification and/or additions" to his report. *Salgado v. General Motors*, No. 93 C 1427, 1996 WL 535333, at *4 (N.D. Ill., Sept. 19, 1996), *aff'd* 150 F.3d 738 (7th Cir. 1998). The district court found the foregoing statement "troubling for the simple reason that . . . [the expert's] opinions w[ould] remain forever 'preliminary' in nature and in violation of the Rule 26 requirement that the report provide a 'complete statement' of the opinions to be expressed and the basis for those opinions," and thus barred the expert's testimony. *Id.*

*Second*, like in *Salgado*, the preliminary nature of the Hendricks Affidavit and Purported Supplemental Report is apparent. Indeed, Plaintiffs' counsel unambiguously told Equifax and Name Seeker that the Hendricks Affidavit was intended to "serve as Mr. Hendricks' *preliminary report.*" (NS Brief, Ex. A, emphasis added). Plaintiffs now state that "Hendricks did not prepare his typical more lengthy report because defendants failed to timely provide all the discovery" (the latter of which is not correct). (Opp. at p. 13). Similarly, Mr. Hendricks stated during his deposition that (i) his Affidavit did not contain a complete statement of his opinions to be

expressed in this case or the basis for those opinions because discovery was still "proceeding," and (ii) he "expected" to provide "more detailed opinions and more fully supported opinions once discovery is complete." Hendricks Dep., 9:18–19. And the Affidavit and Purported Supplemental Report each state that Mr. Hendricks may "revise or add to [his] findings and opinions as further information is provided in this case." (Dkt. 113-1 at ¶ 10; EFX Brief, Ex. E at pp. 1, 15). In sum, these statements parallel those that led to the preclusion of the expert's testimony in *Salgado* and, since discovery in this case is still ongoing, this Court should likewise be troubled by them "for the simple reason that [Mr. Hendricks'] opinions will forever remain 'preliminary' in nature and in violation of [] Rule 26." 1996 WL 535333, at *4.

*Third*, Plaintiffs further misconstrue the holding in *Salgado*, positing that the "court did not permit a supplemental expert report because . . . the discovery deadline had passed and it was clear that the evidence relied upon by the expert in the supplemental report was available to all parties long before the deadline for initial expert disclosures." (Opp. at p. 29). Yet, in reality, (i) the expert in *Salgado* was retained to give his opinion on a single piece of evidence (plaintiffs' wrecked car) that was naturally in plaintiffs' possession when the case was filed; (ii) there was no separate deadline for "initial expert disclosures" like in this case; (iii) plaintiffs' counsel moved for and received two lengthy extensions of the discovery deadline to "file Rule 26(a) material" yet failed to submit the expert's admitted "preliminary" report until three days after the court's "final deadline" to do so; (iv) counsel then "attempted to file a supplemental report . . . as an addendum to the original preliminary report" nearly three months after the "final deadline"; (v) counsel "never offered . . . a satisfactory explanation for [his] failure to comply with the directive of the district court"; and (vi) "[a]bsent a substantial justification for [the] delay," the district court concluded that it had "no choice but to exclude" the addendum. 1996 WL 535333,

at *2, 6; 150 F.3d at 738, 741–3. In short, the attempted "addendum" in *Salgado* was excluded simply because it was *untimely*, and plaintiffs' counsel there (like Plaintiffs' counsel here) lacked justification for his tardiness. *See* 1996 WL 535333, at *6; 150 F.3d at 742–743.

*Fourth*, the facts here are far worse than *Salgado*, in that Plaintiffs (i) had a separate Rule 26(a) expert disclosure deadline that expired over four months prior to the original discovery deadline, (ii) had roughly *ten months* (from March 20, 2015 to February 1, 2016) to obtain discovery to support Mr. Hendricks' opinions and in fact were provided copious discovery well in advance of their Rule 26(a) deadline, (iii) spent most of that ten months working on the Hendricks Affidavit, which was originally submitted in support of their Rule 23 motion, rather than deposing any witnesses or preparing a Rule 26(a)-compliant expert report, and (iv) never once sought an extension of their Rule 26(a) expert disclosure deadline or raised any issues with respect to Equifax's or Name Seeker's document productions prior to the expiration of that deadline. (*See* EFX Brief at pp. 6–9; NS Brief at pp. 11–12; *see also* Section I.B., *supra*, at pp. 6–8, discussing party discovery). Thus, the "timing and volume" of the Defendants' *supplemental* productions did not prevent Plaintiffs from producing a compliant expert report by the February 2016 deadline, and Plaintiffs' untenable argument to the contrary (*see* Opp. at p. 29) rings especially hollow here given their obviously lackadaisical approach to discovery.[6]

---

[6] Moreover, the Purported Supplemental Report contains *only one* Name Seeker-produced document, which is duplicative of a document Equifax had already produced in September 2015. (*See* EFX Brief, Ex. E at p. 1, referring to NS-000019–20). It would strain credulity to argue that Plaintiffs were in any way hampered by a lack of discovery *from Name Seeker* when Name Seeker's documents—even if they had been produced prior to February 1, 2016—do not form the basis of any opinions in the Purported Supplemental Report.

IV.     **The Opinions In The Hendricks Affidavit And Purported Supplemental Report Are Improper Legal Conclusions Under Rule 702 And Should Be Stricken.**

Plaintiffs further argue that the opinions presented in the Hendricks Affidavit and Purported Supplemental Report "are not improper legal conclusions and do not usurp the role of the Court and the jury" because "the case law cited by Name Seeker involves facts that are clearly distinguishable from the circumstances of this case."  (Opp. at p. 29).   However, the *only* case cited in Name Seeker's Motion that Plaintiffs try to distinguish is *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), and their effort to do so falls flat for several reasons.

*First*, Plaintiffs postulate, again without citation, that the expert in *Berry* was excluded because he "testified on the ultimate question of liability, essentially inserting himself into the role of the jury as the ultimate decisionmaker," but they do not indicate what testimony was found improper or why.  (Opp. at p. 30).  Nevertheless, in *Berry*, the Sixth Circuit held that the expert's use of legal terminology (*i.e.*, opinions about whether the defendant's failure to act was "reckless" and "constitute[d] a pattern of gross negligence" or "deliberate indifference") was improper under Rule 702, noting the expert had "carefully couched" his opinions "in the precise language used in [the relevant] case law" and thus had "invaded the province of the Court."  25 F.3d at 1353–54.

*Second*, Plaintiffs do not address the fact that Mr. Hendricks has stated legal opinions in this case very similar to those excluded in *Berry*.  Indeed, the FCRA requires, among other things, that consumer reporting agencies "maintain reasonable procedures . . . to limit the furnishing of consumer reports" to certain defined "permissible purposes" and "to verify the identity of a new prospective user and the uses certified by such prospective [end] user prior to furnishing such user a consumer report."  15 U.S.C. §§ 1681e, 1681b.  Mr. Hendricks based the opinions in his Affidavit on virtually the same terminology, opining that "in terms of ensuring

that class members' consumer reports would only be used for a permissible purpose," both Equifax and Name Seeker "did not satisfy . . . the due diligence requirements of the FCRA by, among other acts/omissions, failing to identify the end-user of the credit reports at issue in this matter." (*See* Dkt. 113-1 at ¶¶ 9, 10). The Purported Supplemental Report fares no better and offers similar opinions regarding the "adequacy" or "sufficiency" of the "due diligence" procedures employed by the Defendants. (*See* NS Brief at pp. 6–7). Various courts have recognized that phrases employed by Mr. Hendricks—like "due diligence" and "reasonableness" and "adequacy" just to name a few—are legal terms. *See*, *e.g.*, *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044-DJH, 2015 WL 1565430, at *3 (W.D. Ky. Apr. 8, 2015) (due diligence); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at *7 (N.D. Cal. May 5, 2008) (adequacy); *Martin v. Taft*, 222 F. Supp. 2d 940, 978 (S.D. Ohio 2002) (reasonableness). In sum, just like the expert's testimony in *Berry*, Mr. Hendricks' opinions in this case are replete with legal terms and were carefully couched in FCRA-related terminology; consequently, those opinions invade the province of the Court and, per the decision in *Berry*, should be stricken under Rule 702.

*Third*, although Plaintiffs imply otherwise, Name Seeker's Motion does not *directly* cite *Berry* and instead relies, in part, on the Sixth Circuit's holding in *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), which applied *Berry*. Plaintiffs do not try to distinguish *Killion* in their brief, and for good reason—it belies Plaintiffs' position. *Killion* involved alleged violations of the Fair Labor Standards Act. *Id.* at 577–78. The Sixth Circuit held that the district court did not abuse its discretion when it excluded the plaintiff's expert report under Rule 702 because (i) "[a]mong the report's contents [was] the recitation of legal principles, which is not appropriate expert testimony" and (ii) "[a]lthough the report contain[ed] [some] permissible

conclusions embracing the ultimate issue, it also contain[ed] impermissible legal conclusions" because some of the opinions were "plainly attempts to define legal terms." *Id.* at 593. Consequently, the court ruled that, "[a]lthough [the legal conclusions] d[id] not comprise the majority of the report, they [were] sufficient to support the conclusion that the district court acted within its discretion in excluding" the report in its entirety. *Id.* Thus, assuming *arguendo* that Mr. Hendricks' "reports" contain some permissible conclusions embracing an ultimate legal issue, *Killion* gives this Court authority to exclude them as a whole to the extent they also contain impermissible legal conclusions. The Court should do so here.

*Fourth*, although Plaintiffs claim, with almost no explanation, that Mr. Hendricks' opinions merely embrace the ultimate issues to be decided by the jury (*see* Opp. at p. 30), they ignore the numerous cases cited by Name Seeker (*see* NS Brief at pp. 4–5) *where Mr. Hendricks himself* and other experts were precluded under Rule 702 from testifying as to whether a defendant's due diligence procedures were unreasonable, conformed to a particular legal standard, were inadequate, or otherwise failed to comply with the requirements of the FCRA— which are precisely the kinds of inadmissible legal conclusions that Mr. Hendricks has given in this case. (*See id.* at pp. 5–6.) In other words, Mr. Hendricks does improperly "try to be the expert and the jury" in his opinions, contrary to Plaintiffs' assertions.

*Fifth*, Mr. Hendricks' opinions not only constitute impermissible legal conclusions, but they are also simply *wrong* and should be deemed inadmissible on this basis. In essence, Plaintiffs are now trying to hold Equifax and Name Seeker liable for not catching fraud allegedly perpetrated by AMG. (*See*, *e.g.*, EFX Brief, Ex. E at 2–3, 7.) But there is no dispute that, among other things, (i) AMG certified to Equifax and Name Seeker on numerous occasions that it would comply with the FCRA; (ii) Equifax properly and thoroughly vetted AMG and the purported end

21

user (New Wave Lending), a mortgage lender on whose behalf AMG purported to obtain prescreened lists, before selling any lists to AMG or New Wave; and (iii) Equifax and Name Seeker would have had no knowledge of any FCRA violations when selling prescreened lists to AMG—to the contrary, AMG employed a variety of subterfuge (*e.g.*, forging verification signatures, purchasing New Wave's web domain, etc.) to make it appear as if New Wave was active and using prescreened lists to market its lending services to its customers. (*See* NS Brief at p. 10; *see also id.*, Ex. B at 101:4–103:23; 262:4–276:22; 278:9–286:1; 295:5–23, 299:8–300:14; 309:4–310:17; 312:2–23; 313:6–315:10; 315:17–317:2; 320:6–25; 322:22–333:21; Hendricks Dep., 124:2–9). As noted in Name Seeker's Motion, the law is clear that Equifax and Name Seeker acted in accordance with the FCRA. (*See* NS Brief at p. 10, n. 14). Consequently, there is "too great an analytical gap" between the undisputed facts and the opinions proffered by Mr. Hendricks in his Purported Supplemental Report, and this Court may properly exclude those opinions because "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Kendall Holding, Ltd. v. Eden Cryogenics LLC*, No. 2:08-CV-390, 2013 WL 5366100, at *13 (S.D. Ohio Sept. 24, 2013) (excluding expert opinion in part under Rule 702 where the opinion was "connected to the existing data only by his own *ipse dixit*.") (citing *Joiner*, *supra*).

## V. Plaintiffs Do Not Dispute That The Purported Supplemental Report Is An Improper Attempt To Overcome The Facial Deficiencies In The Hendricks Affidavit And To Contradict Mr. Hendricks' Deposition Testimony.

Finally, as discussed at length in Name Seeker's Motion, the Purported Supplemental Report is nothing more than an improper (albeit inept) zero-hour attempt to repair the clear facial deficiencies of the Hendricks Affidavit and to retract or improve upon Mr. Hendricks' deposition

testimony. (*See* NS Brief at pp. 7–10). Plaintiffs do not attempt to refute this in their Opposition. Therefore, Plaintiffs' failure to address this aspect of Name Seeker's Motion "amounts to a concession by Plaintiff[s] that the Court should exclude [the expert's] testimony" on this ground. *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004). *See also* S.D. Ohio Civ. R. 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees."); *Miller v. Rosenker*, 578 F. Supp. 2d 107, 111 (D.D.C. 2008) ("It is clearly established that when a plaintiff's opposition to a motion fails to respond to arguments raised by a defendant, a court may treat those unopposed arguments as conceded."), *rev'd in part sub nom.*, 594 F.3d 8 (D.C. Cir. 2010) (citations omitted); *Ayyash v. Bank Al-Madin*a, No. 04 CIV. 9201 (GEL), 2006 WL 587342, at *5, n.6 (S.D.N.Y. Mar. 9, 2006) (holding that a respondent abandons arguments relating to opponent's contentions when response brief fails to address those contentions); *Green v. Doukas,* No. 97 CIV.8288CMGAY, 2001 WL 767069, at *8 (S.D.N.Y. June 22, 2001) (granting motion to preclude expert testimony because "plaintiff's failure to oppose the motion suggests . . . it has merit[ ]"). The Purported Supplemental Report may be properly stricken for this reason alone.

## CONCLUSION

For these reasons, Equifax and Name Seeker respectfully request that this Court grant their respective Motions To Disregard The Affidavit And Strike The Purported Supplemental Report Of Evan Hendricks and award their reasonable expenses in bringing their Motions. If the Court does not strike the Purported Supplemental Report, Equifax and Name Seeker respectfully request that the Court award their reasonable expenses, including attorney's fees, in preparing for and taking a second deposition of Mr. Hendricks. Plaintiffs have waived any opposition to paying these fees because they have put forward no argument to the contrary.

DATED: April 26, 2017.

/s/ Zachary A. McEntyre
Zachary A. McEntyre (admitted *pro hac vice*)
Meryl W. Roper (admitted *pro hac vice*)
John C. Toro (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
zmcentyre@kslaw.com
mroper@kslaw.com
jtoro@kslaw.com

THE CHANDRA LAW FIRM
Donald Screen (Attorney No. 044070)
1265 W. 6th Street, Suite 400
Cleveland, OH 44113
Tel: (216) 578-1700
Fax: (216) 578-1800
Donald.Screen@chandralaw.com

*Counsel for Defendant Equifax Information Services LLC*

/s/ A. Paul Heeringa
Richard Eric Gottlieb (admitted *pro hac vice)*
A. Paul Heeringa (admitted *pro hac vice)*
MANATT, PHELPS & PHILLIPS, LLP
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Phone: (312) 626-1813
Fax: (312) 648-6202
rgottlieb@manatt.com
pheeringa@manatt.com

Richik Sarkar
MCGLINCHEY STAFFORD PLLC
2550 Chagrin Blvd., Suite 406
Cleveland, OH 44122
Phone: (216) 378-4994
Fax: (216) 378-9910
rsarkar@mcglinchey.com

*Attorneys for Defendant, Name Seeker, Inc.*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of April, 2017, the foregoing document was filed electronically along with any and all supporting exhibits and materials referenced therein using the Court's CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic docket.

*/s/  Zachary A. McEntyre* _____

Zachary A. McEntyre
