**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Peter Blasi, Jr., et al.,** | **Case No.: 2:14-cv-0083** |
| **Plaintiffs,** | |
| | **Judge Smith** |
| **v.** | |
| | **Magistrate Judge Vascura** |
| **United Debt Services, LLC, et al.,** | |
| **Defendants.** | |

**Plaintiffs' Unopposed Motion for Preliminary Approval of**
**Class Action Settlement**

Plaintiffs, Peter Blasi, Jr., Jordan Brodsky, and Michael Cassone (collectively, the "Plaintiffs"), on behalf of themselves and the Class of individuals they seek to represent, respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. As set forth more fully in the accompanying Memorandum in Support, Plaintiffs, individually and on behalf of the Class, and Defendant, United Debt Services, LLC ("UDS"), (collectively, the "Parties") have reached a preliminary settlement that is subject to this Court's approval and the terms of which are set out in the proposed Stipulation and Agreement of Class Action Settlement Between Plaintiffs, Individually and On Behalf of a Class, and Defendant United Debt Services, LLC (hereinafter, "Settlement Agreement").

Plaintiffs respectfully submit that the terms memorialized in the Settlement Agreement are fair, just, reasonable, adequate, and free of any deficiencies, and merit the approval of the Court. Here, the Settlement Agreement will create a common fund of $500,000 from which class members will receive a *pro rata* share, after deductions for attorneys' fees, costs, incentive

awards, class notice and administration expenses, and any other costs determined by the Court. In light of the risks and uncertainties associated with continued litigation and the potential for delay, including further motion practice, trial and appeals, Plaintiffs believe that this settlement is an excellent outcome for class members.

Therefore, the Plaintiffs respectfully request the Court to enter an Order (1) preliminarily approving the terms of the Settlement Agreement as fair, just, reasonable, and adequate; (2) conditionally certifying the Class for settlement purposes only; (3) appointing Plaintiffs' counsel as class counsel and Plaintiffs as the settlement class representatives; and (4) establishing a schedule for effectuating the Settlement Agreement. UDS does not oppose the relief sought by this Motion and its accompanying Memorandum in Support, which Memorandum in Support is being filed contemporaneously herewith.

Respectfully submitted,

/s/ Mark Lewis
Mark Lewis (0063700)
Elizabeth Mote (0086379)
Kitrick, Lewis & Harris Co. L.P.A.
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Ph.:    (614) 224-7711
Fax:    (614) 225-8985
Email:  MLewis@klhlaw.com
Email:  Liz@klhlaw.com

/s/Brain Garvine
Brian M. Garvine (0068422)
The Law Office of Brian M. Garvine, LLC
5 East Long Street, Suite 1100
Columbus, Ohio 43215
Ph.:    (614) 223-0290
Fax:    (614) 221-3201
Email:  Brian@garvinelaw.com

/s/ Jeremiah Heck
Jeremiah E. Heck (0076742)
Luftman, Heck & Associates LLP
6253 Riverside Drive
Suite 200
Dublin, Ohio 43017
Ph.:    (614) 224-1500
Fax:    (614) 224-2894
Email:  JHeck@lawlh.com
Email:  KWolfe@lawlh.com

/s/ Robert Wagoner
Robert J. Wagoner (0068991)
Robert J. Wagoner Co., LLC
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Ph.:    (614) 796-4110
Fax:    (614) 796-4111
Email:  Bob@wagonerlawoffice.com

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Peter Blasi, Jr., et al.,

    Plaintiffs,

    v.

United Debt Services, LLC, et al.,

    Defendants.

Case No.: 2:14-cv-0083

Judge Smith

Magistrate Judge Vascura

**Memorandum in Support of Plaintiffs' Unopposed Motion**
**for Preliminary Approval of Class Action Settlement**

**Table of Contents**

| | | |
|---|---|---|
| I. | Introduction | 5 |
| II. | Case Background and Procedural History | 6 |
| III. | The Proposed Settlement | 8 |
| | A.  The Class | 8 |
| | B.  Material Terms of Settlement | 9 |
| | C.  Notice and Administrative Provisions | 10 |
| IV. | The Proposed Settlement Merits Preliminary Approval | 13 |
| | A.  The Parties Satisfy the Standard for Preliminary Approval | 13 |
| | B.  The Proposed Settlement is Fair and Free of Any Deficiencies | 14 |
| V. | Conditional Certification of the Settlement Class is Appropriate | 16 |
| | A.  The Class is Identifiable and the Definition is Unambiguous | 17 |
| | B.  The Settlement Class Satisfies Fed. R. Civ. P. 23(a) | 18 |

|   |   |   |   |
|---|---|---|---|
|   |   | 1. Numerosity | 19 |
|   |   | 2. Commonality | 19 |
|   |   | 3. Typicality | 19 |
|   |   | 4. Adequacy | 20 |
|   | C. | The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3) | 21 |
|   |   | 1. The Liability Issues Involved in this Case Predominate | 22 |
|   |   | 2. A Class Action is the Superior Method of Adjudication | 22 |
|   | D. | The Proposed Settlement is Fair, Adequate, and Reasonable | 23 |
|   |   | 1. The Anticipated Incentive Award Request is Fair | 23 |
|   |   | 2. The Anticipated Attorneys' Fee Request is Fair and Non-Collusive | 24 |
|   | E. | Scheduling a Final Hearing is Appropriate | 24 |
| **VI.** | **Proposed Schedule to Complete Settlement** |   | 25 |
| **VII.** | **Conclusion** |   | 25 |

**Memorandum of Law in Support of Motion for**
**Preliminary Approval of Proposed Class Action Settlement**

### I. Introduction

Plaintiffs, Peter Blasi, Jr., Jordan Brodsky, and Michael J. Cassone (the "Named Plaintiffs"), and Defendant, United Debt Services, LLC ("UDS"), (collectively, the "Parties") have reached a preliminary settlement in the above-captioned case, as set forth in the proposed "Stipulation and Agreement of Class Action Settlement Between Plaintiffs, Individually and On Behalf of a Class, and Defendant United Debt Services, LLC" (hereinafter "Settlement Agreement") attached as Exhibit 1.[1] The Settlement Agreement is subject to this Court's preliminary approval, as requested in this Motion, and subsequent final approval following class notice and a hearing. After more than four (4) years of litigation, including both extensive discovery and motion practice, the Parties have worked diligently to investigate the facts and issues related to the allegations asserted in this Action, have sufficient information to evaluate the Settlement Agreement, and have negotiated a meaningful settlement that is fair, adequate, and reasonable, and in the best interests of the proposed settlement class. For the reasons below, the Parties respectfully submit that the Settlement Agreement be preliminarily approved by the Court.

### II. Case Background and Procedural History

This is a Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA") class action. The litigation commenced on January 23, 2014, when Named Plaintiffs filed their Class Action Complaint in the United States District Court for the Southern District of Ohio, Eastern Division,

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning set forth in the Settlement Agreement.

where it was assigned to the Honorable George C. Smith as Civil Action No. 2:14-CV-0083 (the "Action"). [D.E. 1.] In addition to UDS, Named Plaintiffs named as Defendants New Wave Lending Corp. ("New Wave"), Benjamin Rodriguez ("Rodriguez"), and MTC Texas Corp. ("MTC") [*Id.*] Specifically, Named Plaintiffs alleged that UDS accessed and used private consumer reports to market its debt relief services to Ohioans, including Named Plaintiffs, in violation of the FCRA. [*Id.*, ¶¶ 31, 56-59.]

On March 24, 2014, UDS moved to dismiss Named Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [D.E. 9.] In response thereto, Named Plaintiffs filed their First Amended Class Action Complaint against UDS, New Wave, Rodriguez, and MTC continuing to allege that UDS accessed and used private consumer reports to market its debt relief services to Ohioans, including Named Plaintiffs, in violation of the FCRA. [D.E. 18, ¶¶ 34, 44, 62-68.] On May 19, 2014, UDS moved to dismiss Named Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [D.E. 21.] On November 5, 2014 and after extensive briefing by the Parties, the Court granted in part and denied in part UDS' Motion to Dismiss the First Amended Complaint. [D.E. 39.]

Shortly thereafter and as a result of information obtained through the course of discovery, on December 1, 2014, Named Plaintiffs filed their Second Amended Complaint against UDS, New Wave,[2] Rodriguez[3] and newly named defendants Equifax, Inc. ("Equifax"), Name Seeker, Inc. ("Name Seeker), and AMG Lead Source ("AMG")[4]. [D.E. 47.] Specifically, the Second

---

[2] New Wave was subsequently dismissed by Court Order. [D.E.120.]
[3] Rodriguez was subsequently dismissed by Court Order [D.E.120.]
[4] AMG was subsequently dismissed by Court Order over the objections of UDS, Equifax, and Name Seeker.

Amended Complaint continues to allege UDS knowingly accessed and used private consumer reports to market its debt relief services to Ohioans, including Named Plaintiffs, in violation of the FCRA. [*Id.*, ¶¶ 49, 83-86.] Plaintiffs also allege that Defendants Equifax, Name Seeker, and AMG permitted UDS access to those private consumer reports for impermissible marketing purposes in violation of the FCRA. [*Id.*, ¶¶ 88-104.] UDS denied and continues to deny such allegations. The Parties continued to engage in extensive discovery, both written and deposition discovery, which discovery Named Plaintiffs contend revealed UDS knowingly accessed and used the private consumer reports of more than 166,000 Ohio consumers to market its debt relief services to Ohioans in violation of the FCRA. UDS denied and continues to deny such allegations.

Accordingly, On January 15, 2016, Named Plaintiffs filed their Motion for Rule 23 Certification [D.E. 111] seeking to certify a well-defined, readily identifiable statewide class as follows:

> **Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided by AMG Lead Source from June 1, 2011 through June 30, 2014.**

Throughout the course of the year's long litigation, Named Plaintiffs and UDS have engaged in extensive written and deposition discovery, and lengthy, intensive settlement negotiations in efforts to achieve a resolution. As a result of good faith, arms-length bargaining and compromises of the Parties, Named Plaintiffs and UDS agreed in principal to the terms of the Settlement Agreement on or about February 6, 2018, and executed the Settlement Agreement on or about September 28, 2018. Thereafter, the parties have continued to finalize the details of the proposed settlement, including recent amendments to effectuate the identification of the

---

[D.E.145.]

administrator and streamline the administration, among other matters outlined herein. As discussed below, Named Plaintiffs submit that the terms of the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the proposed Settlement Class.

### III.     The Proposed Settlement

#### A.    The Class

The Parties propose the following Settlement Class:

> **All Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided by AMG from June 1, 2011 through June 30, 2014.**

Excluded from the Settlement Class are the following:

(i)     UDS and all Persons who are or were during the Class Period directors, officers, employees, partners, principals, shareholders, or agents of UDS and the immediate family of all such Persons;

(ii)    Any currently sitting member of the Ohio judiciary and the immediate family of all such Persons;

(iii)   Plaintiffs' Counsel, UDS' Counsel, and the immediate family of all such Persons;

(iv)    Any of the Released Parties;

(v)     Any member of the Settlement Class who has timely submitted a Request for Exclusion by the Claim Deadline; and

(vi)    Any person who has previously given a valid release of the claims asserted in this Action.

See Settlement Agreement, ¶ 4.1, attached as Exhibit A.

#### B.   Material Terms of the Settlement Agreement

The proposed Settlement Agreement requires UDS to pay $500,000 into a common fund established with the Settlement Administrator in twelve monthly installment payments pursuant to the following schedule:

(i)     The first eleven (11) equal monthly installment payment shall each be in the total amount of $41,666.66 to be deposited into the common fund established with the Settlement Administrator beginning within thirty (30)

days of the parties fully executing the Settlement Agreement and thereafter continuing no later than the last day of each consecutive month for a total of eleven months; and

(ii)     The final monthly installment payments (*i.e.,* month twelve) shall be in the total amount of $41,666.74 to be deposited into the common fund established with defense counsel's trust account or the Settlement Administrator no later than the last day of the twelfth consecutive month.

Defense counsel or the Settlement Administrator shall maintain the aforementioned common fund. The $500,000 settlement amount shall cover all of UDS' settlement obligations to Named Plaintiffs and the Class Members, including, but not limited to, Plaintiffs' Counsel's fees and costs award, if any, Named Plaintiffs' incentive award, if any, the Notice and Administration Expenses, and any other cost determined by the Court. Class Members will have the opportunity to submit a claim and receive payment on a *pro rata* basis.

The Settlement Agreement fully protects the rights of Class Members to object to the settlement and to present any such objections for a ruling by the Court. The Settlement Agreement also provides a mechanism whereby Proposed Class Members may opt-out of the settlement.

### C.  Notice and Administration Provisions

The Fifth Amendment requires that class members receive reasonable notice and an opportunity to be heard. Rule 23(c)(2) requires the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In

determining the reasonableness of the effort required, the Court must look to the anticipated results, costs, and amount involved. *Id.* at 1099.

The purpose of the Notice is to inform and educate potential class members of the terms of the Settlement Agreement, as well as provide them with sufficient time in which to evaluate their options, make informed decisions, and timely submit the Claim Form, opt-out (submit a Request for Exclusion) or file a written Notice of Intent to Object. Notice of the proposed settlement is required to be provided to all class members in a manner in which the Court directs.

The parties initially envisioned the notice and claim form process outlined in Section 6 of the Settlement Agreement. First, Defendant will create a list of the names of Class Members based on the definition of the Settlement Class and their last known addresses, as reflected by UDS' search of its own records. UDS shall deliver such list of Class Members to the Settlement Administrator and Plaintiffs' Counsel within thirty (30) days following Preliminary Approval. Since the initial plan, the parties have agreed to utilize the services of JND Class Action Administration to administer the class.

No later than sixty (60) days after Preliminary Approval, the Settlement Administrator shall cause Class Notice to be disseminated to each Class Member through mailing by first class U.S. Mail a singular Mailed Postcard Notice to the last known address of each Class Member identifiable by reference to Defendant's records. The Mailed Postcard Notice means a notice of certification of the Settlement Class and of the Settlement, and shall be in substantially the same content and form as the attached Exhibit 2 to this Motion.

The Mailed Postcard Notice shall also contain a Claim Form in substantially the same content and form as indicated in the same attached Exhibit 2. As described in Section 8 of the

Settlement Agreement, any Class Member who desires to participate in the disbursement of compensation under the Settlement must return the completed and signed Claim Form to the Settlement Administrator.  The parties submit that this combined notice and claim form in the single Mailed Postcard Notice, attached as Exhibit 2, informs and educates potential class members of the terms of the Settlement Agreement, as well as provides them with sufficient time in which to evaluate their options, make informed decisions, and timely submit the included claim form, opt-out (submit a Request for Exclusion), or file a written Notice of Intent to Object.

For any Class Member for whom Defendant only has a name in their records, and not a last known address, or for whom the Settlement Administrator received any Mailed Postcard Notice that is returned by the U.S. Postal Service, the Settlement Administrator shall search the U.S. Postal Services National Change of Address database and any other reasonably available databases available to the Settlement Administrator to identify missing addresses, and for all persons for whom such search identifies a single possible match within Ohio, cause a Mailed Notice to be mailed to that person at that address.

Finally, on or before the date that the Mailed Postcard Notice is issued, the Settlement Administrator shall create, maintain, administer, and monitor an Internet Posting/Website.  The Internet Posting/Website, the address of which will be referenced in the Mailed Postcard Notice, will provide access to copies of the Settlement Agreement, answers to frequently asked questions as agreed to by the Parties, the mailing address of the Settlement Administrator, and a Claim Form. The Internet Posting shall remain live until the deadline for the submission of Claim Forms, after which it will display information regarding the status of the Settlement until the conclusion of the Action.

Both the Mailed Notice and the Internet Posting shall contain information about how a proposed Class Member may opt-out of the Settlement by timely and validly submitting a Request for Exclusion, as set forth in Section 8 of the Settlement Agreement, and the potential implications of doing so. In addition, both the Mailed Postcard Notice and the Internet Posting shall contain information about how a proposed Class Member may object to the Settlement by filing with the Court a written Notice of Intent to Object, should any proposed Class Member fail to timely and validly submit a Request for Exclusion (i.e., a request to be excluded from the Settlement Class).

The Parties' proposed Class Notice plan provides a meaningful description of the nature of the action, the proposed settlement, the proposed service award to Plaintiff, and the requested attorneys' fees and costs. The Class Notice plan, moreover, not only provides Class Members with a Claim Form, but also directs Class Members to the Internet Posting/Website, a case-specific website regarding the settlement. In addition to the Mailed Notice, the Internet Posting described in plain English the terms and operation of the settlement, the considerations that caused Plaintiffs' Counsel to conclude that the settlement is fair and adequate, the procedure for objecting to the settlement, the procedure to opt-out of the settlement, and the date of the fairness hearing.

## IV. The Proposed Settlement Merits Preliminary Approval

### A. The Parties Satisfy the Standard for Preliminary Approval

Fed. R. Civ. P. 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval" and sets forth the procedures which apply to a proposed settlement. The Court should base its preliminary

approval of a proposed settlement on its "familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to settlement." *Brotherton v. Cleveland,* 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001) (citation omitted). For preliminary approval, the Court should apply a "threshold inquiry" intended to reveal clear defects only. *In re Inter-Op Hip Prosthetics Liab. Litig.,* 204 F.R.D. 330, 337-338 (N.D. Ohio 2001). "The Court should also determine that the settlement is neither illegal nor collusive." *Brotherton,* 141 F. Supp. 2d at 904 (citations omitted). When considering preliminary approval, the settlement is "presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable." *Id.* (citing *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983) and *Stotts v. Memphis Fire Dept.,* 679 F.2d 543 (6th Cir. 1982) rev. on other grounds, 467 U.S. 561 (1984).

If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the Court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *In re Inter-Op Hip Prosthetics Liab. Litig.,* 204 F.R.D. at 350 (citing Manual for Complex Litig., Third §3.41 (1995).

### B. The Proposed Settlement is Fair and Free of Any Deficiencies

Plaintiffs and UDS submit that they have negotiated at arms-length, in good faith, and without collusion throughout the course of the litigation. Counsel for both parties expended considerable efforts to achieve the proposed settlement, including years of pretrial discovery, document production, depositions, and analysis, followed by months of negotiations culminating

in the Settlement Agreement.

The parties submit that the settlement contains no "obvious deficiencies." Manual for Complex Litig., Third § 30.41 (1995). The terms of the proposed Settlement Agreement, including the assurance of monetary payments to eligible class members, are fair, reasonable, and effectively address the underlying issues of the case. For instance, the settlement funds will provide monetary relief to eligible class members whose private consumer reports are alleged to have been used and/or obtained by UDS for marketing debt relief services to Ohioans, including, but not limited to, Named Plaintiffs. The settlement amount of $500,000 represents meaningful compensation for the eligible class members who assert claims. Such class members who timely submit a valid Claim Form will be compensated accordingly.

Finally, the interests of the Class as a whole are better served with settlement of the litigation rather than its pursuit. See *Brotherton,* 141 F. Supp. 2d at 903 (citing *Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38 at 42 (6th Cir. 1990). Both Plaintiffs and UDS would expend significant time, money, and resources in what would likely be contentious and protracted litigation—the outcome of which is far from certain in light of the unique facts and circumstances involved in this Action. The parties would continue to vehemently disagree as to numerous key issues, including the merits of Plaintiff's FCRA claims, the propriety of class certification, the amount in damages asserted by the class members, among numerous other matters. The Court, who already has a busy docket, would be required to address motion practice and potential discovery disputes, as well as oversee a trial of a case constituting complicated legal and factual issues. A trial would pose substantial risks and uncertainties for both Parties. In absence of the Settlement Agreement, there is a strong possibility that the Plaintiffs and proposed class have to

wait a significant period of time to receive compensation and/or may not even be compensated at all. Finally, the Court's approval of the settlement, both preliminary and final, supports the policy of litigants striving to achieve meaningful resolution amongst themselves and settling disputes when possible.

Based on the foregoing, the Settlement Agreement provides fair and meaningful consideration to the Class in return for the release of all claims. Accordingly, the parties respectfully submit that the attached Settlement Agreement warrants the Court's preliminary approval.

**V.      Conditional Certification of the Settlement Class is Appropriate**

As previously discussed and without admission or concession by UDS, direct or indirect, express or implied, that UDS violated the FCRA, or any other federal, state, or local law, regulation, order, or rule, or otherwise may be liable to Named Plaintiffs, the Settlement Class, any Class Member, or any other person relating to the allegations asserted in the Action or otherwise, the Parties have agreed that the proposed Settlement Class should be certified for purposes of settlement only.

This Court has discretion to determine whether this case may proceed as a class action under Fed. R. Civ. P 23. *Doe v. Lexington-Fayette Urban County Gov't,* 407 F.3d 755, 761 (6th Cir. 2005) (citing *Mayer v. Mylod,* 988 F.2d 635, 640 (6th Cir. 1993). To certify this class action for settlement purposes, the parties must satisfy Fed R. Civ. P. 23(a) and (b)(3). Rule 23(a) specifies the following requirements for certification: (1) the class must be so numerous that joinder of all members is impractical; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the

class; and (4) the representative parties must fairly and adequately protect the interests of the class. Additionally, the class must meet the requirements of one of the subsections of Rule 23(b). Further, Rule 23(b)(3) permits class certification if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Here, Plaintiffs contend they are able to satisfy both Rule 23(a) and 23(b)(3) which they respectfully submit warrants this Court's certification of this case as a class action. UDS does not oppose such contention for purposes of conditional certification of the Settlement Class pursuant to the Settlement Agreement only.

### A. The Class is Identifiable and the Definition is Unambiguous

The Settlement Class covered by the Settlement Agreement is defined as follows:

> **Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided by AMG Lead Source from June 1, 2011 through June 30, 2014.**

These are objectively ascertainable classes that have been allegedly harmed in a particular time frame, in a particular location, and in a particular way. *See Rodriguez v. Berry Brook Farms, Inc*., 672 F.Supp. 1009, 1012 (W.D. Mich. 1987) (class definition requires objective parameters of time, location, and harm); *In re. Consol. Mtge. Satisfaction Cases* (2002), 97 Ohio St.3d 465, 467, 780 N.E.2d 556, citing *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96-98, 521 N.E.2d 1091. The class is defined by geography [the state of Ohio], duration [the time period of June 1, 2011 through June 30, 2014], and identifiable membership [individuals whose consumer reports were used and/or obtained by UDS via prescreened marketing lists, as alleged

by Plaintiffs]. *See Rodriguez*, 672 F. Supp. at 1012. Each of the individual class members are ascertainable by UDS's business records which were produced in discovery, i.e., the alleged marketing lists identifying more than 166,000 Ohio consumers, as discussed below.

### B. The Settlement Class Satisfies Fed R. Civ. P. 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Impracticability merely means that it would be difficult or inconvenient to join all class members. *Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976, *cert. denied,* 429 U.S. 870 (1976); *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 158 (S.D. Ohio 1992). Numerosity is not measured by a strict numerical test. *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir. 2006). Instead, reasonable estimates of class size fulfill this lenient standard, especially when the Defendant's own records will later reveal the exact number. See *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 365 n.5 (E.D. Pa. 1980) (reasonable estimate proves impracticability of joinder). In this case, the sheer number of potential class members satisfies numerosity. On June 16, 2014, Plaintiffs requested from UDS copies of any alleged prescreened list(s) of names and private data, as part of their First Request for Production of Documents. Approximately eighteen (18) months later in December 2015, and following multiple meet and confer efforts between Plaintiffs' Counsel and Defendant's Counsel as well as the assistance of the Court in resolving an unresolved discovery dispute concerning the aforementioned request [D.E. 108], UDS produced to Plaintiffs' counsel names and addresses of the putative Ohio class members that identified approximately 166,000 Ohio consumers—a proposed class which is so numerous that joinder is impracticable. As such, Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that questions of both law and fact are common to the class. Commonality exists when the class action arises from a nucleus of operative facts. *Thompson v. Midwest Foundation Independent Physicians Association,* 117 F.R.D. 108, 112 (S.D. Ohio 1987). Indeed, a *single* shared factual or legal issue satisfies commonality if its resolution advances the litigation. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996); *Brooks v. Educators Mut. Life Ins. Co.,* 206 F.R.D. 96, 101 (E.D. Pa. 2002). Furthermore, commonality is satisfied when the common question at issue will resolve "an issue that is central to the validity of each one of the claims in one stroke." *Walmart Sores, Inc. v. Dukes,* 131 S.C. 2541, 2551 (2011).

In this case, there is a primary and common legal issue—whether Defendant UDS is liable for allegedly accessing and using private consumer reports without a permissible purpose under the FCRA. This permissible purpose question is central to Plaintiffs' theory of liability. Likewise, UDS's alleged underlying methodology for obtaining and using the alleged reports was identical with respect to the class. However, these are not the only common issues. There are many other common questions of law and fact arising from Plaintiffs' claims, as articulated in the Amended Class Action Complaint. As such, Plaintiffs have satisfied commonality.

### 3. Typicality

Rule 23(a)(3) requires that the representative shares the same interests as the class. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13 (1982). The representative's claim need not mimic the claims of every class member, but he must seek to advance the interests of the class members. *In re American Medical Systems, supra,* 75 F.3d at 1082. A claim meets the typicality prerequisite if "it arises from the same event or practice or

-18-

course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Randleman v. Fidelity National Title Inc. Co.,* 251 F.R.D. 267, 275 (N.D. 2008) (quoting *Newberg on Class Actions* § 313 at 328). Factual variations among individual class members do not diminish typicality when the claims all arise from a defendant's widespread practice. *Senter, supra,* 532 F.2d at 524.

In this case, the Named Plaintiffs assert the same legal theories and seek the same legal relief as the class. Their claims are based entirely on the same underlying factual allegations that the private consumer reports of the proposed Settlement Class were obtained and/or used to market debt relief services in violation of the FCRA. In fact, Plaintiffs allege that UDS systematically and uniformly accessed and used the consumer reports as part of a common pattern and practice. Furthermore, no antagonism or material factual variation exists between the Named Plaintiffs' claims and the class. Both Named Plaintiffs and the class allege that UDS obtained and used their private consumer reporting data in the same manner over the same timeframe (June 1, 2011 through June 30, 2014) in the same geographical region (the state of Ohio) for the same purpose (to market debt relief services to Ohioans). They have allegedly suffered substantially similar harm. As such, Plaintiffs have satisfied typicality.

### 4.  Adequacy

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protects the interest of the class." The adequacy inquiry serves "to uncover conflicts of interest between named parties and the class they represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). Two factors guide this inquiry: (1) whether the named representative shares common interests with the unnamed class members; and (2) whether the named representative will

vigorously advance the interests of the class through qualified counsel. *Senter, supra,* 532 F.2d at 525; *Bowling, supra.,* 143 F.R.D. at 159.

As aforementioned, the Named Plaintiff and the class members all assert the same legal claims, have suffered identical harm, and seek the same damages. There are no conflicts of interest between the Named Plaintiffs and the class. All claims arise from allegedly identical operative facts, rest upon allegedly identical theories of law, and request the identical class-wide relief. Throughout this case, the Named Plaintiffs have consistently demonstrated their understanding and appreciation of the complex underlying facts and legal theories. They have actively pursued this litigation, diligently fulfilled their duties owed to the class, and incurred risks on behalf of the Settlement Class. They have achieved substantial benefits for the class and remain committed to vigorously prosecuting this case through counsel.

Finally, Plaintiffs' Counsel possess substantial experience and familiarity with class actions, complex litigation, and consumer litigation. Plaintiffs' Counsel also share the desire, resources, and expertise to vigorously prosecute this class action. Plaintiffs' Counsel have successfully served as lead counsel in numerous other class actions and complex litigation, both within the Southern District of Ohio and other Ohio courts.

### C.  The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)

To reiterate, without admission or concession by UDS, direct or indirect, express or implied, that UDS violated the FCRA, or any other federal, state, or local law, regulation, order, or rule, or otherwise may be liable to Named Plaintiffs, the Settlement Class, or to any Class Member relating to the allegations asserted in the Action or otherwise, the Parties seek conditional certification for the purposes of settlement only. In this case, the Named Plaintiffs

both meet all preconditions for certification under Rule 23(a) and also demonstrate that this controversy meets all requirements of 23(b)(3) certification. Rule 23(b)(3) permits certification when (1) common questions of law or fact predominate over questions affecting individual members; and (2) the class action is superior to other available methods for fair and efficient adjudication.

### 1. The Liability Issues Involved in this Case Predominate

In this case, the issue of whether UDS is liable under the FCRA predominates. The "predominance" inquiry tests whether the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Courts invariably find predominance where the core liability issues are common to the class and no individual issues remain post-certification. See, e.g., *Franke, supra.,* 2014 U.S. Dist. LEXIS at *6-7. As aforementioned, one issue predominates this case: whether UDS is liable for allegedly accessing and using private consumer reports without a permissible purpose under the FCRA. The claims in this case arise from UDS' alleged standardized, systematic conduct related to its access and use of alleged private consumer reports for marketing purposes. Plaintiffs allege that UDS' own business records, i.e., the lists containing the names and addresses identifying more than 166,000 Ohioans, which were produced in discovery, would have helped establish UDS' liability under the FCRA. As such, Plaintiffs have established that common issues predominate in this case.

### 2. A Class Action is the Superior Method of Adjudication

Rule 23(b)(3) further requires the Court to determine whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Rule enumerates several factors relevant to this determination:

      i.      The interest of the class members in individually controlling the prosecution of separate actions;

      ii.      The nature and extent of any litigation concerning the controversy already commenced;

      iii.      The desirability of concentrating the litigation in this particular forum; and

      iv.      The difficulties likely to be encountered in managing the class action.

Based on this criterion, a class action is the superior means of adjudicating this case. First, there are no individual lawsuits pending in Ohio which assert the same or similar claims against the same Defendants. It is highly unlikely that any such actions will be filed in the future given the relatively small individual losses at stake. Second, no similar litigation concerning this same controversy is known to have been filed in any other forum. Third, there is no question that Ohio is the superior forum because all Class Members, including the Named Plaintiffs, are Ohio citizens. Fourth, Plaintiffs' Counsel do not anticipate any case management difficulties which might preclude certification of this class action for settlement purposes only.

### D. The Proposed Settlement is Fair, Adequate, and Reasonable

#### 1. The Anticipated Incentive Award Request is Fair

The parties respectfully request that the Court grant preliminary approval to an incentive award to be paid exclusively out of the Settlement Amount of five hundred thousand dollars ($500,000). It is appropriate to provide an incentive award to the named representatives in recognition of (1) the actions taken to protect the interests of the Settlement Class and achieving benefits for the Settlement Class; (2) the economic and other risks assumed in prosecuting a class action; and (3) the amount of time spent in pursuing the litigation over more than four (4) years. As set forth in Section 10 of the Settlement Agreement, on or before ten (10) business days

before the Final Approval Hearing, Plaintiffs' Counsel shall apply to the Court for an incentive award not to exceed nine thousand dollars ($9,000) to be paid to the Named Plaintiffs serving as class representatives in equal amounts of three thousand dollars ($3,000) per each Named Plaintiff. There is no question that the Named Plaintiffs have vigorously prosecuted this case through counsel, incurred risks, and achieved substantial benefits for the Settlement Class. As such, they should be compensated accordingly.

**2. The Anticipated Attorneys' Fee Request is Fair and Non-Collusive**

Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses and costs, including but not limited to, the reasonableness thereof, shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Plaintiffs' Counsel will file its application for fees and expenses before the Fairness Hearing and consistent with this Court's scheduling orders.

**E. Scheduling a Final Approval Hearing is Appropriate**

The final step in the settlement approval process is the Final Approval Hearing, or Fairness Hearing, at which the Court may hear all evidence and arguments necessary to conclusively evaluate the settlement. Pursuant to Section 2 of the Settlement Agreement, the Final Approval Hearing shall not be scheduled for a date less than ninety (90) days following the Mailed Notice. This timeframe will provide Class Members with a reasonable time in which to evaluate their options, make informed decisions, and timely submit the Claim Form, Request for Exclusion (opt-out), or file a written Notice of Intent to Object. In anticipation of the successful conclusion of this Class Action Settlement and Fairness Hearing, Plaintiffs have attached a proposed Final Judgment as Exhibit 3.

## VI.     Proposed Schedule to Complete Settlement

The Court's calendar permitting, the Parties propose the following schedule to complete the tasks necessary to effectuate the proposed settlement:

| | |
|---|---|
| Class Notice Mailed by: | [No later than sixty (60) days after Preliminary Approval] |
| Opt-Out/Claim Deadline: | [Forty-Five (45) days following the Final Approval Hearing] |
| Objection Deadline: | [No less than thirty (30) days before the Final Approval Hearing] |
| Final Approval Hearing: | [No less than ninety (90) days following the Mailed Notice] |

## VII.     Conclusion

Based on the foregoing and as set forth in the Settlement Agreement, the parties respectfully request that this Court preliminarily approve the Settlement Agreement as fair, just, reasonable, and adequate; certify the proposed class for settlement purposes only; appoint Plaintiffs' Counsel as Class Counsel and Named Plaintiffs as the settlement Class Representatives; approve the class Notice plan; and schedule a Final Approval Hearing.

Respectfully submitted,

/s/ Mark Lewis
Mark Lewis (0063700)
Elizabeth Mote (0086379)
Kitrick, Lewis & Harris Co. L.P.A.
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Ph.:     (614) 224-7711
Fax:     (614) 225-8985
Email:  MLewis@klhlaw.com
Email: Liz@klhlaw.com

/s/ Jeremiah Heck
Jeremiah E. Heck (0076742)
Luftman, Heck & Associates LLP
6253 Riverside Drive
Suite 200
Dublin, Ohio 43017
Ph.:     (614) 224-1500
Fax:     (614) 224-2894
Email:  JHeck@lawlh.com
Email: KWolfe@lawlh.com

| | |
|---|---|
| /s/Brain Garvine | /s/ Robert Wagoner |
| Brian M. Garvine (0068422) | Robert J. Wagoner (0068991) |
| The Law Office of Brian M. Garvine, LLC | Robert J. Wagoner Co., LLC |
| 5 East Long Street, Suite 1100 | 445 Hutchinson Avenue, Suite 100 |
| Columbus, Ohio 43215 | Columbus, Ohio 43235 |
| Ph.:    (614) 223-0290 | Ph.:    (614) 796-4110 |
| Fax:    (614) 221-3201 | Fax:    (614) 796-4111 |
| Email:  Brian@garvinelaw.com | Email:  Bob@wagonerlawoffice.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23 day of April 2019, the foregoing Joint Motion for Preliminary Approval of Proposed Class Action Settlement was filed with the Court through the e-filing system, which shall provide notice of this filing to counsel for all parties.

/s/ Mark Lewis
Mark Lewis (0063700)