**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **PETER BLASI, Jr., et al., on behalf of herself** **and all others similarly situated,** | : |
| | : |
| | : **Civil No.: 2:14-cv-0083** |
| **Plaintiffs,** | : |
| | : **Judge Morrison** |
| | : |
| **v.** | : **Magistrate Judge Vascura** |
| | : |
| **UNITED DEBT SERVICES, LLC, et al.,** | : |
| | : |
| **Defendants.** | : |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND FOR AWARD OF ATTORNEYS' FEES, EXPENSES,**
**AND CLASS REPRESENTATIVES' INCENTIVE**

       For the reasons in the memorandum below, Plaintiffs move the Court to approve

this Ohio-only Fair Credit Reporting Act class action settlement under Fed. R. Civ. P.

23(e).

                                     **Respectfully submitted,**

                                     **Kitrick, Lewis & Harris Co., LPA**
                                     /s/ Mark Lewis_____
                                     Mark Lewis (0063700)
                                     Mlewis@kitricklaw.com
                                     Elizabeth Mote (0086379)
                                     Liz@klhlaw.com
                                     445 Hutchison Avenue, Suite 100
                                     Columbus, Ohio 43235
                                     (614) 224-7711

                                     **Luftman, Heck & Associates LLP**
                                     /s/ Jeremiah Heck_____
                                     Jeremiah E. Heck (0076742)
                                     JHeck@lawlh.com
                                     6253 Riverside Drive, Suite 200

Dublin, Ohio 43017
(614) 224-1500

**The Law Office of Brian M. Garvine, LLC**
/s/ Brian Garvine
Brian M. Garvine (0068422)
Brian@garvinelaw.com
5 East Long Street, Suite 1100
Columbus, Ohio 43215
(614) 223-0290

**Robert J. Wagoner Co., LLC**
/s/ Robert J. Wagoner
Robert J. Wagoner (0068991)
Bob@wagonerlawoffice.com
445 Hutchison Avenue, Suite 100
Columbus, Ohio 43235
(614) 796-4110


**Class Counsel for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

_____
                                                    :
PETER BLASI, Jr., et al., on behalf of herself      :
and all others similarly situated,                  :
                                                    : Civil No.: 2:14-cv-0083
                        Plaintiffs,                 :
                                                    : Judge Morrison
                                                    :
            v.                                      : Magistrate Judge Vascura
                                                    :
UNITED DEBT SERVICES, LLC, et al.,          :
                                                    :
                        Defendants.     :
_____ :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES,
EXPENSES, AND CLASS REPRESENTATIVES' INCENTIVE**

**I.      PRELIMINARY STATEMENT**

This settlement stems from a class action for Ohio citizens whose consumer

reports were used and/or obtained by United Debt Services, LLC (hereinafter "UDS") via

prescreened marketing lists provided by AMG Lead Source from June 1, 2011 through

June 30, 2014.  After extensive discovery, motions practice, and negotiations, followed

by this Court's preliminary settlement approval and notice to the Class, the parties now

request that this Court grant: (i) final approval of the proposed settlement

("Settlement") embodied in the Settlement Agreement dated September 28, 2018

("Settlement Agreement"); (ii) final approval of the methods and forms of notice

provided to Class members; (iii) final certification of the Class for settlement purposes;

(iv) Class Counsel's application for an award of attorneys' fees and reimbursement of

litigation expenses; and (v) modest incentive awards to Class Representatives Peter Blasi, Jr., Jordan Brodsky, and Michael Cassone.

As detailed in this memorandum and the accompanying Declaration of Class Counsel Mark Lewis ("Lewis Decl., Exh. A"), the Settlement is the product of extensive investigation and discovery, aggressive litigation and arm's length negotiations by informed counsel, and careful assessment of the significant risks specific to this case. In consideration of the foregoing and based on their experience, Class Counsel firmly believe that the Settlement is fair, reasonable, and adequate.

Pursuant to this Court's Order dated May 16, 2019 ("Order Conditionally Certifying Settlement Class, and Preliminarily Approving Proposed Settlement," ECF No. 297), the Class has received Court-approved Notice, which describes the terms of the Settlement and Class Counsel's fee and expense application. No objections have been received, and the claims process has been successfully implemented with no opts outs. (Affidavit of JND Class Action Administration ("JND"), Exh. B). Accordingly, the Settlement enjoys the total support of the Class. For these reasons, as more fully set forth herein and in counsel's supporting declaration (Exh. A), this Court should grant final approval of the Settlement and award Class Counsel's requested attorneys' fees, reimbursement of litigation expenses, and a modest incentive award to Class Representatives Blasi, Brodsky, and Cassone.

## II. BACKGROUND AND SETTLEMENT POSTURE

### A. Background

Plaintiffs incorporate by reference the background, procedural and factual explanation provided in their Motion for Preliminary Approval. (ECF No. 294). By way of further summary, Plaintiffs filed this class action in January 2014 to challenge UDS' alleged practice of accessing and using private consumer reports to market its debt relief services to Ohioans, including Named Plaintiffs, in violation of the Fair Credit Reporting Act ("FCRA"). Plaintiffs contend that UDS violated the FCRA when it failed to provide a firm offer to consumers after accessing their private consumer reports. UDS denies all allegations of wrongdoing and maintains that it did not illegally access the consumers' credit reports.

UDS filed its motion to dismiss in March 2014. (ECF No. 9). In response, Named Plaintiffs filed their amended class action complaint continuing to allege UDS accessed and used private consumer reports in violation of the FCRA. (ECF No. 18). In May 2014, UDS moved to dismiss plaintiffs' amended complaint. (ECF No. 21). The Court granted in part and denied in part UDS' Motion to Dismiss the First Amended Complaint in November 2014. (ECF No. 39). Over the next several years, the parties engaged in extensive discovery, both written and deposition discovery. Tens of thousands of pages of documentary discovery, coupled with expert and lay testimony, and motion practice ensued as the parties litigated this complex case. As a result, the parties have diligently and aggressively represented their clients in this matter and the factual record has been developed through rigorous investigation. As a result, the parties entered into

settlement negotiations with sufficient information to evaluate the merits of the case, the relative strengths and weaknesses of their positions, and the risks and costs of continued litigation.

The Settlement Agreement is the result of hard bargaining and compromises by both sides over a period of years. The parties believe that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class. The agreement addresses issues unique to the Class and UDS. Furthermore, the magnitude of the settlement demonstrates that the settlement will produce substantial benefits and realize significant accomplishments for the class.

### B.    Preliminary Approval of Settlement Class

On April 23, 2019, the Plaintiffs moved for preliminary approval of the Settlement. (ECF No. 294). The motion was unopposed. This Court granted the motion and conditionally certified the settlement class on May 16, 2019 (ECF No. 297). Among other preliminary approval matters, the Court approved and ordered that postcard notice be given to the class. As noted in the Administrator's attached Affidavit (Exh. B), such note as have been successfully accomplished.

### C.    Postcard Notice

Under this Court's Preliminary Approval Order, the claims administrator, JND Class Action Administration ("JND"), has confirmed that: (i) 166,597 Court-approved Notices were mailed to the class as defined; and (ii) notice was served on the appropriate Ohio State Official, as defined in 28 U.S.C. § 1715(a). The Notice provided detailed information to Class members concerning: (a) the proposed Settlement; (b) the

rights of Class members, including the right and manner in which to make objections; (c) the background of the litigation; (d) the benefit to the Class from the Settlement; (e) the request for attorneys' fees and reimbursement of litigation expenses; (f) the Settlement hearing to take place before this Court; and (g) the examination of Court records should any Class member elect to do so.  (Affidavit of JND, Exh. B).

As the attached Affidavit of JND also attests, 10,377 notices have thus far been returned as undeliverable, with 2,306 having been re-mailed based on updated forwarding addresses. JND additionally researched the remaining undeliverable notices and re-mailed 4,520 notices to updated addresses for possible class members for whom the research identified a single possible match within Ohio. (Affidavit of JND, Exh. B).

JND likewise established a website that has so far tracked 3,606 unique users who have registered 10,170 page views. Similarly, JND established a toll-free number that individuals may call for more information, 24 hours a day, seven days a week. (Affidavit of JND, Exh. B).

Finally, as of this date JND has received 11,178 claim forms, which are under currently under review. JND has assured the parties that it will regularly report on the status of the claims and overall administration.

As a final point concerning notice and administration, the more than 166,000 notices elicited not a single objection.  The settlement enjoys class-wide support.

### III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

#### A. The law encourages class action settlements

Courts favor settlements. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). This is particularly so with respect to complex class action litigation. *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("The law generally favors the settlement of complex class actions."); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990) ("[T]he law generally favors and encourages the settlement of class actions."). This is equally true for FCRA class actions. *See generally Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699 (E.D. Mich. Jan. 23, 2017); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009).

#### B. The Court's role in approving a class action settlement

Federal Rule of Civil Procedure 23(e) requires courts to approve class action settlements. Before approving a class action settlement, a court must determine that it is "fair, adequate, and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). While courts have discretion to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008); *Gardner v. Lafarge Corp.*, Case No. 99-10176, 2007 U.S. Dist. LEXIS 42536, at *14 (E.D. Mich. June 12, 2007).

In determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a "range of reasonableness."

*Leonhardt*, 581 F. Supp. 2d at 831 (internal citations omitted). This standard "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (internal citations omitted). Furthermore, in determining whether to approve a proposed settlement, a court may rely on the judgment of experienced counsel. *Id.* at 837.

Here, all counsel considered numerous factors in deciding to recommend the Settlement, including the strength of the claims and possible defenses, the risks of establishing liability and damages, and the many other risks of continued litigation. Based on these factors, counsel concluded that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

### C. This Settlement satisfies all criteria for approval

The Sixth Circuit evaluates seven factors to approve class action settlements: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001). All these factors are satisfied in the present case. The Settlement is therefore fair, reasonable and adequate.

### 1. The likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement

In assessing the Settlement, the Court should balance the benefits to Class members, and the *immediacy* and *certainty* of a substantial recovery for them, against Plaintiff's likelihood of success on the merits.  *See In re Telectronics,* 137 F. Supp. 2d at 1010; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 319 (3d Cir. 1998)*; City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  While Plaintiffs believe substantial evidence supports their claims, the complexities and uncertainties of this litigation nevertheless warrant the approval of the Settlement.  As one court noted, "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F. 2d 1079, 1085–86 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971).  The prospect of recovery in this case, had Plaintiffs proceeded to trial, was less than certain.

Indeed, Plaintiffs faced significant risks establishing both liability and damages. UDS has vigorously denied and defended against the allegations, including filing its pending motion to exclude Plaintiffs' expert on liability and class certification, among other relief. It also expected that UDS would file its motion for summary judgment. The facts and law are closely contested in this case. Even if Plaintiffs survive UDS's attempt to exclude the expert's opinions and dismiss the case, the many contested facts could lead a jury to render a defense verdict at trial, giving real meaning to the proposition that "a jury verdict in [plaintiffs'] favor against the settling Defendant is by no means a certainty."  *Biben v. Card*, No. 84-0844-CV-W-6, 1991 U.S. Dist. LEXIS 18448 at *1 (W.D.

Mo. Dec. 10, 1991).  Even a successful verdict for Plaintiffs would likely result in an appeal.

In addition to the risks associated with establishing liability and damages, Plaintiffs faced the additional risks associated with certifying the Class and maintaining certification throughout the action, and winning on appeal, if any.  In comparison, the Settlement provides the Class with immediate cash benefits per person.  Accordingly, in light of the potential defenses that can be, and have been, raised by UDS, Plaintiffs have opted for an immediate and tangible benefit for the Class, rather than expending a substantial amount of time and effort on a possibly fruitless endeavor.

### 2.    The complexity, expense, and likely duration of litigation

In determining the fairness of settlement, courts also consider "[t]he complexity, expense and likely duration of the litigation."  *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983).  Avoiding the delay, risks, and costs of continued litigation are valid reasons for counsel to recommend and for the court to approve a settlement.  *See Ayers v. Haley Barbour, et al.,* 358 F.3d 356, 369 (5th Cir. 2004) ("settling now avoids the risks and burdens of potentially protracted litigation.").  As expressed by the court in *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997);

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* at 340.

11

The foregoing principles apply here. Continued litigation against UDS would be costly and lengthy.  Indeed, if the action had not settled, the parties would have engaged in a time-consuming, and likely disputed, discovery program and pre-trial motion practice.  UDS certainly would have filed its summary judgment motion.  This would have resulted in the expenditure of many additional hours of effort and great additional expense.  Had the action proceeded beyond the summary judgment stage, in addition to additional extensive and final pretrial discovery, the parties also would have engaged in massive pretrial preparations to present the case to the jury.  *See In re Telectronics*, 137 F. Supp. 2d at 1013.

In point of fact, due to the number of potential witnesses, Plaintiffs' Counsel would have to expend many hours preparing for direct and cross-examination, would be required to identify and/or prepare the many exhibits intended for use at trial, and would expect significant pre-trial motion practice, including motions *in limine*.  The trial itself would require weeks to conduct.  Moreover, even a victory at trial might be lost through post-trial motions or likely appeals.

In sum, courts have consistently held that "[t]he potential for the litigation to result in great expense and to continue for a long time suggest that settlement [is] in the best interests of the class."  *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995).  Here, Plaintiffs' Counsel believe that continued litigation would be complex, time-consuming and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured.  Indeed, there existed the possibility that Plaintiffs might obtain no recovery at all.  In contrast, the Settlement

secured for the Class substantial and immediate benefits—a fair claims process to receive cash payments—undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation.

### 3.    The stage of proceedings and amount of discovery

The stage of the proceedings further supports a finding that the Settlement is fair, reasonable and adequate.  Consideration of this factor is to ensure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the settlement proposal.  *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("This factor captures the degree of case development that class counsel had accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.") (quotations and citation omitted).

In the present case, Plaintiffs' Counsel conducted substantial factual research over more than four years concerning UDS' alleged practice of accessing and using private consumer reports without a permissible purpose under the FCRA.  At the same time, Plaintiffs' Counsel performed legal research regarding their claims against UDS and consulted with experts regarding liability, FCRA industry standards and practices, damages, and other pertinent issues.  Plaintiffs also received tens of thousands of pages of relevant documents from the parties, and thereafter took depositions of witnesses with particularized access to information and the decision-making processes within UDS. Thus, the Settlement occurred only after Plaintiffs and their counsel had the opportunity

to assess the facts supporting their claims, the legal and factual defenses likely to be raised by UDS, the difficulty of establishing damages, and the risks of continued litigation. Accordingly, although the parties were able to negotiate the Settlement before a ruling the motion for certification, all of the parties had a clear view of the strengths and weaknesses of their cases.

As such, Plaintiffs' Counsel had sufficient information to evaluate the strengths and weaknesses of their position and to act intelligently in negotiating the terms of the Settlement that are before the Court for approval. *See Krangel v. Golden Rule Res., Ltd.,* 194 F.R.D. 501, 507 (E.D. Pa. 2000) ("The fact that [a] case is in an early stage of proceedings does not necessarily weigh against approval of the settlement."); *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (approving settlement at early stages of litigation where plaintiffs had conducted sufficient discovery to fairly evaluate the merit of defendants' positions during settlement negotiations); *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("early settlements are to be encouraged. . . .").

### 4.    The judgment of experienced counsel favors settlement

The view of experienced counsel favoring settlement is entitled to great weight. *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1015–16 (S.D. Ohio 2001); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 371 (N.D. Ohio 1983). Indeed, certain courts have concluded that they should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983). *See also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D.

496, 501 (E.D. Mich. 2000) (citing *Bronson v. Board of Edu.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)).

Although this Court should certainly exercise its own discretion in deciding whether to approve the Settlement, it may take notice that Plaintiffs' Counsel are experienced and skilled practitioners in the field of complex class actions, responsible for significant recoveries and legal decisions that enable litigation such as this to be successfully prosecuted. Based on the proceedings to date and Plaintiffs' Counsel's experience in litigating class actions, it is the considered and informed judgment of Plaintiffs' Counsel that the Settlement now before the Court is fair, reasonable, adequate and in the best interest of the Class and should be approved by the Court. (See Lewis Decl., Ex. A).

### 5. The nature of negotiations

In appraising the fairness of the proposed Settlement, the Court should also consider the "nature of the negotiations." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). *See also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."). As set forth above and in the attached Lewis Declaration, the Settlement is the product of intensive, arm's length negotiations between highly experienced counsel over many months, which resulted in concessions by both sides. (See Lewis Decl., Ex. A). Moreover, the extensive factual and legal analysis conducted by both sides rendered a Settlement that is even-handed in its treatment of Class members. As noted above, counsel

15

reviewed and analyzed tens of thousands of documents, consulted experts and deposed witnesses to understand the nature of the claims and the best mechanism for resolving this action. (See Lewis Decl., Ex. A).

### 6. Objections raised by class members

It is well settled that the reaction of the class to the settlement is a significant factor to be weighed in considering a settlement's adequacy. *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). In fact, the lack of objection is powerful evidence of the fairness of a proposed settlement. *See Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.") (citing 2 Herbert Newberg &Alba Conte, Newberg on Class Actions, § 11.48 (3d ed. 1992)); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 382 (N.D. Ohio 1983) (noting that the overwhelming approval "of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement[]."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption . . . in favor of the Settlement. . . ."); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) ("What is meaningful in this regard is that the relatively low objection rate militates strongly in favor of approval of the settlement.").

Here, of the more than 166,000 postcard notices mailed to class members, not a single objection has been received. The deadline for objections has expired. The

unanimous approval of the Settlement, as evidenced by zero objections, strongly favors this Court's decision to approve the Settlement.

### 7. The public interest

The proposed Settlement also promotes the public interest because potentially aggrieved Class members are afforded an avenue of relief at no personal risk.  It is in the public interest to resolve all such claims globally, rather than through duplicative and individual suits that would drain judicial resources while, at best, resolving only a tiny fraction of all claims.  As the Sixth Circuit has stated:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.), *cert. denied* 429 U.S. 862 (1976).

Taken together, the relevant criteria for finding a class action settlement fair, adequate and reasonable are satisfied in this case.  Respectfully, the Court should grant final approval.

## IV. THE NOTICE TO THE CLASS SATISFIES DUE PROCESS

Due process requires that class-wide notice of the settlement and an opportunity to be heard must be given to absent class members.  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("The Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all the requirements of due process, all requirements of Rule

23 of the Federal Rules of Civil Procedure, and constituted the best practicable notice under the circumstances."). Rule 23(e) requires that notice fairly apprise class members of the terms of the proposed settlement.

Here, as detailed above and in the attached JND Affidavit, the Court-approved Notice was initially mailed to more than 166,000 potential Class members, informing them of the Settlement. Based on address locator research and forwarded address information, the administrator re-mailed 4,520 such notices. The administrator has reported 10,377 undeliverable notices, including the re-mailed notices mentioned above. (Affidavit of JND, Exh. B). The Notice provided detailed information to Class members concerning: (a) the proposed Settlement; (b) the rights of Class members, including the right and manner in which to make objections; (c) the background of the litigation; (d) the benefit to the Class from the Settlement; (e) the request for attorneys' fees and reimbursement of litigation expenses; (f) the Settlement hearing to take place before this Court; and (g) the examination of Court records should any Class member elect to do so. As such, the Notice fairly apprised the potential Class members of the Settlement and their individual rights with respect thereto. Furthermore, the parties established a website (www.uniteddebtclasssettlement.com) and toll-free hotline (1-833-759-2978) for inquires and further information concerning the Settlement. To date, 11,178 claims forms have been received for review.

As noted above, the notice program satisfies the dictates of Rule 23 and due process requirements, and further supports approval of the Settlement.

## V.     THE SETTLEMENT CLASS SHOULD RECEIVE FINAL CERTIFICATION

The Court conditionally certified the Class for settlement purposes in the Preliminary Approval Order. Final class certification is now appropriate for purposes of this Settlement because the Class meets all the requirements of Rule 23(a) and (b).

To certify this class action for settlement purposes, the parties must satisfy Rule 23(a) and (b)(3). Rule 23(a) specifies the following requirements for certification: (1) the class must be so numerous that joinder of all members is impractical; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Additionally, the class must meet the requirements of one of the subsections of Rule 23(b). Here, the Settlement Class should be certified under Rule 23(b)(3), which permits class certification if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A.     The class is identifiable and the definition is unambiguous

The settlement Class covered by the Settlement Agreement and Preliminary Approval Order is defined as:

**All Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided by AMG from June 1, 2011 through June 30, 2014.**

This is an objectively ascertainable class, a class that has been allegedly harmed in a particular time frame, in a particular location, and in a particular way. *See Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1012 (W.D. Mich. 1987) (class definition requires objective parameters of time, location, and harm). The Class consists of consumers whose private consumer reports were accessed and used by UDS for allegedly impermissible purposes under the FCRA. These claims range from June 1, 2011 through June 30, 2014. The parties have successfully identified and notified these putative Class Members under the Settlement Agreement and this Court's previous order provisionally certifying the settlement class.

**B.** **The settlement Class satisfies Fed. R. Civ. P. 23(a)**

Federal Rule of Civil Procedure 23(a) provides that the class representative must prove that: (1) the class is so numerous that the joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. As discussed below, all of these prerequisites have been met.

**1.** **Numerosity**

Rule 23(a)(1) requires that the class be so numerous that the joinder of all members is impracticable. Impracticability merely means that it would be difficult or inconvenient to join all class members. *Senter v. General Motors Corp.*, 532 F.2d 511,

523 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 158 (S.D. Ohio 1992). Numerosity is not measured by a strict numerical test. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Reasonable estimates of class size fulfill this lenient standard, especially when the Defendant's own records will later reveal the exact number. *See Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 365 n.5 (E.D. Pa. 1980) (reasonable estimate proves impracticability of joinder).

In this case, the sheer number of potential class members—approximately 166,000—satisfies numerosity. *See Tomlinson v. Kroger Co.*, No. C2-03-706, 2007 U.S. Dist. LEXIS 23805 (S.D. Ohio Mar. 30, 2007) (80 class members sufficient for numerosity); *In re American Medical Systems. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

### 2. Commonality

Commonality exists when the class action arises from a nucleus of operative facts. *Thompson v. Midwest Foundation Independent Physicians Association*, 117 F.R.D. 108, 112 (S.D. Ohio 1987). Indeed, a *single* shared factual or legal issue satisfies commonality if its resolution advances the litigation. *In re American Medical Systems, Inc.*, 75 F.3d at 1080; *Brooks v. Educators Mut. Life. Ins. Co.*, 206 F.R.D. 96, 101 (E.D. Pa Feb. 13, 2001) (interpretation of identical medical coverage provisions creates commonality).

This case meets all commonality standards. In particular, UDS' liability to the class pivots on a single common legal issue under the FRCA—whether Defendant UDS is liable for allegedly accessing and using private consumer reports without a permissible purpose under the FCRA. Resolution of that common issue advances the litigation by

establishing UDS' liability to the class. Because this case presents this and other common questions of both law and fact stemming from UDS' allegedly illegal practices, the class also satisfies Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3)'s typicality requirement ensures that the representative shares the same interests as the class. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982). The representative's claim need not mimic the claims of every class member, but she must seek to advance the interests of the class members. *In re American Medical Systems*, 75 F.3d at 1082. A claim meets the typicality prerequisite if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Randleman v. Fidelity National Title Inc. Co*., 251 F.R.D. 267, 275 (N.D. Ohio 2008) (quoting NEWBERG ON CLASS ACTIONS, §3:13 (3d ed. 1992)). Factual variations among individual class members do not diminish typicality when the claims all arise from Defendant's wide spread practice. *Senter v. General Motors Corp*., 532 F.2d 511, 524 (6th Cir. 1976).

In this case, the class representatives assert the same legal theories and seek the same legal relief as the class. Their claims are based solely on UDS' alleged class-wide misuse of pre-screened lists to send direct mail solicitation to Ohio consumers. This allegedly violated those consumers' rights under the FCRA. Because the representatives share the same factual predicates, the same legal theories, and the same violation of

the FCRA as the class, their interests are perfectly aligned with the class. Blasi, Brodsky, and Cassone satisfy typicality.

### 4. Adequacy

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." The adequacy inquiry serves "to uncover conflicts of interest between named parties and the class they represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Two factors guide this inquiry: (1) whether the named representative shares common interests with the unnamed class members; and (2) whether the named representative will vigorously advance the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525; *Bowling v. Pfizer. Inc*., 143 F.R.D. 141, 159 (S.D. Ohio 1992).

Here, as mentioned above, the Class Representatives' claims are identical to the absent class members' claims. Likewise, the Class Representatives have suffered the exact same injury as the Class. No conflicts of interest exist between them and the members of the Class. All claims arise from the same operative facts, rest upon the same theory of law, and request the same class-wide relief. Furthermore, as demonstrated by their conduct in prosecuting the case thus far, the Class Representatives know the facts and issues in this case. They understand the duties owed to all class members, and they have remained committed to vigorously prosecuting this case through counsel.

Class counsel possesses substantial experience and familiarity with class actions, complex litigation, and consumer cases. Class counsel are comprised of four separate

23

law firms who have joined together to prosecute this action on behalf of Ohioans. Class counsel have more than 75 years of combined experience successfully litigating complex civil actions in Ohio courts. Class counsel have shown the desire, resources, and expertise to vigorously prosecute this class action over the last four years. Class counsel have successfully served as lead counsel in other class actions and complex litigation, including such actions in the Southern District of Ohio.

### C. The Settlement Class satisfies Fed. R. Civ. P. 23(b)(3)

Not only does the settlement class meet all preconditions for certification under Rule 23(a), the parties also demonstrate that this settlement class is well suited to 23(b)(3) certification. Rule 23(b)(3) permits certification when (1) common questions of law or fact predominate over questions affecting individual members, and (2) the class action is superior to other available methods for fair and efficient adjudication.

### 1. The FCRA issues predominate

The "predominance" inquiry tests whether the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In the present case, the FCRA controls liability. A single legal and factual issue under the FCRA likely determines UDS's exposure: Did UDS obtain the Class members' consumer reports without permissible purpose? Specifically, Plaintiffs singularly alleged that UDS violated 15 USC §§ 1680 1(b)(f) and (n). (Plaintiffs' Second Amended Complaint, ECF No. 47, at "Count One".) This issue, above all others, predominates the case, and makes it suitable for 23(b)(3) certification.

24

### 2. A class action is the superior method of adjudication

Rule 23(b)(3) also requires the Court to determine whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule enumerates several factors relevant to this determination:

(1)    the interest of class members in individually controlling the prosecution of separate actions;

(2)    the nature and extent of any litigation concerning the controversy already commenced;

(3)    the desirability of concentrating the litigation in this particular forum; and

(4)    the difficulties likely to be encountered in managing the class action.

Each factor confirms the proposed settlement class as the "superior" means of adjudication. First, no individual lawsuits have been filed in Ohio asserting the same or similar claims, and none are likely given the small individual losses at stake. Second, no similar litigation concerning this controversy has been filed in any other forum. Third, Ohio remains the superior—if not the only—forum to concentrate this litigation because all class members currently reside here.

Fourth, the parties have encountered no management difficulties that might preclude this class action. The administrator, JND, reports in its attached affidavit concerning the success of the notice and administration program underway. Furthermore, the underlying theory of this case is straightforward, based principally on UDS allegedly violating consumers' right under the FCRA.

## VI. THE FEE AND EXPENSE AWARD SOUGHT BY PLAINTIFFS' COUNSEL IS FAIR AND REASONABLE

The Sixth Circuit has long recognized that, "[a] litigant who creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of

persons may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit." *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983). Courts calculate an appropriate attorney's fee in common benefit class actions by two methods: (1) the percentage of the benefit method; and (2) the lodestar method. "Use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and the determination of which method is appropriate in any given case will depend upon its circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *New England Health Care Employees Pension Fund v. Farley, et al.*, 234 F.R.D. 627 (E.D. Ky. 2006).

The Sixth Circuit accepts both methods and "requires only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 517 (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)). Each method has its respective advantages and disadvantages. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1278–79 (S.D. Ohio 1996). Thus, district courts have the discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings*, 9 F.3d at 516 (affirming district court's use of the lodestar method); *cf. Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (affirming district court's methodology basing fee award on a percentage of the fund and then cross-checked the fee against class counsel's lodestar). "At bottom, the court must ensure that class counsel are fairly compensated for the amount of work done as well as the results achieved." *Rawlings,* 9 F.3d at 516.

**A.      The fee requested is reasonable under the percentage of the fund method**

As the Sixth Circuit and this District have recognized, the clear trend in common benefit cases is to award a fee based on the percentage of the fund method.  *See In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("[I]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.").  The principle advantage of the percentage of the fund method is that the approach "more accurately reflects the result achieved."   *Rawlings,* 9 F.3d at 515. In addition, "the percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). Under the percentage of the fund method, the Courts in this District have repeatedly recognized that "[t]ypically, the percentage awarded ranges from 20 to 50%." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991); *Basile v. Merrill Lynch*, 640 F. Supp. 697, 700 (S.D. Ohio 1986).

Not surprisingly, the District Courts of the Sixth Circuit that have recently considered class action fee requests have awarded fees between 20% and 33% of the value of the settlement. *In re F&M Distribs, Inc. Sec. Litig.,* N. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *19–20 (E.D. Mich. 1999) (30% fee)*; In re Telectronics Pacing Syst.,* 137 F. Supp. 2d 1029, 1040 (S.D. Ohio 2001) (26.6% fee); *In re Kmart Corp. Sec. Litig.*, No. 95-CV-75584, 1998 U.S. Dist. LEXIS 23092, at *21 (E.D. Mich. 1998) (20% fee); *In re Rio Hair Naturalizer Prods. Liab. Litig.,* MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, *56

(E.D. Mich. 1996) (20% fee); *In re Dun & Bradstreet*, 130 F.R.D. 366, 376 (S.D. Ohio 1990) (15% fee). As such, the modest fee of $150,000 in this case, which is approximately 30% of the total economic benefit to the Class, is unquestionably within the range of reasonableness. In fact, as detailed below, and in the attached Declaration of Class Counsel Mark Lewis (Exh. A), the fee actually represents a *reduced* lodestar for counsels' combined efforts over the last four years.

**B.    Consideration of all relevant factors confirms the reasonableness of the requested fee**

The Sixth Circuit has set forth the following factors to consider in determining the reasonableness of a requested fee: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974); *In re Broadwing*, 252 F.R.D. at 381. These factors confirm that the requested fee is appropriate.

**1.    The value of the benefits rendered to the Class**

Under the common benefit doctrine, courts must first consider the value of the settlement to the class. *See Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983) (court must consider the "value of the benefit rendered to the class"); *Enterprise Energy Corp. v. Columbia Gas*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) (Smith, J.) (same). District courts in this Circuit widely regard this factor as the most important. *See Basile v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.Supp. 697, 700 (S.D. Ohio 1986) (finding that the value of the benefit rendered is the most important factor); *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1280 (S.D. Ohio 1996) ("Most important among these factors are the value of the benefit rendered to the plaintiff class and the value of Counsel's services on an hourly basis.").

Here, the Settlement provides meaningful economic benefits to the Class. Each claimant is entitled to receive pro rata share of the $500,000 class fund (less administration costs and legal fees). The Settlement confers an immediate, substantial cash benefit to claimants who choose to participate.

> ## 2. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others

Rewarding attorneys in class actions is important because absent class actions, most individuals would lack the resources to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation. *Cardinal Health*, 528 F. Supp.2d at 765–66, citing *In re Telectronics Pacing Systems, Inc.,* 137 F. Supp.2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling . . . claimants to pool their claims and resources" to "achieve a result they could not obtain alone."). A class action was therefore the most cost efficient manner to litigate this action on behalf of the Class. Equally significant, the reaction of the Class to the requested fee has been universally positive. As discussed above, not a single objection to the Settlement was received.

### 3. The contingent nature of the fee

A determination of a fair fee must include consideration of the contingent nature of the fee.  *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983) (consideration must be given to "whether the services were undertaken on a contingent fee basis."). Indeed, it is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, ECONOMIC ANALYSIS OF LAW 21.9, at 534–35 (3d ed. 1986).

Plaintiffs' Counsel accepted this case on a contingency fee basis and, therefore, have received no compensation during the course of this litigation while incurring expenses in litigating for the benefit of the Class.  Because of the contingent nature of the representation in this matter, any fee award or expense reimbursement to Plaintiffs' Counsel has always been at risk and completely contingent on the result achieved (as well as on this Court's exercise of its discretion in making any award).  Moreover, had Plaintiffs' Counsel not taken a role in this litigation, they would have been free to allocate their time and resources elsewhere.  Indeed, as the total number of hours expended in this litigation demonstrates, Plaintiffs' Counsel fully dedicated themselves to the prosecution of this litigation.  This further supports the fee award requested herein.

### 4. The value of the services on an hourly basis

Collectively, Class Counsel expended more than 400 hours of attorney time prosecuting this case from its inception in 2014. For the benefit of the class, Class

Counsel have absorbed all paraprofessional time without charge. The Lewis Declaration contains a summary of the time spent by the attorneys at four law firms that worked on this action, the hours expended, and their current hourly billing rate. (Lewis Decl., Exh. A).  The work by Class Counsel was necessary, performed without duplication to the extent possible, and successfully resulted in the Settlement.

Moreover, Plaintiffs' counsel have reduced and capped the total fee at $150,000. This cap also includes reimbursement for case expenses, as outlined further in the Lewis Declaration. As such, the $150,000 fee represents a *reduced* lodestar without any multiplication, underscoring the reasonableness of the requested fee.  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("A multiplier of between approximately 2.0 and 5.0 existed in the fee awards in this District in *Basile v. Merrill Lynch* and *Brotherton v. Cleveland*, further confirming the reasonableness of the 23% common fund requested."). Plaintiffs' counsel have been able to accomplish this benefit for the Class on account of the previous individual settlement with Equifax. Through private mediation, counsel were able to settle the individual Equifax claims. As part of that settlement, counsel were able to receive partial attorney fee and cost reimbursement. Class counsel have passed those savings along to the Class by reducing and capping their overall fee and expense reimbursement. (See Lewis Declaration, Exh. A).

### 5.     The complexity of the litigation

Plaintiffs made claims that required complicated analyses, requiring Plaintiffs' Counsel to analyze and evaluate complex questions of law and fact throughout this

action.  The questions of law and fact included (1) whether UDS had accessed/used private consumer reports to send the letters, and (2) whether UDS violated the FCRA by accessing and/or using those consumer reports. These analyses combined sophisticated legal research and argument with industry expertise concerning the FCRA practices at issue. Hence, the complexity of the case further supports the requested fee.

### 6.    The professional skill and standing of all counsel

The successful prosecution of class actions requires the participation of highly skilled and specialized attorneys.  Plaintiffs and their counsel were faced with formidable opposition, as UDS was represented by very skilled and experienced counsel, who could draw upon the exceptional resources of their nationally recognized law firm. Courts have often recognized that the skill and abilities of defense counsel are factors that may be considered when evaluating a fee request.  *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

On the Plaintiffs' side, Plaintiffs' Counsel are also experienced in this type of case.  The quality and skill in the work performed by Plaintiffs' Counsel is evident through the economic recovery achieved in this action.  Accordingly, the quality and skill involved in the services performed by Plaintiffs' Counsel support the requested fee.

In sum, the above factors support the fee requested.  Plaintiffs' Counsels' efforts were performed on a wholly contingent basis, despite significant risks and in the face of determined opposition.  Under these circumstances, it follows that Plaintiffs' Counsel should be entitled to the award of a reasonable fee based on the benefit conferred. Under all of the circumstances present here, Plaintiffs' Counsel respectfully submits that

the reduced and capped $150,000 fee, which UDS has not opposed and which constitutes 30% of the economic benefit achieved for the Class, is fair and reasonable.

      C.     **The fee is fair under the lodestar method as well**

The lodestar method requires that "the court calculate the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1041 (S.D. Ohio 2001). "This sum is then generally increased by a 'multiplier' to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery." *Id. See also* NEWBERG ON CLASS ACTIONS § 12.55 (3d ed. 1992). Indeed, the Sixth Circuit and courts in this Circuit and District have explicitly endorsed lodestar multipliers in reaching fee awards. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (affirming application of a multiplier of 2); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("A multiplier of between approximately 2.0 and 5.0 existed in the fee awards in this District in *Basile v. Merrill Lynch* and *Brotherton v. Cleveland*, further confirming the reasonableness of the 23% common fund requested."); *Basile v. Merrill Lynch*, 640 F. Supp. 697, 704 (S.D. Ohio 1996) (applying multiplier of 2.78); *Enterprise Energy Corp. v. Columbia Gas*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (applying multiplier of 2.6).

As noted above and in the attached Lewis Declaration, Plaintiffs' Counsel's time for work performed in this case, charged at current hourly rates, results in a significantly reduced lodestar of $150,000. Because Class Counsel do not seek to enhance the fee by any multiplier, the fee fits well within the acceptable range for this Circuit.

### C. Class Counsel are entitled to reimbursement of their reasonable litigation expenses

Plaintiffs' Counsel have incurred $22,496.69 in expenses prosecuting this litigation on behalf of the Class. The expenses incurred by each of the Plaintiffs' Counsel are indicated in the Lewis Declaration. The categories of expenses for which Counsel seek reimbursement are the type of expenses routinely charged to hourly clients and, therefore, should be reimbursed. The overwhelming majority of the charges relate to deposition costs and expert witness fees. All of these charges were reasonable and necessary to successfully prosecute this action. (Lewis Decl., Exh. A).

### VII. THE CLASS REPRESENTATIVES ARE ENTITLED TO A MODEST $3,000 INCENTIVE FEE FOR THEIR PIVOTAL ROLE IN THIS ACTION

The Sixth Circuit approves incentive awards for class representatives to compensate them for the services they provide and the risks they incur in prosecuting the action. *See*, *e.g.*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250–51 (S.D. Ohio 1991); *In re Dun & Bradstreet Credit Serv. Customer Litigation*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990). "For class actions to be effectively litigated, at least one plaintiff must be willing to take on the role of class representative," and "settlement would not be possible were it not for the willingness of the Class Representatives to participate in this suit." *Michel v. WM Healthcare Solutions, Inc.,* 10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *32 (S.D. Ohio Feb. 7, 2014). Because of this, it is important for Class Representatives to be encouraged, through an incentive award, to participate in suits like these. *Id*.

Here, the Settlement Agreement calls for the modest $3,000 incentive award to each of the Class Representatives who devoted significant time and faced substantial risk to successfully prosecute this class action. In particular, they underwent lengthy depositions, lost time from work, and spent many hours conferring with Class Counsel. Accordingly, the Court should approve the $3,000 incentive award to each Class Representative, whose dedication and effort played an integral role in the successful prosecution of this action.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs request that their motion be granted, that the proposed Settlement be approved, that final judgment be entered in accordance therewith, and that Class Counsel's application for an award of attorneys' fees, reimbursement of litigation expenses, and incentive award be granted.

**Respectfully submitted,**

**Kitrick, Lewis & Harris Co., LPA**
/s/ Mark Lewis
Mark Lewis (0063700)
Mlewis@kitricklaw.com
445 Hutchison Avenue
Suite 100
Columbus, Ohio 43235
(614) 224-7711
(614) 225-8985 (Fax)

**Luftman, Heck & Associates LLP**
/s/ Jeremiah Heck
Jeremiah E. Heck (0076742)
JHeck@lawlh.com
6253 Riverside Drive
Suite 200
Dublin, Ohio 43017

(614) 224-1500
(614) 224-2894 (Fax)

**The Law Office of Brian M. Garvine, LLC**
/s/ Brian Garvine_____
Brian M. Garvine (0068422)
Brian@garvinelaw.com
5 East Long Street
Suite 1100
Columbus, Ohio 43215
(614) 223-0290
(614) 221-3201 (Fax)

**Robert J. Wagoner Co., LLC**
/s/ Robert J. Wagoner
Robert J. Wagoner (0068991)
Bob@wagonerlawoffice.com
445 Hutchison Avenue
Suite 100
Columbus, Ohio 43235
(614) 796-4110
(614) 796-4111 (Fax)

**Class Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2019 I served the foregoing via ECF and email

on the following attorneys for Defendants.

/s/ MarkLewis_____
Mark Lewis (0063700)