**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


Peter Blasi, *et al.*,

|                | Plaintiffs,  | : | Case No. 2:14-cv-83 |

- vs -                                    :      Judge Sarah D. Morrison
                                                 Magistrate Judge Chelsey Vascura

United Debt Services, LLC, *et al.*
                                          :
                Defendants.


**<u>AMENDED OPINION, ORDER & JUDGMENT</u>**

On November 5, 2019 the Court granted Plaintiffs' Motion for Final Approval of the

Class Action Settlement and for Award of Attorney's Fees, Expenses, and Class Representatives'

Incentive (ECF No. 301). (ECF No. 313.) A corresponding judgment (ECF No. 314) was filed

the same day.

The Court subsequently conducted a telephone status conference regarding that

November 5, 2019 Opinion, Order and Judgment on November 13, 2019. Attorneys Lewis and

Zann participated on behalf of their respective clients. During that conference, Attorney Lewis

made an oral motion to amend the Opinion, Order and Judgment (ECF Nos. 313, 314) to revise

the award of attorney's fees and costs. The Court granted the motion without objection, and now

issues this Amended Opinion, Order and Judgment to completely supersede the Court's

November 5, 2019 Opinion, Order and Judgment.

**I.      BACKGROUND**

This is a Fair Credit Reporting Act ("FCRA") case. *See* 15 U.S.C.S. § 1681 *et seq.*

Plaintiffs Peter Blasi, Jordan Brodsky and Michael Cassone (collectively, "Named Plaintiffs")

are individual consumers residing in Ohio. (ECF No. 47 ¶¶ 8-10.) They assert, on behalf of themselves and all others similarly situated, that Defendants United Debt Services, LLC ("UDS"), New Wave Lending Corp. ("New Wave"), Benjamin Rodriguez ("Rodriguez"), Equifax Information Services, Inc. ("Equifax"), Name Seeker, Inc. ("Name Seeker, Inc.") and AMG Leadsource ("AMG") violate the FCRA by providing, accessing and misusing consumer financial reports to market debt relief services to Ohio residents. *Id.* ¶¶ 1-104. Plaintiffs seek class certification under Fed. R. Civ. P. 23. (ECF No. 47.)

According to the Second Amended Complaint, Equifax is a consumer reporting agency that collects consumer credit data. *Id.* ¶¶ 11, 29. Such data includes, but is not limited to, consumers' names, addresses, FICO scores, debt loads, partial Social Security Numbers and credit history. Based upon that information, Equifax sells "prescreened lists" of names and addresses of individual consumers who meet certain criteria specified by buyers.[1] Resellers access and purchase those lists from consumer reporting agencies like Equifax to sell to marketing and/or lead generating firms. Name Seeker, New Wave and AMG are or were resellers of such consumer credit information. *Id.* ¶¶ 28, 30. Name Seeker is Equifax's agent for the relevant transactions. New Wave is or was a mortgage broker that is or was owned by Rodriguez. *Id.* ¶¶ 13, 16. Rodriguez is or was New Wave's Owner. *Id.* ¶ 16. AMG is another marketing and lead generating company that purchases prescreened lists. *Id.* at ¶ 18.

Under the FCRA, prescreened lists can only be used to make a firm offer of credit or insurance. *See* 15 U.S.C. § 1681b(c)(1)(B). The Act requires that consumer reporting agencies, buyers, resellers and users of such data confirm that the data will only be used for that purpose.

---

[1] Prescreened lists satisfy the definition of "consumer reports" under the FCRA, therefore bringing them under the statute's purview.

Each time the information is sold, the seller must confirm the end-user's identity, obtain a certification that the information will only be used to extend firm offers and secure an agreement that the information will not be used for any other purpose. 15 U.S.C. § 1681e(e).

Here, Named Plaintiffs aver that Equifax sold prescreened lists of 166,000 Ohio residents in financial distress to New Wave. (ECF No. 112 at 4; *see also* ECF No. 47.) Named Plaintiffs assert New Wave sold the lists to Name Seeker, who, in turn, sold the information to AMG. (ECF No. 47 ¶¶ 20-37.) Named Plaintiffs allege AMG sold the data to UDS, the "end-user" of the consumer data. *Id.* UDS markets and solicits debt-relief services. (ECF No. 47 ¶ 19.) Named Plaintiffs claim UDS unlawfully used that data to market debt relief services, not to make a firm offer of credit. *Id.* ¶¶ 49, 66-69; *see also* ECF No. 127.

UDS, Name Seeker and Equifax each lodged general denials. New Wave and Rodriguez failed to appear, and a default entry was lodged against each. (ECF No. 84.) Plaintiffs then moved for default as to those two defendants, but Rodriguez's and New Wave's subsequent Motion to Vacate the Default Entries was granted. (ECF No. 116.) AMG moved to dismiss Plaintiffs' Complaint for lack of jurisdiction (ECF No. 78), and the Court denied the motion without prejudice to allow for appropriate discovery to occur on the topic. (ECF No. 127). AMG did not re-file its motion to dismiss.

Named Plaintiffs ultimately dismissed their claims against New Wave and Rodriguez but pursued class certification against UDS. (ECF Nos. 112, 120.) Within their motion to certify, Plaintiffs argued that Equifax sold the prescreened lists to Name Seeker, who sold the lists to AMG, who then sold the lists to UDS. (ECF No. 112.) Plaintiffs then settled and dismissed their claims against Equifax and Name Seeker. (ECF Nos. 248-249.) Plaintiffs also dismissed their counts against AMG.

Named Plaintiffs and UDS reached a settlement ("Settlement") in October 2017. (Oct. 10, 2017 Docket Entry.) Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement in April 2019. (ECF No. 294.) That motion indicated Plaintiffs had settled their claims with UDS for $500,000, from which $150,000 for attorney's fees, $22,496.69 for costs and $9,000 for incentive payments would be deducted. (ECF No. 294 and 294-1.) Costs for class notice and administration would also be drawn from the $500,000 figure. Settlement Class Members would receive a pro rata share of the net settlement amount. Named Plaintiffs sought certification of nearly 167,000 "Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreen marketing lists providing by AMG Lead Source from June 1, 2011 through June 30, 2014." (ECF No. 294 at 7.) Named Plaintiffs indicated certification was sought for settlement purposes only. Named Plaintiffs provided a proposed postcard notice ("Settlement Notice") and claim form to be mailed to the potential class members and to be posted on a website. Named Plaintiffs also submitted a proposed schedule to complete the Settlement. *Id*. 24.

Judge Smith granted the motion. (ECF No. 297.) His May 2019 Order conditionally certified the Settlement Class under Fed. R. Civ. P. 23 ("Rule 23"), authorized the distribution of the notice, labeled Named Plaintiffs Blasi, Brodsky and Cassone as Class Representatives and named attorneys Mark Lewis, Elizabeth Mote, Jeremiah Heck and Brian Garvine as Class Counsel for the Settlement Class. Judge Smith additionally set forth the process for objections, scheduled a hearing for final certification on August 28, 2019 and stayed the case pending final resolution of the settlement proceedings. *Id*. 9.

Plaintiffs' resultant Motion for Final Approval of Class Action Settlement and for Award of Attorney's Fees, Expenses, and Class Representatives' Incentive (ECF No. 301) indicated that

JND Class Action Administration ("JND"), the claims administrator, mailed 166,597 notices to the class and had 10,377 notices returned as undeliverable. *Id*. at 6. Of those, JND re-mailed 2,306 to updated addresses. *Id*. 7. In addition, the website hosted 3,606 users who registered 10,170 page views. *Id*. As of August 14, 2019, JND had received 11,178 claim forms that remained under review. *Id*. Not one objection was lodged, and no one sought exclusion. *Id*.

The Court conducted a fairness hearing as to the Motion for Final Approval on August 28, 2019. Because the class administration process was not complete at that time, the Court's August 30, 2019 Order required Class Counsel to file a notice with the Court on October 28, 2019 "detailing the final number of class members who filed a claim form, the final number of class members who opted out and the final pro rata share of the settlement amount each class member will receive." (ECF No. 309 at 1.) That same order noted that the Court would hold ruling on the Motion for Approval in abeyance pending receipt of the directed filing. Id.

Plaintiffs' Status Report on Class Action Administration (ECF No. 312) was filed on November 1, 2019. That report details the July 29, 2019 Objection deadline and the October 15, 2019 Opt-out deadline both passed without responses. (ECF 312.) JND states that 16,104 claim forms were received with 15,698 of those being eligible for payment. *Id*. This totaled a 9.7% claims rate. *Id*. The final pro rata share for each approved Class Member should be $12.42. The Court now turns to an examination of Plaintiffs' Motion for Final Approval with the benefit of having conducted the August 23, 2019 hearing and reviewed the November 1, 2019 update.

## II.     ANALYSIS

The Court addresses the motion in six steps. First, the Court considers whether plaintiffs satisfy Rule 23's requirements for class certification. Second, the Court discusses whether the notice is adequate. Third, the Court examines whether the proposed Settlement Agreement is

"'fair, reasonable and adequate.'" *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23 (e)(1)(c)). Fourth, the Court discusses Class Counsel under Rule 23(g). Fifth, the Court addresses Class Counsels' request for fees and costs. Sixth, the Court evaluates the propriety of incentive awards for the Named Plaintiffs.

## A. Certification for Settlement Purposes

Plaintiffs move the Court to order final certification of the following class for settlement purposes only: "All Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided to UDS by AMG Lead Source from June 1, 2011 through June 30, 2014." (ECF No. 294-3 at ¶ 2.) After intensive review, the Court determines that Rule 23 certification is proper in this instance.

"The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In particular, "'[b]efore a court may certify a class, it must ensure that the class satisfies each of Rule 23(a)'s requirements and that it falls within one of three categories permitted by Rule 23(b).'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 284-85 (E.D. Mich. 2017) (quoting *UAW*, 497 F.3d at 625) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Indeed, a court may certify a class only after it performs a "rigorous analysis" of Federal Rule of Civil Procedure 23's requirements. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). A plaintiff's failure to satisfy Rule 23(a) and one of Rule 23(b)'s requirements "dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

### 1. Rule 23(a)

Judge Smith's May 2019 Order preliminary approving the Settlement appointed Named Plaintiffs as Class Representatives. (Doc. 297 ¶ 2.) Rule 23(a) dictates that plaintiffs may represent a class if the following prerequisites are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addressing the foregoing requirements, a district court cannot inquire into the merits of the class representatives' underlying claims. Instead, the Court must accept as true the factual allegations contained within the plaintiffs' complaint. *Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *11-12 (S.D. Ohio Sep. 12, 2007) (citations omitted). The four prerequisites are met here.

To begin, the class is comprised of nearly 167,000 Ohio consumers. Such a "substantial number" satisfies the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Joinder of each would certainly prove impracticable.

Next, commonality requires only a common question of law or fact. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). In the instant case, the Class Representatives claim that the identical solicitation each received violated the FCRA because the mailing did not extend a firm offer of credit to them. Whether UDS's alleged accessing of their information and mailing the solicitation violates the FCRA is the common question that satisfies the rule.

Third, "[a] plaintiff's claim is typical [under Rule 23(a)(3)] if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Packaged Ice Antitrust Litig.*, 322

F.R.D. at 286 (internal quotations and citations omitted). Here, the Settlement Class Members rely upon the same course of conduct—UDS accessed their credit information to directly mail debt service solicitations to the proposed class—to argue that UDS violated the FCRA. Thus, the typicality requirement, which is "not onerous," is also satisfied. *Id.*

Lastly, the Court considers whether the Class Representatives will fairly and adequately represent the Settlement Class Members. *See* Rule 23(a)(4). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Gilbert v. Abercrombie & Fitch, Co*., No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 103441, at *17 (S.D. Ohio Aug. 5, 2016) (citations and quotations omitted). In this regard, "[t]he two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Packaged Ice Antitrust Litig*., 322 F.R.D. at 286 (quotation and citations omitted). These two requirements are designed to uncover and prevent conflicts of interest among the named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Both prongs are established here. In particular, all Settlement Class Members share the same interest and suffered the same alleged injury—that is, each had their credit information accessed and used for an allegedly illegal purpose. This incentivizes Class Representatives to pursue the class claims. Additionally, no objections have been filed with the Court as to the adequacy of the Named Plaintiffs' representation of the proposed class. And, Class Counsel are experienced class action practitioners. (ECF No. 301 at 32.) The Court therefore concludes that

the Class Representatives will fairly and adequately represent and protect the interests of the class such that Rule 23(a) is satisfied.

## 2. Rule 23(b)(3)

Having concluded that plaintiffs satisfy Rule 23(a), the Court must now consider whether they likewise establish that this litigation may properly be maintained as a class action under Rule 23(b)(3). That rule permits certification when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3). Those requirements are reduced to "predominance" and "superiority." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, No. 18-4139, 2019 U.S. App. LEXIS 24289, at *12 (6th Cir. Aug. 15, 2019).

### a. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. C*o., 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007)). While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will predominate over individual ones. *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 544 (6th Cir. 2012). Hence, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Plaintiffs note that "a single legal and factual issue under the FCRA likely determines UDS's exposure: Did UDS obtain the Class members' consumer reports without permissible purpose?" (ECF No. 301 at 24.) To that end, it is clear that common questions and generalized proof will predominate over any individualized issues in this case. The predominance requirement is therefore met.

### b. Superiority

The inquiry under this portion of the analysis is whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). This requirement aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted). Courts consider the related factors set forth in Rule 23(b)(3) itself when considering superiority. *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415-16 (6th Cir. 2018). Those include:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (4) the likely difficulties in managing a class action.

(Rule 23(b)(3)).

Named Plaintiffs argue, and the Court agrees, that the noted factors weigh in favor of finding that a class action is the superior method of proceeding in this instance. First, there is no evidence that any of the Settlement Class Members have any interest in maintaining this litigation as separate actions. Indeed, "the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of

sophistication, lack of resources, lack of representation and similar barriers." *Tedrow*, 2007 U.S. Dist. LEXIS 67391, at *26. Regarding the second factor, the Named Plaintiffs assert no individual lawsuits are pending involving the same claims. (ECF No. 301 at 25.) Third, concentrating the litigation of the claims in this forum is desirable, as the putative class is entirely comprised of Ohio residents, which promotes consistent results. *Id.* Fourth, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at *8 (W.D. Wis. Apr. 13, 2016) (citation omitted). Lastly, there is no device other than a class action that can resolve these matters as efficiently and fairly. Cases such as this that allege "a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citation omitted). Thus, because the Court determines that common questions predominate and class action resolution is superior to individual causes of action, Rule 23(b)(3) certification is appropriate.

In sum, having concluded that the Named Plaintiffs satisfy the requirements of both Rule 23(a) as well as Rule 23(b)(3), the Court **GRANTS** Plaintiffs' Motion for Final Certification of the following Settlement Class for settlement purposes only: "All Ohio citizens whose consumer reports were used and/or obtained by UDS via prescreened marketing lists provided to UDS by AMG Lead Source from June 1, 2011 through June 30, 2014." (ECF No. 294-3 at ¶ 2.)

**B.    Notice**

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval preceded by notice to class

members. Rule 23(c)(2)(B) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must be "'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW,* 497 F.3d at 629-30 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Notice "'fairly apprise[ed] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW,* 497 F.3d at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). The Notice "explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the [ ] settlement agreement." *UAW,* 497 F.3d at 630. Through the postcard mailing and the website, the Court finds that the Class Representatives have utilized the best possible yet reasonable means to effectuate notice. Consequently, the Court holds that the Settlement Notice is sufficient.

### C.      Fair, Reasonable and Adequate

Having decided that the Settlement Class may properly be certified and that the Settlement Notice is appropriate, the Court must next determine whether the Settlement should be approved. "Rule 23(e) governs class action settlements and mandates that the court may approve a settlement upon holding a fairness hearing and concluding that it is 'fair, reasonable, and adequate.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016) (quoting Fed. R. Civ. P. 23(e)(2)). The Sixth Circuit has set out the following factors to guide this inquiry:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest.

*Gascho*, 822 F.3d at 276 (6th Cir. 2016) (quotation and citation omitted). When reviewing a proposed class action settlement, the Court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

Additionally, the Court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *UAW*, 497 F.3d at 635.

The Court finds that the Settlement is fair, adequate, and reasonable because all seven factors weigh in favor of the Settlement's approval. To begin, there is no evidence of fraud or collusion. "In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *20 (E.D. Ky. Oct. 23, 2008).

The second factor—complexity, expense and likely duration of the litigation—likewise supports approval. Specifically, the Class Representatives aver that absent settlement, this matter would continue to entail significant and disputed discovery as well as numerous dispositive motions. (ECF No. 301 at 12.) A large number of witnesses would need to be prepared for trial if those motions were unsuccessful. Trial would last weeks and an appeal may follow. *Id.*

As to the discovery inquiry, Class Counsel state that they engaged in "extensive" written and deposition discovery with opposing counsel during the past four years. That discovery yielded "[t]ens of thousands of pages of documentary discovery . . . ." *Id.* 5. Those documents, coupled with expert and lay depositions, produced a well-developed factual record that enabled Class Counsel to make informed decisions about the Settlement. *Id.* 5-6.

Next, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citation omitted). Here, Class Counsel concede that they "faced significant risks establishing both liability and damages." (ECF No. 301 at 10.) Indeed, the docket reflects that UDS has vigorously defended this action and would likely continue to do so. Certification is not certain, and even if granted, decertification remains a real possibility. This factor therefore leans towards approving the Settlement.

Turing to the fifth factor, the Court notes that Class Counsel are experienced in class action cases and that they recommend approval of the Settlement. *Id.* 15. "The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class." *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *23 (S.D. Ohio May 30, 2012) (citation omitted).

The sixth inquiry involves considering the reaction of absent class members. Not one objection has been received from any of the nearly 167,000 Settlement Class Members. (ECF No. 301 at 16; ECF No. 312). And, not one potential member has opted-out of the settlement. (ECF No. 312). This prong clearly supports approval.

The seventh and final factor involves considering the public interest. "Resolution of disputes through settlement rather than trial is normally in the public interest, as settlement serves to conserve scarce judicial resources." *In re Polyurethane Foam Antitrust Litig*., 168 F. Supp. 3d 985, 997 (N.D. Ohio Jan. 27, 2016). Here, the public has an interest in ending this "'long and protracted litigation.'" *Castillo v. Morales, Inc*., No. 2:12-CV-650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (quoting *Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *8). In addition, settlement of this kind of action provides relief for individuals who may not be able to bring these claims on their own. This factor therefore favors approval of the Settlement.

To summarize, the Court holds that each of the seven factors weigh in favor of labeling the Settlement as fair, reasonable and adequate. Named Plaintiffs' Motion for Final Approval of the Class Action Settlement (ECF No. 301) is therefore **GRANTED**.

**D.** **Class Counsel**

Under Rule 23(c)(1)(B) and Rule 23(g) of the Federal Rules of Civil Procedure, counsel must be appointed because the Court certified the class. Rule 23(g) requires the Court to consider four factors when appointing class counsel: "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation," and "the types of claims asserted in the action," "counsel's knowledge of the applicable law," and the "resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Class Counsel prosecuted this litigation by, *inter alia*, obtaining and analyzing documents obtained in discovery, taking and defending numerous depositions and completing and filing motions and opposition memoranda. (ECF No. 301.) They have experience in litigating class actions, have been lead counsel in other class action cases and possess the skill, experience and

qualifications necessary to complete the settlement on behalf of the Settlement Class Members. *Id*. Class Counsel will fairly and adequately represent the interests of the Class Members for settlement purposes. Consequently, Class Counsel's designation shall stand. (ECF Nos. 297, 309.)

E.     **Attorney's Fees and Costs**

Plaintiffs' counsel seeks $150,000 in fees from the $500,000 common fund. (ECF No. 301 at 28.) This equates to 30% of the fund and is inclusive of both attorney's fees and costs.

The Sixth Circuit Court of Appeals requires that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances. *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)). "A reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both approaches. *Rawlings,* 9 F.3d at 515-16. In this case, plaintiffs seek approval under the percentage method. "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees).

When determining whether a certain percentage is reasonable, the Court considers: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly

basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974).

The Settlement renders significant value upon the class members. The net settlement amount, after attorney's fees, costs and incentive awards, is $318,503.31. Class members receive a sum certain while bypassing the delay, risks and costs of continued litigation.

As to the hourly value of Class Counsels' services, counsel note that they devoted 1900 hours of time to prosecute this action. (ECF No. 301 at 30; Lewis Aff. ¶ 10.) They further indicate that because of previous settlements in this matter, they are able to reduce their hours and cap their fee at $150,000 for this Settlement. *Id*. Additionally, Class Counsel waive all paralegal time for this case. *Id*. at 31.

For the third factor, the Court asks whether counsel accepted the case on a contingent fee basis. The answer here is yes. (ECF No. 301 at 30.) This factor therefore weighs in favor of granting an award of attorney fees. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) (finding that plaintiffs' counsel making "significant investments of time" without compensation weighed in favor of granting attorney fees).

Society's stake in awarding attorneys who bring FCRA cases supports an award of attorney's fees. Class counsel recovered damages for up to 167,000 consumers who, most likely, would not have been able to bring individual suits on their own behalf. "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *29 (citation omitted).

The fifth factor involves the complexity of the litigation. Class Counsel advance that the case presented two complex issues of law and fact—first, whether UDS accessed and used private consumer reports to send the debt services solicitation letters, and second, whether UDS violated the FCRA by so doing. (ECF No. 301 at 32). Counsel further assert that their high level of skill and experience warrant the requested fee. *Id*. The Court holds that these final two factors also weigh in favor of finding the attorney's fees request to be reasonable.

Because the Court finds each of the *Ramey* factors are satisfied here, and therefore holds the amount being sought is reasonable, the Court **GRANTS** Class Counsels' request for attorney's fees in the amount of $150,000.[2]

### F.  Incentive Awards

The Class Representatives each seek $3,000 as incentive awards. (ECF No. 301 at 34). "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Such "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Id*. Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc*., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

---

[2] Performing the lodestar cross-check is optional. The Court deems that analysis unnecessary here. *See Barnes v. Winking Lizard, Inc*., No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 n.2 (N.D. Ohio Mar. 26, 2019).

Here, the Settlement proposes to award $9,000 total to the Class Representatives for their efforts in bringing and pursuing this action. *See* ECF No. 294-1, ¶ 10.4. As Class Counsel explain, the Class Representatives "underwent lengthy depositions, lost time from work, and spent many hours conferring with" Class Counsel. (Doc. 301 at 35). Class Counsel continue by describing the Class Representatives' efforts as playing "an integral role in the successful prosecution of this action." *Id*. In light of this service, the Court approves the service award in the amount of $9,000 to be divided equally among Class Representatives Blasi, Cassone and Brosky. *See Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *14-15 (S.D. Ohio May 25, 2013) (noting judges in this district have approved incentive awards after considering factors such as the class representatives' actions to protect the rights of the class members and the amount of time and effort spent pursuing the litigation) (citations and quotations omitted).

## III.    CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement and for Award of Attorney's Fees, Expenses, and Class Representatives' Incentive. (ECF No. 301). The Court finds and **ORDERS** as follows:

1.    This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all members of the Settlement Class.

2.    Pursuant to Federal Rule of Civil Procedure 23(c), the Court certifies the following Settlement Class, consisting of:
     All Ohio citizens whose consumer reports were used and/or
     obtained by UDS via prescreened marketing lists provided to UDS
     by AMG Lead Source from June 1, 2011 through June 30, 2014.

3.    Pursuant to Federal Rule of Civil Procedure 23, Peter Blasi, Jr., Jordan Brodsky, and Michael J. Cassone are hereby appointed "Class Representatives."

4.    The following attorneys are hereby appointed as "Class Counsel:"

Mark D. Lewis
Elizabeth Mote
Kitrick, Lewis & Harris Co., LPA
445 Hutchinson Avenue, Suite 100
Columbus, OH 43235

Jeremiah E. Heck
Katherine Wolfe
Luftman, Heck & Associates
580 East Rich Street
Columbus, OH 43215

Brian M. Garvine
Law Office of Brian M. Garvine, LLC
5 East Long Street, Suite 1100
Columbus, OH 43215

Robert J. Wagoner
Robert J. Wagoner, Co., L.L.C.
445 Hutchinson Avenue, Suite 100
Columbus, OH 43235

5.   Pursuant to Federal Rule of Civil Procedure 23(a), the Court finds as follows:
   a.   the Settlement Class is so numerous that joinder of all members is impracticable;
   b.   there are questions of law or fact common to the Settlement Class;
   c.   the claims of the Class Representatives are typical of the claims of the Settlement Class; and
   d.   the Class Representatives will fairly and adequately protect the interests of the Settlement Class.

6.   Pursuant to Federal Rule of Civil Procedure 23(c), the Court finds as follows:
   a.   the questions of law or fact common to the Settlement Class predominate over the questions of law or fact affecting only individual members of the Settlement Class; and
   b.   certification of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the controversy.

7.   The Court finds that, in accordance with Section 6 of the Agreement and Federal Rule of Civil Procedure 23(c)(2)(B), the Settlement Administrator provided the best notice practicable under the circumstances, including individual notice to each putative member of the Settlement Class who could be identified through reasonable effort.

8.   The Court finds that UDS properly and timely notified the appropriate state and federal officials of the Settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

9.      The Court finds that no objections have been received from any member of the Settlement Class concerning settlement as set forth in paragraph 16 of the Preliminary Approval Order (Doc. 297).

10.     Pursuant to the Settlement, UDS has agreed to pay the Settlement Amount of $500,000.00 into an account maintained by the Settlement Administrator. Amounts awarded to Class Counsel shall be exclusively paid from the Settlement Amount. Amounts awarded to the Class Representatives will be exclusively paid from the Settlement Amount. The Notice and Administrative Expenses shall be exclusively paid from the Settlement Amount. Members of the Settlement Class who have timely submitted valid Claim Forms will receive a pro-rata share of the Settlement Amount after the Class Counsel's fees and costs, the Class Representatives' award, and the Notice and Administrative Expenses are deducted from the Settlement Amount. In addition to payments of the Settlement Amount, UDS has also agreed that it has taken steps to ensure compliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. going forward with its target marketing practices.

11.     The Court has read and considered the papers filed in support of the motion for final approval, including the Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Named Plaintiffs, members of the Settlement Class, and UDS. The Court has not received any objections from any member of the Settlement Class concerning the Settlement.  The Court held a hearing on August 28, 2019, at which time the parties were afforded the opportunity to be heard in support of or in opposition to the Settlement. Furthermore, the Court finds that notice pursuant to CAFA was effectuated on May 3, 2019, and that ninety (90) days has passed without comment or objection from any governmental entity.

12.     The Court now grants final approval of the Settlement and finds that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. This finding is supported by, among other things, the complex legal and factual posture of the Action, the benefits being made available to members of the Settlement Class, and the Settlement being the result of significant and informed arms' length negotiations between the parties.

13.     The Court orders the Parties to the Agreement to perform their obligations thereunder. The Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

14.     The Court dismisses Plaintiffs' claims against UDS with prejudice and without costs (except as otherwise provided herein and in the Agreement).

15.     On and after the Effective Date, the Releasing Parties, in any capacity, are forever barred and permanently enjoined from filing, commencing, prosecuting, continuing, or otherwise litigating any proceeding against any of the Released Parties in any jurisdiction or venue based on, arising out of, or relating in any way to the Released Claims.

16. The Court further orders that upon the Effective Date, the above-described releases, the releases set forth in Section 12 of the Agreement, and the Agreement shall be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of any of the Releasing Parties based on, arising out of, or relating in any way to the Released Claims.

17. Without affecting the finality of this Settlement Order and Final Judgment in any way, the Court retains jurisdiction over:
    a. implementation and enforcement of the Agreement until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the Parties pursuant to the Agreement have been performed;
    b. any other action necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Agreement; and
    c. all parties to this Action and members of the Settlement Class for the purpose of implementing and enforcing the Settlement.

18. The Court approves payment of attorneys' fees to Class Counsel in the amount of $150,000.00. This amount shall be paid from the Settlement Amount in accordance with the terms of the Agreement. The Court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees, finds the award of attorneys' fees appropriate and reasonable and the Court notes that the notice provided to all putative members of the Settlement Class specifically and clearly advised the putative members of the Settlement Class that Class Counsel would seek the award. The Court further notes that this amount is inclusive of costs.

19. The Court approves the incentive fee payment of $3,000.00 for each of the Class Representatives, Peter Blasi, Jr., Jordan Brodsky, and Michael J. Cassone, and specifically finds such amount to be reasonable in light of the services performed by each of the Class Representatives for the class. This amount shall be paid from the Settlement Amount in accordance with the terms of the Agreement.

20. Neither this Order and Judgment, nor the Agreement shall be construed or used as an admission or concession by or against UDS or any of the Released Parties of any fault, omissions, liability, or wrongdoing, or the validity of any of the Released Claims, in any action or proceedings whatsoever. This Settlement Order and Judgment is not a finding of the validity or invalidity of any claims in this Action or a determination of any wrongdoing or liability in this Action. The final approval of the Settlement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiffs, the members of the Settlement Class, or UDS.

21. The Clerk is hereby directed to enter this Order and Judgment.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**